# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORP. and
BOSTON SCIENTIFIC
NEUROMODULATION CORP.,

        Plaintiffs,

        v.

NEVRO CORP.,

        Defendant.

Civil Action No. 18-0644-CFC

Karen L. Pascale, Pilar G. Kraman, YOUNG CONAWAY STARGATT &
TAYLOR LLP, Wilmington, Delaware; Matthew M. Wolf, Edward Han, Marc A.
Cohn, Amy DeWitt, ARNOLD & PORTER KAYE SCHOLER LLP, Washington,
District of Columbia; Krista M. Carter, Thomas T. Carmack, ARNOLD &
PORTER KAYE SCHOLER LLP, Palo Alto, California

    *Counsel for Plaintiffs*

Rodger D. Smith, Michael J. Flynn, MORRIS, NICHOLS, ARSHT, & TUNNEL
LLP, Wilmington, Delaware; Bradford J. Badke, Ching-Lee Fukuda, Ketan V.
Patel, SIDLEY AUSTIN LLP, New York, New York; Thomas A. Broughan III,
Sharon Lee, Benjamin H. Huh, SIDLEY AUSTIN LLP, Washington, District of
Columbia

    *Counsel for Defendant*

### MEMORANDUM OPINION

November 25, 2019
Wilmington, Delaware

_Col. F. C___

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiffs Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation (collectively "Boston Scientific") have sued Nevro Corporation for patent infringement, trade secret misappropriation, and tortious interference with contract. D.I. 5. Nevro has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all eleven counts of Boston Scientific's First Amended Complaint for failure to state a claim on which relief can be granted. D.I. 10. For the reasons discussed below, I will deny-in-part and grant-in-part Nevro's motion.

## I.     BACKGROUND[1]

Boston Scientific is a medical device manufacturer that develops and sells spinal cord stimulation (SCS) systems for the treatment of chronic back pain. D.I. 5 ¶ 12. Boston Scientific launched its first SCS system, the Precision™ System, in 2004 and has since launched four improved Precision™ Systems. *Id.* ¶ 13. Boston Scientific has obtained several patents covering the core technologies of SCS systems. *Id.* ¶ 14.

---

[1] When assessing the merits of a Rule 12(b)(6) motion to dismiss, I accept as true all factual allegations in the complaint and view those facts in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

Nevro also produces SCS systems. *Id.* ¶¶ 15, 17. In the first nine counts of its amended complaint, Boston Scientific alleges that Nevro's Senza® Spinal Cord Stimulation System (the Senza I System) and Senza II® Spinal Cord Stimulation System (the Senza II System) infringe nine of Boston Scientific's patents: U.S. Patent Nos. 7,496,404 (the #404 patent), 7,127,298 (the #298 patent), 8,682,447 (the #447 patent), 6,993,384 (the #384 patent), 7,853,330 (the #330 patent), 7,822,480 (the #480 patent), 6,381,496 (the #496 patent), 7,177,690 (the #690 patent), and 9,162,071 (the #071 patent). *Id.* ¶¶ 34–146. All nine counts allege direct, induced, and contributory infringement, and seek enhanced damages for willful infringement. *Id.* Counts I through IV and VI through VIII also allege export infringement. *Id.* ¶¶ 40–44, 53–57, 66–67, 79–83, 103–07, 116–20, 129–33.

The accused Senza Systems are devices "designed to deliver electrical stimulation to spinal cord nerves for the treatment of chronic intractable pain." *Id.* ¶¶ 15, 17. To deliver stimulation, they use percutaneous leads and "a rechargeable, implantable pulse generator ('IPG')." *Id.* ¶ 15. "The IPG is transcutaneously recharged using an external charger and is controlled by a patient remote control and/or clinician programmer." *Id.* Other components of the Senza Systems "include an external trial stimulator, lead extensions, adaptors, operating room . . . cables, and surgical accessories." *Id.*

2

Nevro launched the Senza I System for sale in Europe and Australia in 2011 and in the United States in 2015. *Id.* ¶ 16. It received regulatory approval to market the Senza II System in Europe in 2017 and in the United States in 2018. *Id.* ¶ 17.

Boston Scientific also accuses Nevro of trade secret misappropriation under the California Uniform Trade Secret Act (CUTSA) (Count X) and tortious interference with contract (Count XI). *Id.* ¶¶ 147–77. Both claims are based on Boston Scientific's allegation that "one or more of the dozens of former Boston Scientific employees that Nevro has recruited and hired disclosed trade secrets relating to Boston Scientific's [SCS] systems to Nevro, in violation of those employees' contractual obligations." *Id.* ¶ 1.

One of the former Boston Scientific employees that Boston Scientific names in the amended complaint is Jim Thacker, Nevro's Director of Field Engineering. *Id.* ¶ 27. Thacker worked for Boston Scientific and its predecessor Advanced Bionics from 2000 to 2006 as Manager of Field Clinical Engineering. *Id.* As a condition of his employment at Boston Scientific, Thacker agreed to an Employee Invention and Confidential Information Agreement that required him to "keep confidential and refrain from disclosing to others all confidential information and trade secrets of [Advanced Bionics], which [Thacker] develop[ed] or learn[ed] about during the course of [his] employment." *Id.* ¶¶ 151–52.

Thacker left Boston Scientific in August 2006. *Id.* ¶ 155. "As part of the exit process," Thacker acknowledged that "he did not have in his possession any Boston Scientific-owned property." *Id.* But on August 18, 2017, Nevro's outside counsel informed Boston Scientific that "Thacker in fact took thousands of confidential Boston Scientific documents with him, including five of his own laboratory notebooks detailing the work he performed during the 'Stimulus' clinical trials for Boston Scientific's Precision™ SCS system." *Id.* ¶ 156. The amended complaint further alleges that Thacker took "Boston Scientific-owned thumb drives, actual Precision™ demonstration devices, Physician lead manuals, Physician implant manuals, and Precision™ media kits." *Id.*

Boston Scientific alleges that, after taking these confidential and proprietary items, "[o]n multiple occasions, while employed by Nevro, Thacker disclosed Boston Scientific's confidential, proprietary information to Nevro." *Id.* ¶ 159. Boston Scientific alleges in detail two specific instances when Thacker disclosed such information. The first occurred on April 16, 2009 when Thacker sent to a fellow Nevro employee an email with an attached "Stimulus™ Confirmatory Study" authored by Boston Scientific's predecessor, Advanced Bionics. *Id.* The Confirmatory Study was "Boston Scientific's protocol to run the clinical investigation for its Precision™ product." *Id.* ¶ 161. It contained confidential information such as "subject enrollment criteria . . ., study design,

4

methodology/testing requirements, and monitoring requirements." *Id.* Boston Scientific alleges that the study "would not have been disclosed to anyone not involved with the clinical investigation," and that each investigator involved in the study agreed to keep confidential all data related to the study. *Id.*

The second alleged disclosure occurred on May 4, 2009 when Thacker sent to another Nevro employee an email with an attachment titled "Spinal Cord Stimulator Clinician's Programming System, Module Specification." *Id.* ¶ 163. The Module Specification was "a compilation of information necessary for the design and development of Boston Scientific's SCS products." *Id.* ¶ 166. Boston Scientific alleges that the specification was a Boston Scientific internal document that included "such confidential information as software functional requirements, including specific programming requirements." *Id.*

## II.    LEGAL STANDARDS FOR STATING A CLAIM

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at

570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

## III. DISCUSSION

### A. Direct Infringement Claims

#### 1. Legal Standards

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must allege facts "that plausibly indicate that the accused products contain each of the limitations found in the claim." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018) (citations omitted).

"The complaint must place the potential infringer on notice of what activity is being accused of infringement." *Nalco Co. v. Chem–Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (internal quotation marks, alterations, and citation omitted). To provide notice, a plaintiff must generally do more than assert that the product infringes the claim; it must show *how* the defendant plausibly infringes by alleging

some facts connecting the allegedly infringing product to the claim elements. *See SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) (granting the motion to dismiss because "[t]he complaint contains no attempt to connect anything in the patent claims to anything about any of the accused products").

### 2.     Counts I through VII and IX

Counts I through VII and IX each allege infringement of a different patent. D.I. 5 at 12. In each count, Boston Scientific identifies accused products, points to "exemplary materials" extraneous to the amended complaint that provide general information about the accused products, and asserts without explanation that the accused products meet each element of at least one claim of the asserted patent. These allegations fall short of the *Iqbal/Twombly* pleading standard because they fail to show *how* the accused products plausibly read on the asserted claim elements.

Specifically, each of the eight counts first alleges that Nevro directly infringes the asserted patent in question by making and selling infringing SCS systems that contain elements recited in a claim. *See id.* ¶¶ 38, 51, 64, 77, 90, 101, 114, 140. Each count next alleges that "Boston Scientific, through its investigation of the Senza I System . . . has determined that the Senza I System meets every element of at least [one or two asserted claims]." *Id.* ¶¶ 39, 52, 65, 78, 91, 102, 115, 141. For each count, in a footnote to this allegation, Boston Scientific

provides internet links to four pdfs of so-called "[e]xemplary materials": (1) a four-page letter from the Food and Drug Administration approving Nevro's application for commercial distribution of its Senza I System; (2) a 56-page document titled "Summary of Safety and Effectiveness Data" for the Senza I System; (3) a 53-page document titled "Patient Manual" that explains to patients how to use, troubleshoot, and dispose of the Senza I System; and (4) a 31-page document titled "Physician Implant Manual" that instructs physicians on how to implant the Senza I System's components. *Id.* ¶¶ 39 n.10, 52 n.15, 65 n.20, 78 n.25, 91 n.30, 102 n.35, 115 n.40, 141 n.50. Each count next alleges that "[o]n information and belief, the Senza II System is identical to the Senza I system with respect to" a particular feature of the systems and "meets all limitations of" the asserted claim or claims. Finally, for each count, in a footnote to this allegation, Boston Scientific provides an internet link to a 30-page online "Physician Implant Manual" for the Senza II System. *Id.* ¶¶ 39 n.11, 52 n.16, 65 n.21, 78 n.26, 91 n.31, 102 n.36, 115 n.41, 141 n.51.

Boston Scientific makes no attempt to connect specific components of the accused systems to elements of the asserted claims. Nor does it explain how any of the 144 pages of linked materials show such a connection. A plaintiff, however, "may not rely on exhibits attached to the complaint as a substitute for pleading facts sufficient to demonstrate its entitlement to relief." *F2VS Techs., LLC v.*

8

*Aruba Networks, Inc.*, 2018 WL 1732152, at *2 n.2 (D. Del. Apr. 10, 2018). A defendant should not be required to comb through 144 pages of exhibits to understand the bases of a plaintiff's claims, and a court should not have to parse 144 pages of exhibits to determine if they state facts sufficient to demonstrate a plaintiff's entitlement to relief. *See id.* Accordingly, I will dismiss the direct infringement claims alleged in Counts I through VII and IX.[2]

### 3.    Count VIII

Boston Scientific alleges in Count VIII that Nevro directly infringes at least claim 1 of the #690 patent by using, making, selling, offering to sell and/or importing infringing SCS systems including the Senza I and II Systems. D.I. 5 ¶¶ 127–28. Claim 1 of the #690 patents recites:

1. An implantable medical device system having a replenishing power

---

[2] Boston Scientific cites *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018) in support of its argument that it has met the *Iqbal/Twombly* pleading standard because it identified accused products, provided information "akin to including photos" of those products, and alleged that the products meet every element of at least one claim of each asserted patent. D.I. 12 at 6–9. The Court held in *Disc Disease* that in cases that "involve[ ] a simple technology" a complaint is "sufficient under the plausibility standard of *Iqbal/Twombly*" if it (1) names products accused of infringing the asserted patents, (2) includes photographs of the packaging of the accused products, and (3) alleges that the accused products meet every element of at least one claim of the asserted patents. 888 F.3d at 1260. The Court reasoned that "[t]hese disclosures and allegations are enough to provide [a defendant] fair notice of infringement of the asserted patents." *Id.* In this case, the technology is far from simple and thus *Disc Disease* is inapposite. The voluminous exhibits attached to the First Amended Complaint do not provide fair notice of infringement by the accused products.

source comprising:

> an implantable medical device, the device having a housing which contains processing circuitry; and
>
> an external programmer that may be placed in telecommunicative contact with the implantable medical device; and
>
> means for recording battery charging information, which may be recalled later,
>
> wherein the external programmer includes a status indicator for indicating the status of the replenishable power source within the implantable medical device.

#690 patent at claim 1.

Boston Scientific has alleged facts showing that the Senza Systems meet the elements of claim 1. First, Boston Scientific alleges that the Senza Systems comprise an implantable medical device, i.e. the rechargeable, implantable pulse generator. D.I. 5 ¶ 128. Second, it alleges that the accused systems have a replenishing power source, as it alleges that the IPG is "transcutaneously recharged using an external charger." *Id.* ¶ 15. Finally, it alleges that the Senza Systems are controlled by external programmers (i.e., the patient remote and/or clinician programmer), *id.*, and that "the patient remote, programmer, and charger can be placed in telecommunicative contact with the IPG, contain memory that stores battery charging information of the IPG for later recall, and a status indicator for indicating the status of the battery in the IPG," *id.* ¶ 128.

These factual allegations are sufficient to give Nevro notice of how it may infringe the #690 patent, and thus Boston Scientific has stated a plausible claim for direct infringement in Count VIII.

## B. Induced and Contributory Infringement Claims

### 1. Legal Standards

A plaintiff can prevail on claims of induced and contributory infringement only if it establishes direct infringement. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[I]nducement liability may arise if, but only if, there is direct infringement." (internal quotation marks, alterations, and citation omitted)); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) ("[I]f there is no direct infringement of a patent there can be no contributory infringement.").

Both "induced infringement [and] contributory infringement require[ ] knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (citation omitted). For "an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (alterations in original) (internal quotation marks and

citation omitted). Contributory infringement requires a showing that the accused infringer "offers to sell or sells . . . a component of a patented [invention], . . . *knowing* the same to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c) (emphasis added). Contributory infringement thus requires "a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co.*, 377 U.S. at 488.[3]

### 2. Counts I through VII and IX

Because Boston Scientific has not plausibly alleged that Nevro's SCS systems directly infringe the #404, #298, #447, #384, #330, #480, #496, and #071

---

[3] Citing *Nalco* and *Lifetime Industries*, Boston Scientific argues that to plead a claim for induced infringement "[n]othing more is required" than allegations that the defendant (1) had knowledge of the asserted patent and (2) provided instructions, support, and technical assistance for the use of the accused product. D.I. 12 at 11–12. But in *Nalco*, the Federal Circuit held that the complaint in question survived a motion to dismiss because it alleged not only that the defendants knew about the asserted patent but also that the defendants "knew the customers' action would constitute infringement." 883 F.3d at 1356. Similarly, in *Lifetime Industries*, the Court found that the plaintiff stated a plausible claim for inducement because it pleaded that the defendant had knowledge of the asserted patent and its scope, and the products covered by the patent. 869 F.3d at 1380. In any event, the Supreme Court in *Commil* explicitly rejected as "incorrect" the "argu[ment] [that] the party charged with inducing infringement need not know that the acts it induced would infringe." 135 S. Ct at 1926. And the Court expressly held in *Commil* that "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit *and* knowledge of patent infringement." *Id.* at 1926 (emphasis added).

patents respectively in Counts I through VII and IX, it cannot plausibly allege that Nevro induced others to infringe the patents or contributed to others' infringement of them. *See Limelight*, 572 U.S. at 921; *Aro Mfg.*, 365 U.S. at 341. Accordingly, I will dismiss the claims for induced and contributory infringement alleged in those counts.

### 3.    Count VIII

Boston Scientific has plausibly alleged that Nevro's Senza I and II Systems directly infringe the #690 patent, that Nevro marketed and instructed others to use those infringing systems, and that Nevro sold components of the infringing systems. Nevro does not dispute that Boston Scientific has also alleged that Nevro had knowledge of the #690 patent at the time of the alleged infringement. But Boston Scientific has not alleged any facts showing that Nevro knew that its SCS systems infringed the #690 patent. Instead, Boston Scientific's allegations regarding Nevro's knowledge that the SCS systems infringed the #690 patent are conclusory statements that merely recite the legal requirements for induced and contributory infringement. *See* D.I. 5 ¶¶ 129, 132.

A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 (citation omitted). Thus, Boston Scientific's conclusory statements about Nevro's knowledge of infringing activity are

insufficient to state a plausible claim. Accordingly, I will dismiss the claims for induced and contributory infringement of the #690 patent in Count VIII.

### C. Export Infringement Claims (Counts I through IV and VI through VIII)

Boston Scientific alleges that Nevro infringed seven patents in violation of 35 U.S.C. § 271(f) when it "exported the infringing SCS systems from the United States to at least Europe and Australia." D.I. 5 ¶¶ 44, 57, 70, 80, 104, 120, 130. Nevro argues that Boston Scientific's "§ 271(f) claims should be dismissed due to the same lack of factual allegations concerning Nevro's knowledge and intent discussed" in the portions of Nevro's brief that set forth its arguments that Boston Scientific's induced infringement and contributory infringement claims cannot survive under Rule 12(b)(6). D.I. 11 at 12. Nevro never explains what it means by this statement, and I am not going to guess what it means, especially in light of the Federal Circuit's holding in *Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364 (Fed. Cir. 2001) that "§ 271(f)(2) does *not* incorporate the doctrine of contributory infringement." *Id.* at 1368 (emphasis added). Accordingly, I will deny Nevro's motion to dismiss Boston Scientific's § 271(f) claims.

### D. Enhanced Damages Claims Based on Alleged Willful Infringement

#### 1. Legal Standards

Section 284 of the Patent Act "gives district courts the discretion to award enhanced damages against those guilty of patent infringement." *Halo Elecs., Inc.*

14

*v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). The statute provides that "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Although the Court in *Halo* intentionally "eschew[ed] any rigid formula for awarding enhanced damages under § 284," 136 S. Ct. at 1934, the Court held that the legal principles "developed over nearly two centuries of application and interpretation of the Patent Act . . . channel the exercise of [the district court's] discretion" and "limit[ ] the award of enhanced damages to egregious cases of misconduct beyond typical infringement," *id.* at 1935. Thus, enhanced damages awards under § 284 are available only in "egregious cases" of misconduct that involve more than "typical" infringement. *Id.* As the Court explained, the enhanced damages award provided by § 284 was "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior . . . [that] has been variously described in [the Court's] cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932.

Although "§ 284 allows district courts to punish th[is] full range of culpable behavior," *id.* at 1933, in the vast majority of patent cases filed today, claims for enhanced damages are sought based on allegations of willful misconduct—so much so that, even though the words "willful" and "willfulness" do not appear in § 284, plaintiffs and courts more often than not describe claims for enhanced

damages brought under § 284 as "willful infringement claims" (just as the parties have done in this case). Indeed, some parties and courts refer to such claims as willful infringement "causes of action" even though § 271 of the Patent Act, which creates causes of action for direct, induced, and contributory infringement, does not mention or suggest such a thing as "willful infringement."[4]

The fact that willfulness is the most common type of misconduct alleged by plaintiffs who invoke § 284 makes sense, as willful conduct "serve[s] as [the] floor for culpable behavior that may incur enhanced damages." ROBERT L. HARMON, CYNTHIA A. HOMAN & LAURA A. LYDIGSEN, PATENTS AND THE FEDERAL CIRCUIT, § 17.3(a), at 1378 (13th ed. 2017). It also explains the Court's statement in *Halo* that enhanced damages under § 284 "should generally be reserved for egregious cases *typified* by willful misconduct." 136 S. Ct. at 1934 (emphasis added).

---

[4] *See, e.g., Välinge Innovation AB v. Halstead New Eng. Corp.*, 2018 WL 2411218, at *5 (D. Del. May 29, 2018); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1353 (W.D. Wash. 2014); *Trs. of Univ. of Pa. v. St. Jude Children's Research Hosp.*, 982 F. Supp. 2d 518, 529–30 (E.D. Pa. 2013); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012); *Inv. Tech. Grp., Inc. v. Liquidnet Holdings, Inc.*, 759 F. Supp. 2d 387, 409 (S.D.N.Y. 2010); *Powell v. Home Depot U.S.A., Inc.*, 715 F. Supp. 2d 1285, 1290 (S.D. Fla. 2010); *Dura Glob. Tech., Inc. v. Magna Donnelly Corp.*, 665 F. Supp. 2d 787, 789 (E.D. Mich. 2009); *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 691 (E.D. Va. 2000); *Heil Co. v. Hartford Accident and Indem. Co.*, 937 F. Supp. 1355, 1361 (E.D. Wis. 1996); *In re Recombinant DNA Tech. Pat. and Contract Litig.*, 850 F. Supp. 769, 771 (S.D. Ind. 1994).

In assessing the egregiousness of a defendant's conduct for § 284 purposes, "culpability is generally measured against the knowledge of the [defendant] at the time of the challenged conduct." *Id.* at 1933. The Court in *Halo* rejected the Federal Circuit's requirement announced in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc) that a patentee show "objective recklessness" in order to prove willful misconduct for § 284 purposes. The Court reasoned that the "objective recklessness" test insulated many of the most culpable infringers from § 284's punitive sanctions because it made dispositive invalidity and non-infringement defenses asserted at trial even if the infringer had not acted on the basis of those defenses or was even aware of them. In the Court's words: "Under that standard, someone who plunders a patent—infringing it without any reason to suppose his conduct is arguably defensible—can nevertheless escape any comeuppance under § 284 solely on the strength of his attorney's ingenuity." *Halo*, 136 S. Ct. at 1933. Thus, the Court held that, in cases where the asserted basis for enhanced damages is willful misconduct, it is "[t]he subjective willfulness of [the] patent infringer, intentional or knowing, [that] may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.*

The Court's "intentional or knowing" clause makes clear that willful infringement is—at a minimum—knowing infringement. This standard is

17

consistent with the Supreme Court's holding in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." Since § 284 enhanced damages are available in cases of induced infringement, *see, e.g., Barry v. Medtronic, Inc.*, 2019 WL 302886, at *17 (Fed. Cir. Jan. 24, 2019); *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1385 (Fed. Cir. 2013); *ACCO Brand, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1314 (Fed. Cir. 2007); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1371 (Fed. Cir. 2004), and since, under *Halo*, § 284's enhanced damages award is reserved only for egregious cases, it would seem incongruous if not illogical to require a lesser showing of culpability for enhanced damages under § 284 than for induced infringement under § 271(b).

The Federal Circuit recently emphasized in *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019) that under *Halo* enhanced damages are available only if a showing of something more than intentional or knowing infringement is made:

> As the Supreme Court stated in *Halo*, "[t]he sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." While district courts have discretion in deciding whether or not behavior rises to that standard, such findings "are generally reserved for egregious cases of culpable

behavior." Indeed, as Justice Breyer emphasized in his concurrence, it is the *circumstances* that transform simple "intentional or knowing" infringement into egregious, sanctionable behavior, and that makes all the difference.

*Id.* (emphasis in original) (citations omitted).[5]

Neither the Supreme Court in *Halo* nor the Federal Circuit in *SRI* directly addressed the pleading requirements for an enhanced damages claim. Because of the difficulty in articulating precisely the range or type of circumstances that would transform a "simple 'intentional or knowing'" infringement claim into an enhanced damages claim, the safest course is to allow an enhanced damages claim to proceed

---

[5] I am aware that in *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017), the Federal Circuit held that proof that a defendant "should have known that its actions constituted an unjustifiably high risk of infringement" was enough to establish willfulness under *Halo*. In so holding, the Court expressly rejected the defendant's argument that this "'should have known' standard contradicts *Halo*." *Id.* Two other Federal Circuit decisions issued after *Halo* held that a plaintiff can establish willfulness for § 284 purposes with proof that "the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known." *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (internal quotation marks and citations omitted), *rev'd on other grounds*, 138 S. Ct. 2129 (2018); *see also WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018) (citing *Arctic Cat*, 876 F.3d at 1371) (holding that in reviewing "under the new *Halo* standard" a district court's award of enhanced damages, "we must determine whether the evidence, when viewed in the light most favorable to [the plaintiff], was sufficient to prove by a preponderance of the evidence that [the defendant] acted despite a risk of infringement that was either known or so obvious that it should have been known to [the defendant]"). All three of these cases were decided before *SRI*, and, in my view, cannot be reconciled with *Halo*. I will therefore follow *SRI*.

beyond the pleadings stage if the operative pleading alleges facts from which it can be plausibly inferred that the party accused of infringement had knowledge of the asserted patent and knowledge that the party's alleged conduct constituted, induced, or contributed to infringement of the asserted patent. And since the doctrine of willful blindness applies in patent cases, *see Global-Tech*, 563 U.S. at 766, a willful infringement-based claim for enhanced damages survives a motion to dismiss if it alleges facts from which it can be plausibly inferred that the party accused of infringement (1) had knowledge of or was willfully blind to the existence of the asserted patent and (2) had knowledge of or was willfully blind to the fact that the party's alleged conduct constituted, induced, or contributed to infringement of the asserted patent.

## 2.  Discussion

The parties do not dispute that Boston Scientific has plausibly alleged that Nevro had knowledge of the asserted patents at the time of the alleged infringement. Boston Scientific, however, has not alleged any facts showing that Nevro knew that its SCS systems infringed the asserted patents; rather, it merely states in each count that "Nevro's infringement is reckless, knowing, deliberate, and willful." D.I. 5 ¶¶ 45, 58, 71, 84, 95, 108, 121, 134, 145. Such conclusory statements are insufficient to plead a cognizable claim. *See Twombly*, 550 U.S. at 555. Accordingly, I will dismiss its claims for enhanced damages.

### E. CUTSA Trade Secret Misappropriation Claim (Count X)

#### 1. Legal Standards

To state a claim for trade secret misappropriation under the CUTSA, a plaintiff must allege that "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1038 (C.D. Cal. 2012) (citations omitted).

To establish that it owned a trade secret, a plaintiff must show (1) that the subject of the trade secret was not "generally known to the public or to other persons who [could] obtain economic value from its disclosure or use" and (2) that plaintiff took reasonable efforts "under the circumstances to maintain [the trade secret's] secrecy." *See* Cal. Civ. Code § 3426.1(d). A plaintiff must describe the subject matter of the trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1155 (C.D. Cal. 2007) (internal quotation marks, alterations, and citations omitted). Trade secrets, however, "need not be disclosed in detail in a complaint . . . for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991) (citation omitted).

To prove misappropriation, the plaintiff must show (1) that "the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means," *CytoDyn, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008), and (2) that the defendant knew or had reason to know that it was "not in rightful possession of the information," *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585 (2008).

### 2. Identification of The Alleged Trade Secrets

Nevro argues that the amended complaint fails to allege the existence of a trade secret for three reasons: (1) a California court previously rejected Boston Scientific's claims that the documents in question should have been sealed in a court filing because they contain trade secrets, D.I. 11 at 18; (2) Boston Scientific "fails to separate [its alleged trade secrets] from matters of general knowledge in the trade," *id.*, and (3) the contents of the Confirmatory Study document that Thacker emailed to his Nevro colleague were disclosed four years before his email when the National Institute of Health (NIH) published the results of the study underlying the document, *id.* at 19. All three arguments lack merit.

First, Nevro's reliance on another court's ruling is improper in the context of a Rule 12(b)(6) motion. It is black letter law that a district court "may not consider matters extraneous to the pleadings" when ruling on a motion to dismiss. *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).[6]

Second, the amended complaint identifies the alleged trade secrets with sufficient particularity to separate them from knowledge in the trade. Specifically, the amended complaint alleges that (1) Thacker sent emails to Nevro employees containing the "Stimulus™ Confirmatory Study" and the "Spinal Cord Stimulator Clinician's Programming System, Module Specification," D.I. 5 ¶¶ 159, 163; (2) the Confirmatory Study was "Boston Scientific's protocol to run the clinical investigation for its Precision™ product" and it included "such confidential information as subject enrollment criteria . . ., study design, methodology/testing requirements, and monitoring requirements," *id.* ¶ 161; and (3) the Module Specification was a Boston Scientific internal document with "information necessary for the design and development of Boston Scientific's SCS products, and include[d] such confidential information as software functional requirements, including specific programming requirements," *id.* ¶ 166. This level of detail adequately separates the alleged trade secrets from matters of general knowledge in

---

[6] Nevro devoted almost four pages of its opening brief and a page of its reply brief to discussions about the California case and another case filed in this court. Nothing about those cases has any relevance to a motion to dismiss for failure to state a claim under Rule 12(b)(6). As a sanction for causing Boston Scientific and the Court to have to wade into irrelevant argument, Nevro's word limit for the next brief it files in this case will be reduced by 1,000.

the trade or special knowledge of those persons skilled in the trade. It thus

provides sufficient particularity to survive a motion to dismiss.

Third, assuming *arguendo* that I could take judicial notice of the NIH

publication of the results of the study underlying the Confirmatory Study document

for purposes of deciding this motion, the amended complaint alleges that Thacker

emailed his Nevro colleagues other documents that contained trade secrets that

were not disclosed by the NIH. Moreover, the amended complaint alleges that the

Confirmatory Study "would not have been disclosed to anyone not involved with

the clinical investigation," *id.* ¶ 161, and I must accept for Rule 12(b)(6) purposes

that the allegations in the amended complaint are true.

### 3. Knowing Acquisition, Disclosure, or Use of the Trade Secrets through Improper Means

Nevro also argues that Boston Scientific has not plausibly alleged that Nevro

knew about the alleged trade secrets or that it acquired, disclosed, or used those

trade secrets through improper means. D.I. 11 at 17. But the amended complaint

specifically alleges that Thacker provided the Confirmatory Study and the Module

Specification to Nevro employees and that both the study and the specification

were marked in a manner that made clear their propriety and confidential nature.

*See* D.I. 5 ¶ 160 (alleging that the Confirmatory Study had the following warning

typed in bold on every page: "Proprietary information of Advanced Bionics.

Subject to terms of Non-Disclosure Agreement"); *id.* ¶ 164 (alleging that the

Module Specification contained the word "CONFIDENTIAL" on the front page in bold and had the following message: "This document contains confidential information and is proprietary to Advanced Bionics corporation and may not be distributed or reproduced without the prior express written consent of Advanced Bionics"). Thus, the amended complaint alleges facts from which it can plausibly be inferred that Nevro knowingly acquired Boston Scientific's trade secrets.

The amended complaint also alleges facts from which it can be plausibly inferred that Nevro used these trade secrets. Specifically, it alleges that the Confirmatory Study's internal investigation protocol for its Precision™ SCS product and the Module Specification's internal information for the design and development of Boston Scientific's SCS products would have been valuable to Nevro, "who during the relevant time period was developing its own SCS system, and conducting its own clinical investigations." *Id.* ¶ 162; *see also id.* ¶ 167. And it alleges that "[s]ince Nevro had never developed an SCS product before, the Stimulus Confirmatory Study disclosed by Mr. Thacker provided Nevro with a necessary tool to develop its own clinical investigation protocol." *Id.* ¶ 162.

### F.     Tortious Interference with Contract Claim (Count XI)

Finally, in Count XI Boston Scientific accuses Nevro of tortious interference with contract. Nevro argues that I should dismiss the claim because it is preempted by Boston Scientific's trade secret claim and is insufficiently pled. D.I. 11 at 19,

20. Because I agree that Boston Scientific has not pled sufficient facts to state a plausible claim for tortious interference, I will dismiss the claim without addressing Nevro's argument that the claim is preempted.

To state a claim under California law for tortious interference with contract, a plaintiff must plausibly allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1202 (N.D. Cal. 2014) (citations omitted).

Although Boston Scientific has alleged facts that plausibly show elements one, two, four, and five, it has not alleged any facts regarding element three—i.e., it has not alleged facts that plausibly show that Nevro intentionally acted "to induce a breach or disruption of the contractual relationship" between Thacker and Boston Scientific. As Boston Scientific itself acknowledges, the only "intentional act" it alleges consistent with element three appears in the following statement from the amended complaint: "Upon information and belief, Nevro intentionally, and in violation of applicable law, interfered with the contract between Mr. Thacker and Boston Scientific by encouraging Mr. Thacker to breach his contract with Boston Scientific and/or disrupt the contractual relationship between Mr.

Thacker and Boston Scientific." D.I. 12 at 20 (citing D.I. 5 ¶ 176). Such a conclusory allegation that is essentially a "formulaic recitation of the elements of a cause of action" is insufficient to plead a cognizable claim. *Twombly*, 550 U.S. at 555. Accordingly, I will dismiss Count XI.

## IV. CONCLUSION

For the foregoing reasons, I will grant-in-part and deny-in-part Nevro's motion. I will grant Nevro's motion insofar as it seeks dismissal of the direct infringement claims alleged in Counts I through VII and IX but will deny the motion insofar as it seeks dismissal of the direct infringement claim alleged in Count VIII. I will grant the motion insofar as it seeks to dismiss Boston Scientific's claims for induced infringement, contributory infringement, and enhanced damages based on willful infringement. I will deny the motion insofar as it seeks dismissal of Boston Scientific's claims for export infringement and trade secret misappropriation. And I will grant the motion insofar as it seeks dismissal of the tortious interference of contract claim in Count XI. Finally, I will reduce by 1,000 the number of words Nevro can use in the brief it files in support of its next motion in this case.

The Court will enter an order consistent with this Memorandum Opinion.