IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., | ) ) ) | |
| | ) | |
| Plaintiffs and Counter-Defendants, | ) ) | C.A. No. 18-644 (CFC) |
| | ) | REDACTED - PUBLIC VERSION |
| v. | ) | |
| | ) | |
| NEVRO CORP., | ) | |
| | ) | |
| Defendant and Counterclaimant. | ) ) | |

## NEVRO CORP.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY THE ACTION PENDING COMPLETION OF *INTER PARTES* REVIEW

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan, III
SIDLEY AUSTIN LLP
1501 K. Street, N.W.
Washington, DC  20005
(202) 736-8510

MORRIS, NICHOLS, ARSHT, & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant and Counterclaimant Nevro Corp.*

Original Filing Date: February 4, 2020
Redacted Filing Date: February 11, 2020

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS..............................................2

III.    SUMMARY OF ARGUMENT ......................................................................4

IV.     ARGUMENT...............................................................................................5

        A.      A Stay Will Simplify the Issues .............................................6

        B.      A Stay Will Not Prejudice BSC or Provide a Tactical
                Disadvantage ......................................................................10

        C.      The Early Stage of This Case Supports a Stay....................15

V.      CONCLUSION..........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Vent, Inc. v. Owens Corning Corp.*,
    No. 2:10-cv-01699, 2012 WL 1607145 (W.D. Pa. May 8, 2012)....................13

*AT&T Intellectual Prop. I, L.P. v. Cox Commc'ns, Inc.*,
    C.A. No. 14-1106-GMS, slip op. (D. Del. Sept. 24, 2015) ..................................7

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017) ..........................................................................8

*Boston Sci. Corp. v. Cordis Corp.*,
    777 F. Supp. 2d 783 (D. Del. 2011)...................................................................10

*British Telecomms. PLC v. IAC/InterActiveCorp*,
    C.A. No. 18-366-WCB, 2019 WL 4740156 (D. Del. Sept. 27,
    2019) ............................................................................................................*passim*

*Canatelo LLC v. Axis Commc'ns AB*,
    C.A. No. 13-1227-GMS, 2014 WL 12774920 (D. Del. May 14,
    2014) ...................................................................................................................15

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985) ...................................................................................5

*Destination Maternity Corp. v. Target Corp.*,
    12 F. Supp. 3d 762 (E.D. Pa. 2014)..............................................................12, 13

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*,
    C.A. No. 09-571-JJF, 2010 WL 2573925 (D. Del. June 25, 2010)....................12

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) ...........................................................................5

*Ever Win Int'l Corp. v. Radioshack Corp.*,
    902 F. Supp. 2d 503 (D. Del. 2012)...................................................................10

*Fifth Market, Inc. v. CME Group Inc.*,
     C.A. No. 08-520-GMS, 2011 WL 12522192 (D. Del. May 20,
     2011) ................................................................................................15

*IOEngine, LLC v. PayPal Holdings, Inc.*,
     C.A. No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21,
     2019) ...........................................................................................6, 8, 9

*Murata Machinery USA v. Daifuku Co.*,
     830 F.3d 1357 (Fed. Cir. 2016) ...................................................6, 15

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
     C.A. No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013) .............13, 14

*Nokia Corp. v. Apple Inc.*,
     C.A. No. 09-791, 2011 WL 2160904 (D. Del. June 1, 2011) ...........................6

*SenoRx, Inc. v. Hologic, Inc.*,
     C.A. No. 12-173-LPS-CJB, 2013 WL 144255 (D. Del. Jan. 11,
     2013) ................................................................................................15

*Studer Prof'l Audio GmbH v. Calrec Audio Ltd.*,
     No. 12-2278, 2012 WL 3061495 (D.N.J. July 25, 2012) ...........................12, 14

*Wall Corp. v. BondDesk Grp., LLC*,
     C.A. No. 07-844-GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009)...................12

**Rules, Statutes and Regulations**

35 U.S.C. § 315(b) ................................................................................11

35 U.S.C. § 316(a)(11)...........................................................................12

37 C.F.R. § 42.100(c).............................................................................12

## I.    INTRODUCTION

The Patent Trial and Appeal Board ("PTAB") has instituted *inter partes* review ("IPR") against seven of the nine patents currently asserted by Boston Scientific Corp. and Boston Scientific Neuromodulation Corp. (collectively, "Boston Scientific" or "BSC").  Nevro Corp. ("Nevro") respectfully requests the Court stay all claims asserted by BSC including BSC's trade secret claims.  To the extent the Court grants this motion to stay BSC's infringement and trade secret claims, Nevro is prepared to also stay its counterclaims to further simplify the Court's docket.

A stay of BSC's claims is appropriate at this time because this case is at its inception.  With fact discovery not yet begun, a stay will greatly simplify this case and prevent the unnecessary expenditure of judicial and party resources on patents that the PTAB may find unpatentable as well as on claim construction issues that may be clarified by additional intrinsic evidence generated during the IPR proceedings.  This applies even to the two patents-in-suit not the subject of Nevro's IPR petitions (because they are related to one of the patents for which IPR has been instituted) and BSC's trade secret misappropriation claims (because this discovery will overlap with BSC's infringement allegations).

A stay will not prejudice BSC, nor put it at a tactical disadvantage. BSC has not moved for a preliminary injunction on either its infringement or trade

secret claims.  Although BSC has been ████████████████████████████

████████████████████████████████████ since 2012, it did not file

this action until 2018.  After filing its Complaint, BSC elected not to serve Nevro

and instead waited three months to file and serve an amended complaint.  Even

after Nevro filed a motion challenging the sufficiency of BSC's factual pleadings,

BSC chose not to amend its Complaint for over a year.  BSC's actions demonstrate

that any possible harm to BSC during a stay can be addressed by a monetary

award.  Moreover, a stay of all of BSC's claims will simplify discovery and

diminish the possibility of multiple trials.  Thus, the likely substantial

simplification of issues far outweighs the impact of any delay to the action.

## II.    NATURE AND STAGE OF PROCEEDINGS

BSC filed a complaint against Nevro on April 27, 2018, asserting four

patents, but never served it.  D.I. 1.  Three months later, on July 18, 2018, BSC

filed its First Amended Complaint ("FAC"), alleging, *inter alia*, infringement of

nine patents, only one of which overlapped with the original Complaint, plus

claims of trade secret misappropriation and tortious interference.  D.I. 5.  On

September 10, 2018, Nevro moved to dismiss the FAC for several reasons,

including failure to plead facts sufficient to substantiate its patent infringement

claims.  D.I. 10.  Rather than filing an amended complaint to provide the

supporting facts—as it did in response to a similar motion in the co-pending

litigation between the parties—BSC opposed the motion and chose not to supplement its allegations for over a year.  On November 25, 2019, the Court granted-in-part Nevro's motion to dismiss on the basis that BSC failed to plead sufficient facts to substantiate most of its infringement claims.  D.I. 23 & 24. Nevro filed its Answer and Counterclaims three weeks later.  D.I. 27.

On January 13, 2020, Boston Scientific notified Nevro that it would seek to file a Second Amended Complaint ("SAC") (D.I. 34) in which it maintains its trade secret misappropriation claims but alleges infringement of only eight of the nine patents from its FAC[1]:  U.S. Patent Nos. 7,496,404 (the "'404 patent"); 8,682,447 (the "'447 patent"); 6,993,384 (the "'384 patent"); 7,853,330 (the "'330 patent"); 7,822,480 (the "'480 patent"); 6,381,496 (the "'496 patent"); 7,177,690 (the "'690 patent"); and 9,162,071 (the "'071 patent").[2]

---

[1]    The parties have agreed that neither party will include claims of indirect or willful infringement in their pleadings at this point of the case, subject to each party's right to amend pleadings based on good cause provided by discovery. Declaration of Ketan V. Patel ("Patel Decl."), Ex. O (Emails between BSC and Nevro counsel).  The parties expect that this agreement will moot BSC's pending motion to dismiss Nevro's counterclaims, and that BSC will withdraw its pending motion for leave to file the SAC and refile an unopposed motion consistent with the parties' agreement.  *Id.*

[2]    BSC is no longer asserting any claims related to U.S. Patent No. 7,127,298, the ninth patent identified in the FAC.

The Court held a Scheduling Conference on January 16, 2020, and ordered the parties to submit a final proposed scheduling order by February 14, 2020.  The parties have not yet begun fact discovery.

Meanwhile, in mid-July 2019, Nevro filed IPR petitions challenging the validity of seven of the nine patents asserted in the FAC.  *See*, *e.g.*, Patel Decl., Exs. A-G.  Between January 21 and 23, 2020, the PTAB instituted trial on every one of Nevro's IPR petitions.  Patel Decl., Ex. H-N.  This includes six of the eight patents in BSC's SAC.  The PTAB will issue final written decisions on Nevro's IPRs no later than January 2021.

## III.    SUMMARY OF ARGUMENT

The Court should stay BSC's claims pending the outcome of Nevro's IPR petitions because a stay will simplify the issues in this case, which is still in its early stages, without prejudice to BSC.

1.    <u>Simplification</u>.  A stay will significantly reduce the issues.  In response to the IPRs, BSC has already withdrawn certain allegations in the FAC.  The IPRs address every claim thus far asserted for each challenged patent as well as numerous additional claims.  Thus, any finding of unpatentability will obviate the need for claim construction, discovery, and trial for those claims.  The PTAB's findings and any BSC statements made during the IPRs will also clarify claim construction.

4

2. <u>Absence of Prejudice or Tactical Disadvantage.</u>  BSC will not suffer prejudice or any other disadvantage from a stay.  BSC has not demonstrated any urgency in litigating the Asserted Patents.  BSC has been aware of the allegedly infringing technology since 2012 but waited six years to bring these claims.  For 15 months, BSC chose not to amend its FAC in response to Nevro's motion to dismiss.  BSC's actions demonstrate that monetary damages can address any potential harm.

3. <u>Timing.</u>  This case is in its inception.  Fact discovery has not yet begun and trial has been scheduled for October 18, 2021, over a year-and-a-half from now.  Accordingly, a stay will conserve significant judicial and party resources.

## IV.  ARGUMENT

"A district court has inherent power to control its own docket, including the power to stay the proceedings before it." *British Telecomms. PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2019 WL 4740156, at *2 (D. Del. Sept. 27, 2019); *see Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).  The question of whether to stay a case pending IPR review of any asserted patents is a matter solely within the Court's discretion.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *British Telecomms.*, 2019 WL 4740156, at *2.

Three factors are relevant to deciding whether to grant a stay pending IPR: "([1]) whether a stay will simplify the issues in question and trial of the case"; "([2]) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; . . . and (3) whether discovery is complete and whether a trial date has been set." *Murata Machinery USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (quoting *Nokia Corp. v. Apple Inc.*, C.A. No. 09-791, 2011 WL 2160904, at *1 (D. Del. June 1, 2011)). All three factors support a stay.

### A.   A Stay Will Simplify the Issues

"The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial." *IOEngine, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 3943058, at *8 (D. Del. Aug. 21, 2019). This factor weighs heavily in favor of a stay of BSC's claims.

The IPRs have already reduced the number of issues in this case and will certainly continue to simplify the issues further. For example, since receiving Nevro's IPR petitions, BSC has already sought to withdraw its allegations as to one asserted patent and disclaimed[3] claims in two others. Patel Decl., Exs. H (p. 3), I (pp. 3-4), K. Further, the IPRs may dispose of most, if not all, of the

---

[3]    By disclaiming these claims, BSC canceled them rendering them non-existent.

6

claims that BSC may assert for the challenged patents. *See*, *e.g.*, *AT&T Intellectual Prop. I, L.P. v. Cox Commc'ns, Inc.*, C.A. No. 14-1106-GMS (D.I. 161), slip op. at 3 n.4 (D. Del. Sept. 24, 2015) (granting stay where defendant "requested review of more than half the claims asserted in this case"). Nevro has challenged—and the PTAB has instituted IPRs on—each exemplary claim BSC has identified for these patents, as well as numerous additional claims for each patent.[4] Any finding of unpatentability would thus obviate the need for claim construction, fact discovery, expert discovery, and trial for those claims. *See British Telecomms.*, 2019 WL 4740156, at *8 ("[I]f the PTAB invalidates all the claims before it, the case will unquestionably become simpler.").

Maintaining the current case schedule would likely result in the Court and the parties unnecessarily expending resources to litigate discovery disputes and claim construction issues that will either (a) be mooted by the IPRs, or (b) require modification and re-litigation. The Court has scheduled the *Markman* hearing in this case for January 6, 2021. Without a stay, the Court will not benefit from any narrowing statements made by BSC or clarification provided by the PTAB's final decisions. Further, the parties have proposed that document production be completed no later than December 2020, and that fact discovery close no later than

---

[4]     At the time the IPRs were filed, BSC had not (and it still has not) provided infringement contentions.

7

February 2021.  *See* D.I. 37, pp. 21-22.  In the absence of a stay, the Court and the parties will unnecessarily expend resources on potentially unpatentable claims.

Even if any claims survive, the IPRs will simplify any remaining issues.  For example, the Court will benefit from the PTAB's findings on claim construction.  *British Telecomms.,* 2019 WL 4740156, at *8 ("[T]he Court will benefit from the PTAB's guidance on the construction of certain claim terms.").  Further, because BSC's statements during the IPRs are intrinsic evidence, any statements about claim scope will narrow the asserted claims.  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) (holding that patent owner statements in an IPR can limit the scope of a patent).  This is true even for the two patents Nevro did not petition (the '384 and '330 patents), as those patents share a common specification with an IPR petitioned patent (the '447 patent).  *See IOEngine*, 2019 WL 3943058, at *9 (noting that claim construction and assessment of prior art in an IPR proceeding "will likely be instructive in the district court litigation" for the claims of two other patents that are not involved in the IPR proceeding because they share a common specification with the challenged patent).  "[A]llowing the PTO to adjudicate [] validity… in the IPR" will prevent any redundancy in the work of the administrative and judicial proceedings, as well as reduce the possibility for an inconsistent result between the proceedings.  *British Telecomms.*, 2019 WL 4740156, at *8; *see IOEngine*, 2019 WL 3943058, at *10.

Even if BSC later asserts non-challenged claims, "district courts have frequently issued stays in cases in which IPR proceedings have been instituted on fewer than all the claims asserted . . . ." *IOEngine*, 2019 WL 3943058, at *9. Because claims relying on the same specification typically have overlapping claim terms, a patentee's statements regarding the scope of specific claims will affect all claims in the patent. *See British Telecomms.*, 2019 WL 4740156, at *9 (noting that although an IPR was not instituted on all claims at issue, the IPR proceeding may impact similar claims from the same patent); *IOEngine*, 2019 WL 393058, at *9 (noting that patents that share a specification also share claim terms that can impact claim construction). Further, a stay on only a subset of asserted claims risks multiple trials on the same patents.

Likewise, a stay of BSC's trade secret allegations will also simplify the case. Discovery on BSC's trade secret claims will overlap with at least the '384, '690, '330 and '447 patents because BSC has accused James Thacker, one of the named inventors of these patents, of misappropriating BSC's trade secrets. *See* D.I. 5 at ¶¶ 27, 151-70. Allowing some claims to proceed while others are stayed could be wasteful because multiple rounds of discovery and trials will be required if any claims survive the IPRs.

Moreover, to the extent the Court grants Nevro's motion to stay BSC's claims (including its trade secret claims), Nevro is willing to consent to a

stay of its counterclaims, to further simplify the Court's docket and ensure one round of discovery and one trial on all of the parties' claims in this action.[5]

Because the IPRs will simplify the issues in this case and conserve both the Court's and the parties' resources and time, this factor weighs heavily in favor of a stay of BSC's claims.

### B.    A Stay Will Not Prejudice BSC or Provide a Tactical Disadvantage

In determining whether a stay would cause a non-moving party undue prejudice or place it at a tactical disadvantage, courts in Delaware have considered the following subfactors:  "(1) the timing of the [IPR requests]; (2) the timing of the request for stay; (3) the status of [IPRs]; and (4) the relationship of the parties." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012) (*citing Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011)).  Each of these subfactors supports staying BSC's claims.

---

[5]    Despite the overlap of BSC's trade secret allegations with the Asserted Patents, BSC has proposed that its trade secret claims here be tried with the patent claims currently stayed in the co-pending action between the parties (C.A. No. 16-1663), while the remainder of this action is stayed.  Patel Decl., Ex. P (Email from BSC counsel) at 1.  In the co-pending case, however, fact discovery closed and expert reports were finalized prior to the stay, and expert depositions had already commenced.  Given the different stages of the litigations, it makes no sense to combine the trade secret claims in this case with the patent claims in another case. Combining claims from this action with those in the co-pending action increases the likelihood that multiple trials may be necessary in each case.

### 1. The Timing of Nevro's IPR Petitions and Request for Stay Both Support a Stay

The first two subfactors both weigh in favor of a stay.  First, the timing of Nevro's filing of its IPR petitions was reasonable.  Before filing the IPR petitions, Nevro filed a motion to dismiss the FAC.  D.I. 10.  Because Nevro's motion to dismiss may have resulted in this action being dismissed and, thus, avoided the need to file IPR petitions, it was reasonable for Nevro to wait for the Court's ruling on the motion to dismiss.  *See British Telecomms.*, 2019 WL 4740156, at *5 (finding it reasonable "to wait for the Court's ruling on the motion to dismiss before filing [an] IPR petition.").  Ultimately, Nevro timely filed its IPR petitions in July 2019 within the one-year time bar under 35 U.S.C. § 315(b), and before the Court ruled on Nevro's motion to dismiss.  D.I. 23.  Thus, this first subfactor weighs in favor of staying the case.

Second, Nevro promptly submitted this motion after the PTAB instituted the IPRs in January 2020.  *See British Telecomms.*, 2019 WL 4740156, at *5 ("An earlier request for a stay would have been premature, as courts almost invariably deny [stay] requests . . . filed before the IPR is instituted.").  In addition, no scheduling order has been entered, and thus, there are no pending deadlines to stay.  Accordingly, the second subfactor weighs toward staying the case.

## 2.     The Status of the IPR Petitions Supports a Stay

The Patent Office instituted all of Nevro's IPR petitions and will issue final decisions by January 2021.   *See* 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c).  The *Markman* hearing in this case is scheduled for January 6, 2021. Fact and document discovery will be completed no later than February 2021. Without a stay, the PTAB's final rulings will issue too late to provide any benefits for the Court or the parties without re-litigation of these issues.  Further, the parties would have undertaken needless discovery as to any patent claims that the PTAB finds unpatentable.  This subfactor thus favors a stay.  *See British Telecomms.*, 2019 WL 4740156 at \*6 ("The prospect that [an] IPR decision will have a significant effect on the issues presented in the litigation counsels in favor of a stay.").

## 3.     The Relationship Between the Parties Supports a Stay

The delay caused by an IPR does not, by itself, establish undue prejudice. *See Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, C.A. No. 09-571-JJF, 2010 WL 2573925, at \*3 (D. Del. June 25, 2010); *Wall Corp. v. BondDesk Grp., LLC*, C.A. No. 07-844-GMS, 2009 WL 528564, at \*2 (D. Del. Feb. 24, 2009).  Nor does the fact that Nevro and BSC are competitors.  *See*, *e.g.*, *Studer Prof'l Audio GmbH v. Calrec Audio Ltd.*, No. 12-2278, 2012 WL 3061495, at \*2 (D.N.J. July 25, 2012) (finding stay not unduly prejudicial though parties were

direct competitors when plaintiff did not seek a preliminary injunction); *see also Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 768 (E.D. Pa. 2014); *Air Vent, Inc. v. Owens Corning Corp.*, No. 2:10-cv-01699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012).

According to BSC, the Spinal Cord Stimulator ("SCS") market consists of four primary competitors, BSC, Nevro, Medtronic, and Abbott, of which BSC claims to be the market leader.  D.I. 5 at ¶¶ 14, 24.  BSC alleges that the Asserted Patents are "core technology" common in *all* SCS systems.  D.I. 5 at ¶ 14.  Therefore, it would not be credible for BSC to argue that staying its case against Nevro—which BSC believes is just one of several smaller competitors— will be unduly prejudicial.  *See Destination Maternity*, 12 F. Supp. 3d at 768; *Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-662-GMS, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013) ("There may be less cause for concern [of undue prejudice], however, when there are a number of active firms in the relevant market . . . ."); *Air Vent*, 2012 WL 1607145, at *3 ("The Court finds that the fact that there are other competitors in the market undermines [Plaintiff]'s assertion of undue prejudice because of loss of market value.").

This is particularly true here, where BSC has known about the allegedly infringing technology since 2012, but (1) chose not to assert these claims for six years, and (2) chose not to seek a preliminary injunction.  *See Boston Sci.*

13

*Corp. v. Nevro Corp.*, C.A. 16-1163 (CFC), D.I. 111, Ex. 1 (BSC Privilege Log) at 7 (D. Del. Nov. 3, 2017) (identifying that BSC, ███████████████████ ███████████████████████████████████████████████ in 2012); *see also Neste Oil*, 2013 WL 424754, at *3 ("Given [patentee's] failure [to seek a preliminary injunction] and the large number of firms in the [relevant] market, the court is not wholly convinced that . . . defendants are such 'direct competitors' that granting a stay in this matter would cause [Plaintiff] undue prejudice."); *Studer Prof'l Audio*, 2012 WL 3061495, at *2.  If BSC truly were concerned about a potentially unrecoverable loss of market value for its "core [SCS] technologies," it would not have waited over a year to fix FAC deficiencies identified in Nevro's Motion to Dismiss.[6]  Further, James Thacker, the former BSC employee accused of trade secret misappropriation is no longer employed at Nevro and all BSC documents in his possession have already been returned.  Accordingly, BSC cannot identify why future monetary damages would fail to provide complete redress for any purported Nevro infringement or trade secret misappropriation.

Thus, this subfactor weighs in favor of a stay.

---

[6]    In the co-pending litigation between the parties, BSC elected to immediately amend its complaint to provide more detail regarding its direct infringement allegations rather than oppose Nevro's motion to dismiss on similar grounds.  *See Boston Sci. Corp.*, C.A. 16-1163 (CFC), D.I. 13 (D. Del. Feb. 13, 2017).

### C.   The Early Stage of This Case Supports a Stay

The final factor is "whether discovery is complete and whether a trial date has been set." *Murata Machinery*, 830 F.3d at 1361. A s discussed above, this case is still in its early stages as fact discovery has not yet begun.  "Staying a case in its early stages advances judicial efficiency and prevents the court and the parties from expending resources on claims that may be rendered invalid." *Canatelo LLC v. Axis Commc'ns AB*, C.A. No. 13-1227-GMS, 2014 WL 12774920, at *1 n.4 (D. Del. May 14, 2014) (citing *SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173-LPS-CJB, 2013 WL 144255, at *4 (D. Del. Jan. 11, 2013)); *see also Fifth Market, Inc. v. CME Group Inc.*, C.A. No. 08-520-GMS, 2011 WL 12522192, at *1-*2 (D. Del. May 20, 2011) (staying case pending reexamination after claim construction and near the end of discovery).  This factor thus weighs in favor of a stay.

## V.   CONCLUSION

For these reasons, Nevro requests the Court stay Boston Scientific's infringement claims pending full resolution of Nevro's petitions for *inter partes* review, including appeal.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant and
Counterclaimant Nevro Corp.*

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan, III
SIDLEY AUSTIN LLP
1501 K. Street, N.W.
Washington, DC  20005
 (202) 736-8510

February 4, 2020

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type and word limitations set forth in the Standing Order Regarding Briefing in All Cases, dated November 6, 2019, and as set forth in the Court's November 25, 2019 opinion reducing by 1,000 the number of words Nevro can use in the next brief it files (*see* D.I. 23 at 27), because it contains 3,610 words as determined by the Word Count feature of Microsoft Word.

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)