# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORP. AND BOSTON SCIENTIFIC NEUROMODULATION CORP., | |
| Plaintiffs, | |
| v. | C.A. No. 16-1163-CFC |
| NEVRO CORP., | **REDACTED PUBLIC VERSION** |
| Defendant. | |

| | |
|---|---|
| BOSTON SCIENTIFIC CORP. AND BOSTON SCIENTIFIC NEUROMODULATION CORP., | |
| Plaintiffs, | |
| v. | C.A. No. 18-644-CFC |
| NEVRO CORP., | **REDACTED PUBLIC VERSION** |
| Defendant. | |

**PLAINTIFFS' COMBINED OPENING BRIEF IN SUPPORT OF ITS MOTION TO CONSOLIDATE, BIFURCATE, AND PARTIALLY LIFT STAY, AND ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

*Of Counsel:*

Matthew M. Wolf
Edward Han
Marc Cohn
Amy DeWitt
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
Matthew.Wolf@arnoldporter.com
Edward.Han@arnoldporter.com
Marc.Cohn@arnoldporter.com
Amy.DeWitt@arnoldporter.com

Krista M. Carter
Thomas T. Carmack
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500
Krista.Carter@arnoldporter.com
Tom.Carmack@arnoldporter.com

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
**YOUNG CONAWAY STARGATT &
TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs Boston Scientific
Corporation and Boston Scientific
Neuromodulation Corp.*

February 18, 2020

Redacted Version:   February 19, 2020

ii

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ......................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS..............................................3

III.   SUMMARY OF THE ARGUMENT .............................................................6

IV.   STATEMENT OF FACTS .............................................................................7

V.    ARGUMENT...................................................................................................10

       A.    The 2016 No IPR Patent Claims And The Trade Secret Claim Should Not Be Stayed.......................................................................10

       B.    Trying The 2016 No IPR Patent Claims And The Trade Secret Claim In October 2021 Would Be Efficient And Minimize The Risk Of Multiple Trials Between The Parties.................................................16

VI.   CONCLUSION..............................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Albritton v. Acclarent, Inc.*,
   2018 WL 6929856 (N.D. Tex. Mar. 29, 2018) ....................................................14

*Amkor Tech., Inc. v. Synaptics, Inc.*,
   2016 WL 9331100 (D. Del. Oct. 25, 2016)................................................. 13, 14

*CIMA Labs Inc. v. Mylan Pharms., Inc.*,
   2011 WL 1479062 (D. Del. Apr. 18, 2011) ........................................................10

*Dermafocus LLC v. Ulthera, Inc.*,
   2018 WL 5113960 (D. Del. Oct. 19, 2018)........................................................11

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
   757 F. Supp. 2d 431 (D. Del. 2010) ....................................................................11

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016) ..........................................................................11

*Nevro Corp. v. Bos. Sci. Corp.*,
   2018 WL 4676501 (N.D. Cal. July 24, 2018) ......................................................4

*Nevro Corp. v. Stimwave Techs., Inc.*,
   2019 WL 3322368 (D. Del. July 24, 2019)........................................................15

*Personalized User Model, L.L.P. v. Google, Inc.*,
   2012 WL 5379106 (D. Del. Oct. 31, 2012)........................................................16

*Rohm & Haas Co. v. Mobil Oil Corp.*,
   525 F. Supp. 1298 (D. Del. 1981) ......................................................................11

*Rovi Guides, Inc. v. Comcast Corp.*,
   2018 WL 1726250 (S.D.N.Y. April 6, 2018)......................................................11

*Triplay, Inc. v. WhatsApp Inc.*,
   2017 WL 10667201 (D. Del. Sept. 18, 2017) ....................................................16

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*,
   775 F. Supp. 759 (D. Del. 1991) ........................................................................11

**Rules**

Fed. R. Civ. P. 1 ......................................................................................................2, 16

Fed. R. Civ. P. 42 ........................................................................................................11

Plaintiffs and Counterclaim Defendants Boston Scientific Corp. and Boston Scientific Neuromodulation Corp. (collectively, "Boston Scientific") respectfully submit this opening brief in support of its motion to consolidate, bifurcate, and partially lift stay and in opposition to the motion of Defendant and Counterclaim Plaintiff Nevro Corp. ("Nevro") to stay this case pending *inter partes* reviews ("IPRs").

## I.    PRELIMINARY STATEMENT

Nevro has spent years freely infringing Boston Scientific's patents in a competitive market—infringement that has been fueled by Nevro's misappropriation of Boston Scientific's trade secrets—without being held accountable.  And now Nevro is pressing for further delay.  The Court should reject Nevro's request and enact a compromise solution that allows Boston Scientific to move forward with its trade secret claim and with the six unfettered patent claims that have been pending for nearly four years.

In 2016, Boston Scientific asserted eight patents in this District ("2016 Action").  Six of those eight claims have never been subject to Patent Office review.  In 2018, Boston Scientific filed this action and asserted eight more patents ("2018 Action").  At the same time—based on newly discovered evidence—Boston Scientific brought a trade secret misappropriation claim against Nevro alleging that James Thacker, a former senior Boston Scientific employee, had

taken over 30,000 confidential documents from Boston Scientific when he went to work for Nevro and then deliberately disseminated many of them to his Nevro colleagues with express instructions to use them to help develop Nevro's product.

Nevro has built its business on the back of Boston Scientific's investments and hard work, ripping off over a dozen key, patented technologies, including battery charging and monitoring, multichannel stimulation, telemetry, implantable lead assembly, and lead alignment methods.  Nevro's blatant infringement was enabled by its parallel, and equally blatant, misappropriation of Boston Scientific's trade secrets, which gave Nevro a running start in building software test plans, designing clinical protocols, obtaining leads on experienced salespersons, and understanding sales talking points to improve Nevro's pitch with customers using Boston Scientific's techniques.

It has now been four years since Boston Scientific filed the 2016 Action and two years since Boston Scientific filed its trade secret misappropriation claim in this 2018 Action.  Further delay in allowing Boston Scientific to pursue its patent claims from the 2016 Action that have never been subject to Patent Office review and its trade secret claim would compound the harm to Boston Scientific and would be inconsistent with Rule 1's mandate "to secure the just, speedy, and inexpensive determination of every action and proceeding."

Fortunately, a compromise is at hand.  In this 2018 Action, the Court set a

*Markman* hearing in January 2021 and a trial date in October 2021.  (Ex. 1 at 37:2-

38:25; D.I. 51.)[1]  Boston Scientific respectfully submits that the patent claims it

asserted in the 2016 Action that have never been subject to Patent Office review

and its trade secret claim should proceed on those dates.  Any remaining discovery

as to those patent claims, along with discovery on the trade secret claim, will be

completed in plenty of time to be tried in October 2021.  Any remaining claim

construction needed as to those patents can also be addressed at the *Markman*

hearing currently scheduled for January 2021.  In the meantime, the patent claims

and counterclaims in this 2018 Action can be stayed pending the recently-instituted

IPRs.  Adopting this schedule, with an October 2021 trial, would resolve common

issues, potentially exhaust the damages available, and facilitate a resolution of the

parties' broader dispute, thereby minimizing the chances that the Court will have to

conduct more than one trial between the parties.

## II.    NATURE AND STAGE OF PROCEEDINGS

In November 2016, Nevro sued Boston Scientific in the Northern District of

California for patent infringement; that court ultimately granted Boston Scientific's

motions for summary judgment of invalidity of most asserted claims and

---

[1] The Exhibits herein are attached to the accompanying Declaration of Marc A. Cohn.

noninfringement as to the rest of the asserted claims, an order that is presently under review at the Federal Circuit. *Nevro Corp. v. Bos. Sci. Corp.*, No. 16-CV-06830-VC, 2018 WL 4676501, at *1-4 (N.D. Cal. July 24, 2018). During fact discovery in that case, Nevro disclosed that James Thacker, a Nevro employee who had previously worked at Boston Scientific, had retained over 30,000 confidential Boston Scientific documents, many of which he later used and disseminated in the course of his employment at Nevro. (Ex. 2 at 2.) Boston Scientific attempted to amend its Answer to add a trade secret counterclaim based on these facts, but Nevro opposed that amendment. (*Id.*; Ex. 3 at 1.) Given the timing of the new claim, the California court denied the request to amend without prejudice to filing a new trade secret case instead. (Ex. 4 at 1-2.)

Meanwhile, on December 9, 2016, Boston Scientific had sued Nevro in this Court asserting eight counts of patent infringement. (*See* 2016 Action, D.I. 1.) The parties conducted extensive fact and expert discovery and, after a *Markman* hearing on November 28, 2017, the Court issued a partial claim construction ruling. (2016 Action, D.I. 142.) On June 15, 2018, however, just before the end of expert discovery, with only a few depositions remaining to be taken and just four months before the scheduled trial date, Nevro moved to stay the case pending resolution of IPRs. (2016 Action, D.I. 238.) Although the Patent Office had rejected Nevro's IPR petitions as to six of the eight asserted patents, the Court

granted the motion.[2]  (2016 Action, D.I. 244.)  Boston Scientific sought to reargue the merits of Nevro's motion in July 2018 and sought to lift the stay in February 2019 but Nevro opposed both efforts and the case has remained stayed.

On April 27, 2018, Boston Scientific filed the Complaint in this 2018 Action asserting, *inter alia*, that Nevro's products infringe certain other Boston Scientific patents and that Nevro misappropriated Boston Scientific's trade secrets.  (D.I. 1.) After Boston Scientific amended its Complaint (D.I. 5), Nevro moved to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.I. 10.)  On November 25, 2019, the Court granted Nevro's motion in part and denied it in part, finding that the trade secret claim had been sufficiently pleaded. (D.I. 23 at 22-25, 27.)  On December 9, 2019, Nevro filed an answer and counterclaims, in which it alleged that Boston Scientific's products infringe five Nevro patents.[3]  (D.I. 27.)  In January 2020, Boston Scientific proposed amendments to its direct infringement allegations and Nevro consented to these amendments.  (D.I. 34.)  On February 11, 2020, the Court granted Boston Scientific's stipulated motion to amend.  (D.I. 47.)

---

[2] The asserted patents as to which the Patent Office refused to institute IPR are U.S. Patent Nos. 7,891,085 (the "'085 Patent"), 8,650,747 (the "'747 Patent"), 8,646,172 (the "'172 Patent"), 8,019,439 (the "'439 Patent"), 8,644,933 (the "'933 Patent"), and 7,437,193 (the "'193 Patent") (collectively, the "2016 No IPR Patents").

[3] U.S. Patent Nos. 9,409,020, 10,149,978, 10,076,665, 9,002,460, and 9,002,461.

Between January 21 and 23, 2020, the Patent Office instituted IPRs on six of the eight patents that Boston Scientific originally asserted in this 2018 Action. It is on the basis of these IPRs that Nevro now seeks to stay all claims and counterclaims in this case, including the trade secret claim.

## III.   SUMMARY OF THE ARGUMENT

Although Nevro focuses narrowly on potential efficiencies in resolving this 2018 Action's patent claims, the dispute between the parties in this Court is broader—it also includes the 2016 Action and Boston Scientific's trade secret claim. Because the Court has already made room in its calendar for a trial in October 2021, the fairest and most efficient compromise would be to try the 2016 Action's patent claims that have never been subject to Patent Office review and the trade secret claim at that time.

None of the relevant factors weigh in favor of staying the trade secret claim or the 2016 No IPR Patent claims pending resolution of the recently granted IPRs. Further delay in resolving those claims would be enormously prejudicial to Boston Scientific, which has had to endure years of delay in obtaining remedies for Nevro's use of Boston Scientific's patented technology and trade secrets. The pending IPRs will ***not*** simplify (1) a trial of the trade secret claim, which does not implicate the patent invalidity issues raised in the IPRs, or (2) a trial on the 2016 No IPR Patents that never were subject to any IPR. At the time of the stay in the

6

2016 Action, fact and expert discovery as to the 2016 No IPR Patent claims were nearly complete and a partial claim construction had been rendered; discovery as to the trade secret claim can certainly be completed in the 20 months between now and the October 2021 trial date reserved by the Court, and any remaining claim construction issues can be resolved at the January 2021 *Markman* hearing already on the Court's calendar.

## IV.   STATEMENT OF FACTS

Nevro claims to be an innovator in spinal cord stimulator ("SCS") systems for pain management based on its "high-frequency" stimulation, but high-frequency stimulation is not itself innovative.  Indeed, ███████████████

███████████████████████████████████████████████

███.  (Ex. 5 at 130111-14; Ex. 6 at 472599; Ex. 7; Ex. 8 at 41.)  What is critical are the "chassis" technologies that Boston Scientific pioneered back in the early 2000s, when SCS was nascent.  Nevro stole these essential features of SCS systems in order to accelerate its roll-out.

In the 2016 Action, Boston Scientific asserted eight counts of patent infringement around these foundational technologies.  Nevro filed petitions for IPR

against all eight patents, but the Patent Office rejected all but two of these

petitions.[4]  Thus, six of the asserted 2016 patents were never subjected to IPRs.

This 2018 Action asserts patents that differ from those asserted in the 2016

Action.  IPR has been instituted as to six of the eight asserted patents (collectively,

the "2018 IPR Patents"):

- U.S. Patent No. 6,381,496, relating to sets of operational parameters for providing therapy to patients;

- U.S. Patent No. 7,177,690, relating to a rechargeable battery indicator;

- U.S. Patent No. 7,496,404, relating to circuitry for recharging a spinal cord stimulator system;

- U.S. Patent No. 7,822,480, relating to on-off keying and frequency shift keying modulation;

- U.S. Patent No. 8,682,447, relating to determining the relative position and orientation of leads; and

- U.S. Patent No. 9,162,071, relating to controlling telemetry in a spinal cord stimulator system based on the capacity of a rechargeable battery.

Four of the 2016 No IPR Patents (the '085, '747, '172,  and '439 Patents) address

the manufacture of leads; none of the 2018 IPR Patents involves lead manufacture.

---

[4] The appeals of the Patent Office's Final Written Decisions as to the two instituted patents asserted in the 2016 Action—U.S. Patent Nos. 6,895,280 and 7,587,241— have been fully briefed and are awaiting argument.  Should the Federal Circuit rule that either of those patents is valid, Boston Scientific may seek leave to have those patent claims tried along with the 2016 No IPR Patent claims and the trade secret claim in October 2021.

Similarly, the two other 2016 No IPR Patents (the '933 and '193 Patents) address measuring the capacity of a rechargeable battery and simultaneous recharging of a charger and an implantable pulse generator ("IPG"); these are also not claimed in any of the 2018 IPR Patents.

Nevro's misconduct, however, goes farther than patent infringement. As Boston Scientific has alleged (*see* D.I. 48 ¶¶ 28-32, 182-205), one or more of the dozens of former Boston Scientific employees that Nevro has recruited and hired disclosed trade secrets relating to Boston Scientific's SCS systems to Nevro, in violation of those employees' contractual obligations. Those trade secrets were the product of substantial investments, were treated confidentially by Boston Scientific and were of considerable value to Nevro in its effort to develop an SCS product that competed directly with Boston Scientific's SCS products, and Nevro was aware of and benefited from those disclosures. The trade secrets that Mr. Thacker stole and distributed at Nevro with his instruction that it be used by Nevro employees to develop Nevro's product include:

- confidential Boston Scientific clinical protocols that Mr. Thacker sent to his colleague at Nevro, instructing him to use the protocols as a basis for developing Nevro's clinical protocols (Ex. 9 at 113460-510);

- a confidential list of Boston Scientific salespersons and their contact information that Mr. Thacker also circulated to a Nevro colleague; Boston Scientific will seek discovery into the degree to which this gave Nevro a critical leg up in building its salesforce (Ex. 10 at 379370-71);

- a clinician's programmer "Module Specification" that Mr. Thacker sent to Mr. Marco along with the instruction to "please use it as an example of a requirement spec for a CP [clinician programmer]," even though it was emblazoned with a Boston Scientific confidentiality legend (Ex. 11 at 113922-48);

- a confidential Software Validation and Test Plan that Mr. Thacker circulated to his colleague at Nevro to assist them in developing similar test plans at Nevro (Ex. 12 at 379372-401); and

- a 61-page issue/response talking points guide for salespersons to respond to questions about spinal cord stimulation that Mr. Thacker sent to senior executives at Nevro (Ex. 13 at 379405-65).

The six patent claims filed in the 2016 Action that have never been subjected to IPR and the trade secret claim have nothing to do with the IPRs of the 2018 IPR Patents. Boston Scientific's trade secret claim is not based on the technology claimed in the 2018 IPR Patents.

## V.   ARGUMENT

### A.   The 2016 No IPR Patent Claims And The Trade Secret Claim Should Not Be Stayed

The parties agree that, in deciding whether to stay a case pending IPR, the Court should consider at least three factors: (i) whether the stay would simplify the trial; (ii) whether the case is in an advanced stage; and (iii) whether the non-movant would be prejudiced by a stay. *See, e.g.*, *CIMA Labs Inc. v. Mylan Pharms., Inc.*, No. 10-625-LPS, 2011 WL 1479062, at *2 (D. Del. Apr. 18, 2011). The Court should consider these same factors when deciding whether to lift a stay. *See, e.g.*, *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir.

2016); *see also Dermafocus LLC v. Ulthera, Inc.*, C.A. No. 15-654, 2018 WL 5113960, at *2 (D. Del. Oct. 19, 2018)  ("When a court has imposed a stay, but 'circumstances have changed such that the court's reasons for imposing [that] stay no longer exist or are inappropriate,' the court . . . has the inherent power and discretion to lift the stay." (quotation omitted)).  All three of these factors weigh against further delaying resolution of the 2016 No IPR Patent claims or the trade secret claim, especially in view of the unusual and substantial delay that has harmed Boston Scientific.[5]

   ***Simplification***:  Boston Scientific's trade secret claim would not be simplified by the Patent Office's resolution of the patent validity issues raised in

---

[5] For these same reasons, the Court is well within its discretion to consolidate and bifurcate the 2016 Action and this 2018 Action as necessary to implement Boston Scientific's compromise.  Under Rule 42(a), the Court has "broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice." *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991); *see Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298, 1309 (D. Del. 1981) (When deciding whether to consolidate actions, "the Court must balance the savings of time and effort gained through consolidation against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions.").  Likewise, under Rule 42(b), the Court has "broad discretion" to bifurcate and "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 441 (D. Del. 2010); *see Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278 (JPO), 2018 WL 1726250, at *2 (S.D.N.Y. April 6, 2018) ("There is considerable overlap between the factors used to evaluate whether the stay should be lifted and whether Rule 42(b) bifurcation is justified.").

the IPRs.  The outcome of the IPRs will have no estoppel or other effect on the legal issues presented by the trade secret claim.  As shown above, the trade secrets and IPRs raise substantially different factual issues, as the trade secrets stolen by Nevro pertain to confidential Boston Scientific information that is not at issue in any of the IPRs.

Nor would the IPRs simplify the trial of the 2016 No IPR Patent claims.  For example, four of the 2016 No IPR Patents address the manufacture of leads and the two other 2016 No IPR Patents address measuring the capacity of a rechargeable battery and simultaneous recharging of a charger and an IPG—technologies not claimed in any of the 2018 IPR Patents.

Because the IPRs will not simplify the trial of the trade secret claim or of the claims based on the 2016 No IPR Patents, this factor weighs against a stay of the trade secret claim or any further delay in resolving the 2016 No IPR Patent claims.

***Stage Of The Case***:  As Nevro acknowledges (D.I. 43 at 10 n.5), discovery relating to the 2016 No IPR Patent claims was nearly complete when that case was stayed.  Claim construction was partially complete, and the case was only four months away from trial.  The stage of the case weighs against any further delay in the resolution of the 2016 Action's patent claims.

Although discovery on the trade secret claim has just begun, Boston Scientific filed this claim nearly two years ago and has been diligent in pursuing it.

12

(*See* D.I. 1 Count V.)  Boston Scientific attempted to add the trade secret claim to the California case as soon as it discovered Mr. Thacker's theft of nearly 30,000 documents in late-2017 (*see* Ex. 2 at 2) but, in the face of Nevro's opposition (Ex. 3 at 1) and as instructed by that court (Ex. 4 at 1-2), Boston Scientific was required to bring this claim in a new case, which it did in this 2018 Action. Accordingly, this is not a case in which a plaintiff has recently filed a complaint to vindicate its rights; it has been two years since the trade secrets case began, which weighs against a stay of the trade secret claim.

Additionally, at the scheduling conference on January 16, 2020, before the institution of the IPRs, the Court concluded that the trade secret claim—along with the eight patent claims and five counterclaim patent claims in this 2018 Action as to which discovery and claim construction have not begun—could be ready for trial by October 2021.  (Ex. 1 at 37:2-38:25; *see also* D.I. 51.)  The trade secret claim and the claims based on the 2016 No IPR Patents, as to which discovery and claim construction are nearly complete, could certainly be ready for trial by then as well.

A stay of the 2018 IPR Patent claims would not justify an additional stay of the trade secret claim, and courts have stayed patent claims pending IPR while allowing non-patent claims to proceed.  In *Amkor Technology, Inc. v. Synaptics, Inc.*, No. 15-CV-910 (GMS), 2016 WL 9331100 (D. Del. Oct. 25, 2016), this

Court stayed the plaintiffs' claims relating to a patent because it was the subject of

a pending IPR.  The plaintiffs' claims of copyright infringement, trade secret

misappropriation, breach of contract, unfair competition, tortious inference with

contract, civil conspiracy, violation of the Computer Fraud and Abuse Act, and

violation of Delaware Misuse of Computer System Information Statute, however,

were not stayed.  *Id.* at *1 n.1, *2 n.5.  The Court stated that "it would be unduly

prejudicial to Plaintiffs not to move forward with the remainder of their claims that

are unrelated to the validity of the . . . patent."  *Id.* at *2 n.5.  Similarly, in *Albritton

v. Acclarent, Inc.*, No. 3:16-cv-03340-M, 2018 WL 6929856 (N.D. Tex. Mar. 29,

2018), the court granted a stay with respect to certain patent claims but noted that

"[t]he Court sees no reason to delay the proceedings with regard to the Non-Patent

Claims [*i.e.*, breach of contract, fraudulent inducement, and fraud claims] since

discovery related to those claims will occur regardless of the outcome of the [IPR]

Petition."  *Id.* at *3.

  ***Prejudice***:  A stay of Boston Scientific's trade secret claim and a further

delay in the resolution of its 2016 No IPR Patent claims, which have already been

delayed for years, would severely prejudice Boston Scientific.  For years, Nevro

has gained market share, to Boston Scientific's direct detriment, using Boston

Scientific's own patented technology and trade secrets.  For example, a recent

Morgan Stanley report shows Nevro's market share growing since 2016 and

projected to continue to grow through 2022:

| Global Market Share | 2016A | 2017A | 2018A | 2019E | 2020E | 2021E | 2022E |
|---|---|---|---|---|---|---|---|
| Abbott (St. Jude) | 24.8% | 29.9% | 27.5% | 27.0% | 26.6% | 26.3% | 26.0% |
| Boston Scientific | 29.2% | 27.6% | 28.5% | 29.2% | 29.1% | 28.9% | 28.7% |
| Medtronic | 33.1% | 26.5% | 27.7% | 27.1% | 26.7% | 26.3% | 26.0% |
| Nevro | 12.9% | 15.9% | 16.3% | 16.7% | 17.5% | 18.4% | 19.2% |

(Ex. 14 at 8.)  As this Court acknowledged in its Memorandum and Opinion

granting Nevro's motion for preliminary injunction in its case against Stimwave,

the SCS market is "a 'sticky' (or change resistant)" market because "physicians are

generally reluctant to change their medical device providers." *Nevro Corp. v.*

*Stimwave Techs., Inc.*, No. 19-325-CFC, 2019 WL 3322368, at *2 (D. Del. July 24,

2019).  The harm that Boston Scientific would suffer if it had to wait another year

(or, likely, many more years) while Nevro continued to steal customers in a sticky

market using Boston Scientific's own technology weighs strongly against a stay.

Boston Scientific brought these actions to enjoin, deter, or at least obtain

compensation for this theft.  Yet, even though the Patent Office declined to review

the 2016 No IPR Patents and this Court found the trade secret claim to have been

properly alleged, Boston Scientific's efforts to pursue its injunctive and damages

remedies have been blocked for years.  Any further delay in the resolution of these

claims would be unduly prejudicial to Boston Scientific.  *See, e.g.*, *Triplay, Inc. v.*

*WhatsApp Inc.*, No. 13-1703-LPS-CJB, 2017 WL 10667201, at *2 (D. Del. Sept.

18, 2017) ("[A] stay pending Defendant's appeal of a handful of claims at issue here—in a case that has already encountered delay—would unduly prejudice Plaintiff.").

### B.   Trying The 2016 No IPR Patent Claims And The Trade Secret Claim In October 2021 Would Be Efficient And Minimize The Risk Of Multiple Trials Between The Parties

"[I]t is the court's foremost obligation to see litigations through to trial in a timely and efficient manner." *Personalized User Model, L.L.P. v. Google, Inc.*, No. 09-525-LPS, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012) (quoting *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at *3 (D. Del. Nov. 22, 2010)).   Federal Rule of Civil Procedure 1 provides that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."   These objectives can best be met by denying Nevro's motion for a stay and trying Boston Scientific's 2016 No IPR Patent claims, along with its trade secret claim, on the already scheduled October 2021 trial date.

Indeed, Boston Scientific's proposal minimizes the burden on the parties and the Court, while offering the greatest chance of avoiding a second trial in this Court. *First*, it is possible that the 2018 IPR Patents and Nevro's counterclaim patents—which may yet be subject to IPR—will not survive Patent Office review, obviating the need for a second trial.   Only the trade secret claim, which obviously

16

is not subject to IPR, and the claims based on the 2016 No IPR Patents, which the Patent Office has already declined to review, will proceed to trial at this time. *Second*, the outcome of such a trial, which will implicate the products that allegedly infringe the 2018 IPR Patents, could exhaust Boston Scientific's damages, obviating the need for a trial on any 2018 IPR Patent that survives IPR. *Third*, the outcome of a trial on the trade secret claim and the 2016 No IPR Patent claims would likely facilitate the parties' attempts to reach a broader settlement of all their disputes.

## VI.   CONCLUSION

All three of the relevant factors weigh against a stay of Boston Scientific's trade secrets claim and any further delay of its 2016 No IPR Patent claims.  Boston Scientific respectfully submits that the Court should reserve the October 2021 trial date that it has already scheduled for the trial of those claims; in the meantime, the patent claims and counterclaims in this 2018 Action should be stayed pending IPRs.

DATED:  February 18, 2020

Matthew M. Wolf
Edward Han
Marc Cohn
Amy DeWitt
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
Matthew.Wolf@arnoldporter.com
Edward.Han@arnoldporter.com
Marc.Cohn@arnoldporter.com
Amy.DeWitt@arnoldporter.com

Krista M. Carter
Thomas T. Carmack
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500
Krista.Carter@arnoldporter.com
Tom.Carmack@arnoldporter.com

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs*

18

## <u>CERTIFICATE OF SERVICE</u>

I, Karen L. Pascale, Esquire, hereby certify that on February 19, 2020, I

caused to be electronically filed a true and correct copy of the foregoing document

with the Clerk of the Court using CM/ECF (which will send notification that such

filing is available for viewing and downloading to all registered counsel), and in

addition caused true and correct copies of the foregoing document to be served

upon the following counsel of record by electronic mail:

<table>
<tr><td colspan="2">*Attorneys for Defendant Nevro Corp.:*</td></tr>
<tr><td>Rodger D. Smith II<br>Michael J. Flynn<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347</td><td>*rsmith@mnat.com*<br>*mflynn@mnat.com*</td></tr>
<tr><td>Bradford J. Badke<br>Ching-Lee Fukuda<br>Ketan V. Patel<br>Sharon Lee<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY 10019</td><td>*jbadke@sidley.com*<br>*clfukuda@sidley.com*<br>*ketan.patel@sidley.com*<br>*sharon.lee@sidley.com*</td></tr>
<tr><td>Thomas A. Broughan III<br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, DC  20005</td><td>*tbroughan@sidley.com*</td></tr>
<tr><td>Michael A. Jacobs<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482</td><td>*mjacobs@mofo.com*</td></tr>
</table>

| | |
|---|---|
| Kenneth A. Kuwayti | *kkuwayti@mofo.com* |
| MORRISON & FOERSTER LLP | |
| 755 Page Mill Road | |
| Palo Alto, CA 94304-1018 | |
| | |
| Bita Rahebi | *brahebi@mofo.com* |
| MORRISON & FOERSTER LLP | |
| 707 Wilshire Boulevard | |
| Los Angeles, CA 90017-3543 | |

February 19, 2020

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Karen L. Pascale*

_____

Karen L. Pascale (No. 2903)
*[kpascale@ycst.com]*
Pilar G. Kraman (#5199)
*[pkraman@ycst.com]*
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600

*Attorneys for Plaintiffs,*
*Boston Scientific Corporation*
*and Boston Scientific Neuromodulation*
 *Corp.*