IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORP. and<br>BOSTON SCIENTIFIC<br>NEUROMODULATION CORP., | ) ) ) ) | |
| Plaintiffs and Counter-<br>Defendants, | ) ) ) | C.A. No. 18-644 (CFC) |
| v. | ) ) | REDACTED - PUBLIC VERSION |
| NEVRO CORP., | ) ) | |
| Defendant and<br>Counterclaimant. | ) ) | |

## NEVRO CORP.'S MOTION TO STAY BSC'S TRADE SECRET CLAIM PENDING ARBITRATION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant and*
*Counterclaimant Nevro Corp.*

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA 94304
(650) 565-7000

Original Filing Date: April 13, 2020
Redacted Filing Date: April 20, 2020

# **CONTENTS**

**Page**

I.    INTRODUCTION ..........................................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS..............................................2

III.  SUMMARY OF ARGUMENT ......................................................................2

IV.  STATEMENT OF FACTS ............................................................................4

V.   LEGAL STANDARDS .................................................................................5

      A.    The Federal Arbitration Act Requires Staying a Claim Subject to Arbitration .........................................................................................5

      B.    Claims Need Only "Touch Matters" Covered by an Arbitration Clause To Be Arbitrable.................................................................................7

      C.    Non-Signatories Can Invoke Arbitration Clauses Under the Doctrine of Equitable Estoppel ..........................................................................8

VI.  ARGUMENT................................................................................................10

      A.    The April 28, 2000 Arbitration Agreement Between BSC and James Thacker Is Valid and Enforceable.......................................................10

      B.    The Thacker Arbitration Agreement Requires Arbitration of BSC's Trade Secret Claim............................................................................11

      C.    Nevro Can Invoke the Thacker Arbitration Agreement's Arbitration Clause under the Doctrine of Equitable Estoppel ..............................15

VII.  CONCLUSION............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)...............................................................................8, 9, 15

*Battaglia v. McKendry*,
  233 F.3d 720 (3d Cir. 2000) ................................................................6

*Brayman Const. Corp. v. Home Ins. Co.*,
  319 F.3d 622 (3d Cir. 2003) ........................................................*passim*

*CardioNet, LLC v. InfoBionic, Inc.*,
  No. 1:15-cv-11803-IT, D.I. 286 (D. Mass. Mar. 24, 2017)....................10, 16, 17

*Cornell Univ. v. UAW Local 2300*,
  942 F.2d 138 (2d Cir. 1991) ...............................................................8, 14, 15

*Elli v. Genmab, Inc.*,
  No. CIV.A. 06 1240 FLW, 2006 WL 2927622 (D.N.J. Oct. 12,
  2006) ...........................................................................................5

*Great Lengths Universal Hair Extensions S.r.L. v. Gold*,
  No. 16CIV193GBDGWG, 2017 WL 1731184 (S.D.N.Y. Mar. 29,
  2017) ...........................................................................................18

*In re Fleming Cos., Inc.*,
  347 B.R. 163 (Bankr. D. Del. 2006)......................................................6

*In re NBR Antitrust Litig.*,
  207 F. App'x 166 (3d Cir. 2006) ..........................................................7, 12, 14

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
  938 F.3d 515 (3d Cir. 2019) ..........................................................*passim*

*Int'l Ambassador Programs v. Archexpo*,
  68 F.3d 337 (9th Cir. 1993) ................................................................8

*JSM Tuscany, LLC v. Superior Court*,
  193 Cal. App. 4th 1222, 123 Cal. Rptr. 3d 429 (2011) ...........................*passim*

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
  186 Cal. App. 4th 696, 111 Cal. Rptr. 3d 876 (2010) ........................................7

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
  460 U.S. 1 (1983).............................................................................................7, 14

*Price v. Coldwell Banker Real Estate Corp.*,
  No. CIV.A. 4:05CV170-P-A, 2007 WL 902816 (N.D. Miss.
  Mar. 22, 2007)......................................................................................................18

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir.1999) .................................................................................7

*SMMHC Inc. v. Aprima Med. Software, Inc.*,
  No. CV-13-02160-PHX-NVW, 2014 WL 1116996 (D. Ariz.
  Mar. 14, 2014).....................................................................................................13

*Stuchiner v. Sedona Oil & Gas Corp.*,
  No. C06-5639-RJB, 2007 WL 215857 (W.D. Wash. Jan. 25, 2007) .............8, 14

*Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*,
  97 F. App'x 462 (5th Cir. 2004) ..........................................................................12

*Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co.*,
  319 F. App'x 137 (3d Cir. 2009) ...........................................................................6

*Volt Info. Scis., Inc. v. Bd. of Trs.*,
  489 U.S. 468 (1989)...............................................................................................6

*Westinghouse Broad. Co. v. Local 804, Int'l All. of Theatrical Stage
  Emp. & Moving Picture Mach. Operators of U. S. & Canada*,
  616 F.2d 97 (3d Cir. 1980) ...............................................................................8, 14

*Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*,
  No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270 (E.D. Cal.
  Dec. 26, 2013), *aff'd* 627 F. App'x 621 (9th Cir. 2015) .....................................7

## Rules and Statutes

Federal Arbitration Act, 9 U.S.C. § 3 .................................................................*passim*

## I.    INTRODUCTION

Nevro Corp. ("Nevro") moves to stay Boston Scientific Corp. and Boston Scientific Neuromodulation Corp.'s (collectively, BSC) trade secret claim based on the mandatory stay provision of the Federal Arbitration Act, 9 U.S.C. § 3, and an arbitration agreement between BSC and James Thacker.

BSC bases its trade secret claim in this case on the allegation that James Thacker, a former BSC employee who joined Nevro in 2009, violated the conditions of his employment at BSC by retaining BSC confidential information and sharing it with Nevro.  In 2000, however, upon starting work for BSC, Mr. Thacker and BSC mutually agreed to resolve "any dispute which may arise regarding" Mr. Thacker's conditions of employment via binding arbitration in Los Angeles, California.  The arbitration agreement's express terms therefore require BSC to arbitrate its trade secret claim.

Black-letter law permits Nevro to invoke the arbitration agreement between Mr. Thacker and BSC and seek a stay of that claim.  BSC's trade secret claims against Nevro rely on, make reference to, and are intertwined with its allegations against Mr. Thacker.  In such circumstances, the well-settled doctrine of equitable estoppel prevents BSC from relying on a contractual relationship between BSC and Mr. Thacker to assert a claim against Nevro, while at the same time avoiding other parts of that contractual relationship (i.e., the arbitration

provision).   Accordingly, BSC's trade secret claim should be stayed pending arbitration.

Although Nevro previously moved to stay this entire case (D.I. 49), the purpose of this currrent stay motion is to ensure that the trade secret claim proceeds to arbitration if the Court permits the rest of the case to proceed, or after a stay of the entire case if the Court grants Nevro's original motion to stay and defers consideration of the present motion.

## II.   NATURE AND STAGE OF PROCEEDINGS

This case is at an early stage.  On February 4, 2020, Nevro moved to stay this action based on the fact that the Patent Office instituted *Inter Partes* Review of most of BSC's asserted patents.  D.I. 42.  BSC filed its operative Second Amended Complaint on February 11, 2020.  D.I. 48.  Shortly thereafter, Nevro filed its Answer and Counterclaims.  D.I. 62.  In its Answer, stated that BSC's trade secret claim is subject to a valid arbitration agreement.  *Id.* at 26 (¶ 15).  Nevro also set forth its position in briefing on the parties' competing case management proposals.  D.I. 67 at 5 n.2.  Nevro now moves to stay BSC's trade secret claim based on the arbitration agreement.

## III.   SUMMARY OF ARGUMENT

1.     The Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, mandates that any claim referable to arbitration must be stayed.  The FAA reflects a strong

national policy favoring arbitration.   *See In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019).   Consistent with the policy, the Third Circuit has held that a claim need only "touch matters" covered by an arbitration clause to be arbitrable.   *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003).   Moreover, a non-party to an arbitration agreement can invoke the agreement under the doctrine of equitable estoppel if the claims at issue are "'intimately founded in and intertwined' with the underlying contract obligations."   *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1238, 123 Cal. Rptr. 3d 429, 442 (2011).

       2.      In this case, BSC's pleading of its trade secret claim is based entirely on alleged misconduct by James Thacker, who worked at BSC from 2000 to 2006, and later joined Nevro in 2009.   D.I. 48, ¶¶ 186-203.   Mr. Thacker and BSC, however, agreed in 2000 to resolve any dispute regarding the conditions of his employment via binding arbitration in Los Angeles, California.   Ex. 1.   BSC's own Complaint makes clear that its trade secret claim not only "touches matters" concerning Mr. Thacker's conditions of employment, but is intimately founded in and intertwined with the allegation that Mr. Thacker breached a condition of his employment—his confidentiality obligations.   D.I. 48, ¶¶ 186-203.   Under these circumstances, the FAA mandates a stay pending arbitration.   9 U.S.C. § 3

## IV.   STATEMENT OF FACTS

James Thacker was the Manager of Field Clinical Engineering at BSC from 2000-2006.[1]   D.I. 48, ¶ 186.   Mr. Thacker signed several employment agreements prior to and upon starting work at BSC.   On April 28, 2000, he signed an offer letter that states the terms of his employment.   Ex. 1.   The offer letter states that it represents the "entire agreement" between Mr. Thacker and BSC concerning his employment.   *Id.* at 2.   The offer letter includes an arbitration clause, requiring arbitration of disputes related to his employment as follows: "With regard to this agreement and additions or amendments, in the event of any dispute which may arise regarding the conditions of employment as stated and agreed herein, both parties agree to submit to arbitration in the County of Los Angeles, California."   Ex. 1 at 2.   Mr. Thacker later signed a confidentiality and invention assignment agreement on August 28, 2000 (the "EICIA").   D.I. 48 at Ex. 10.   The EICIA does not specify how disputes related to it must be resolved, whether by arbitration or otherwise.   *Id.*

Mr. Thacker left BSC in 2006 and later joined Nevro in 2009.   *Id.*, ¶ 190.   BSC alleges that "[a]s a condition of his employment at Boston Scientific, Mr. Thacker agreed to and was bound by an Employee Invention and Confidential

---

[1]   Mr. Thacker was originally employed by BSC's predecessor Advanced Bionics Corporation.   BSC and Advanced Bionics Corporation are referred to collectively herein as "BSC."

Information Agreement ('EICIA')." *Id.*, ¶ 186. BSC further alleges that, upon leaving BSC, Mr. Thacker retained certain confidential BSC documents and that "Mr. Thacker (and thereby Nevro) acquired Boston Scientific's trade secrets by improper means, including, but not limited to, taking and/or retaining these trade secrets in breach of the duties Mr. Thacker owed to Boston Scientific under the EICIA." *Id.*, ¶ 193. BSC alleges that Nevro used certain documents provided to it by Mr. Thacker to jump start its early product development. *Id.*, ¶¶ 194-202.

## V.    LEGAL STANDARDS

### A.    The Federal Arbitration Act Requires Staying a Claim Subject to Arbitration

The Federal Arbitration Act mandates that a claim that is referable to arbitration must be stayed. *See* 9 U.S.C. § 3 (providing that if "any issue [is] referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had"); *see also Elli v. Genmab, Inc.*, No. CIV.A. 06 1240 FLW, 2006 WL 2927622, at *8 (D.N.J. Oct. 12, 2006) (explaining that a stay can be imposed on a claim-by-claim basis). The Federal Arbitration Act (FAA) reflects the "national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *In re Remicade*, 938 F.3d at 519.

"[B]efore compelling any party to arbitrate pursuant to the FAA, a court must consider two 'gateway' questions:  (1) whether the parties have a

valid arbitration agreement at all" (i.e., its enforceability), and (2) whether a concededly binding arbitration clause applies to a certain type of controversy (i.e., its scope). *Id.* (internal quotes omitted). Applicable state law (here, California law[2]) governs the enforceability of an arbitration agreement and the scope of an arbitration clause, although federal law may tip the scales in favor of arbitration. *See id.* at 520, 522.

In determining the scope of an arbitration provision, "due regard must be given to the federal policy favoring arbitration," and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration. *Id.* (citing *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 475 (1989)). Federal law favoring arbitration "provides the default rule where no state law definitively determines whether a given claim is inside or outside the scope of an arbitration agreement." *Id.* at 521-22 (internal quotations omitted). The presumption in favor of arbitration is "particularly applicable where the arbitration clause at issue is broad." *Id.* (quoting *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000)). As the Supreme Court has held, "any doubts concerning the scope of arbitrable issues

---

[2]    The agreements at issue govern employment in California at a California company (Advanced Bionic), and require arbitration in California. *See Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co.*, 319 F. App'x 137, 141 (3d Cir. 2009) (finding New York law applied where "New York clearly has the most significant relationship to the case:  it is the place of the alleged contracting, alleged performance, and subject matter"); *see also In re Fleming Cos., Inc.*, 347 B.R. 163, 168 (Bankr. D. Del. 2006).

should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v.*

*Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983).

**B.**     **Claims Need Only "Touch Matters" Covered by an Arbitration Clause To Be Arbitrable**

Consistent with federal law giving broad effect to arbitration clauses,

the Third Circuit has held that "[i]f the allegations underlying the claims 'touch

matters' covered by [an arbitration clause in a contract], then those claims must be

arbitrated, whatever the legal labels attached to them."  *Brayman*, 319 F.3d at 626

(internal citation omitted).  In other words, a claim "need only relate in any way

to" an agreement containing a broad arbitration clause to require arbitration.

*Remicade*, 938 F.3d at 524 (internal quotations omitted).  That is true even if a

claim arises under a contract *without* an arbitration clause, as long as the claim

relates to a contract *with* an arbitration clause.  *See In re NBR Antitrust Litig.*, 207

F. App'x 166, 171 (3d Cir. 2006) ("Even when a claim arises under a contract

which contains no arbitration clause, that claim still may be arbitrated when the

allegations underlying it 'touch matters' covered by an arbitration clause.").[3]

---

[3]     California and the Ninth Circuit apply the same standard as the Third Circuit.  *See Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 715, 111 Cal. Rptr. 3d 876, 894 (2010) ("Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable.") (internal citation omitted); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, [the] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability."); *Xinhua Holdings Ltd. v. Elec.*

Courts have found that an "arbitration agreement is applicable to a related agreement when all the agreements are interrelated contracts in an ongoing series of transactions." *Stuchiner v. Sedona Oil & Gas Corp.*, No. C06-5639-RJB, 2007 WL 215857, at *3 (W.D. Wash. Jan. 25, 2007) (citing *Int'l Ambassador Programs v. Archexpo*, 68 F.3d 337, 346 (9th Cir. 1993)); *see also Westinghouse Broad. Co. v. Local 804, Int'l All. of Theatrical Stage Emp. & Moving Picture Mach. Operators of U. S. & Canada*, 616 F.2d 97, 100 (3d Cir. 1980) (finding claim arbitrable because "[f]aced with this array of interrelated agreements, plans and provisions, we cannot say with positive assurance that the arbitration Article XI is not susceptible of an interpretation that covers the asserted dispute.") (internal citation and quotation omitted). Likewise, "where a later contract lacking an arbitration clause supplements an earlier 'umbrella' agreement containing such a clause, disputes under the later contract are arbitrable." *Cornell Univ. v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir. 1991).

### C.  Non-Signatories Can Invoke Arbitration Clauses Under the Doctrine of Equitable Estoppel

A "litigant who was not a party to the relevant arbitration agreement may invoke [the mandatory stay provision of the Federal Arbitration Act] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen*

---

*Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *10 (E.D. Cal. Dec. 26, 2013) (similar), *aff'd* 627 F. App'x 621 (9th Cir. 2015).

*LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Traditional state contract law allows non-parties to enforce contracts under several principles, including "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel[.]" *Id.* at 631 (internal citation omitted).

Under California law, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." *JSM*, 193 Cal. App. 4th at 1241. California courts explain that "[b]y relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." *Id.* Estoppel applies to claims "based on the same facts and [that] are inherently inseparable from arbitrable claims against signatory defendants." *Id.* at 1238. Accordingly, "[c]laims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." *Id.*

The facts as alleged in the complaint are the starting point for determining if the claims against the non-signatory are intertwined with the signatory's arbitration agreement. *Id.* at 1239. Numerous California and federal courts have applied these principles to require signatories to an arbitration agreement to arbitrate their claims against non-signatories. *See id.* at 1236-39

(citing cases); *CardioNet, LLC v. InfoBionic, Inc.*, No. 1:15-cv-11803-IT, D.I. 286 (D. Mass. Mar. 24, 2017) (applying federal and California law to compel arbitration of trade secret claim based on allegations of employee breaching confidentiality obligations to former employer) (Ex. 2).

## VI.   ARGUMENT

### A.   The April 28, 2000 Arbitration Agreement Between BSC and James Thacker Is Valid and Enforceable

The Court must first consider whether BSC has a valid arbitration agreement. *See Remicade*, 938 F.3d at 519. Here, there is no dispute that BSC has a valid arbitration agreement with its former employee James Thacker.

According to BSC's Second Amended Complaint, "Jim Thacker, formerly Nevro's Director of Field Engineering, worked at Boston Scientific and its predecessor Advanced Bionics from 2000 to 2006 as Manager of Field Clinical Engineering." D.I. 48, ¶ 186. Mr. Thacker was employed pursuant to an agreement dated April 28, 2000, which sets forth the "entire agreement" between the parties regarding Mr. Thacker's employment. Ex. 1 at 1-2. The agreement, signed by Mr. Thacker and Jeffrey Greiner, President of Advanced Bionic, contains the following arbitration clause:

> With regard to this agreement and any additions or amendments, in the event of any dispute which may arise regarding the conditions of employment as stated and agreed herein, both parties agree to submit to arbitration in the County of Los Angeles, California.

*Id.* at 2 (the "Thacker Arbitration Agreement").

There is no question that the Thacker Arbitration Agreement is valid and enforceable. *See Remicade*, 938 F.3d at 519 (federal law recognizes enforceability of arbitration agreements); *JSM*, 193 Cal. App. 4th at 1236-37 (California law recognizes enforceability of arbitration agreements).

## B.    The Thacker Arbitration Agreement Requires Arbitration of BSC's Trade Secret Claim

The next question for the Court to consider is whether the arbitration clause in the Thacker Arbitration Agreement relates to or "touches" an issue in this case. *See Remicade*, 938 F.3d at 524; *Brayman*, 319 F.3d at 626.  It does.

The Thacker Arbitration Agreement relates to BSC's trade secret claim, because:  (i) the agreement requires arbitration of any dispute regarding Mr. Thacker's "*conditions of employment*"; and (ii) BSC bases its trade secret claim on an alleged breach by Mr. Thacker of a "*condition of his employment*." Ex. 1 at 2 (emphasis added); D.I. 48, ¶ 186.

BSC's trade secret claim not only relates to, but is directly based on an alleged breach by Mr. Thacker of his "conditions of employment" at BSC. Namely, BSC alleges that "*[a]s a condition of his employment* at Boston Scientific, Mr. Thacker agreed to and was bound by an Employee Invention and Confidential Information Agreement ('EICIA')." D.I. 48, ¶ 186 (emphasis added).  BSC further alleges that "Mr. Thacker (and thereby Nevro) acquired Boston Scientific's trade

secrets by improper means, including, but not limited to, taking and/or retaining these trade secrets *in breach of the duties Mr. Thacker owed to Boston Scientific under the EICIA*."  *Id.* ¶ 193 (emphasis added); *see also id.* ¶ 203 (alleged "derogation of Mr. Thacker's contractual obligations to" BSC).  Overall, BSC's trade secret claim contains over a dozen paragraphs describing Mr. Thacker's alleged acts taken in violation of his employment agreements with BSC, and no paragraphs describing any alleged acts solely by Nevro.  *See id.*, ¶¶ 186-203. BSC's own allegations therefore establish that the Thacker Arbitration Agreement relates to or "touches" BSC's trade secret claim.  *Remicade*, 938 F.3d at 524; *Brayman*, 319 F.3d at 626.

The fact that BSC's Second Amended Complaint does not directly cite the Thacker Arbitration Agreement, but instead cites the EICIA, does not change that conclusion for three reasons.

First, there is no requirement that a complaint directly cite the applicable arbitration agreement to render a claim arbitrable.  *See Brayman*, 319 F.3d at 626; *NBR*, 207 F. App'x at 171; *see also Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 466 (5th Cir. 2004) (compelling arbitration even though "appellees did not mention the 1999 agreement [containing an arbitration clause] in their original complaint, but instead only made mention of a 1997 service agreement that did not contain an arbitration clause"); *SMMHC Inc.*

*v. Aprima Med. Software, Inc.*, No. CV-13-02160-PHX-NVW, 2014 WL 1116996, at *5 (D. Ariz. Mar. 14, 2014) (explaining that "arbitration clauses encompassing disputes arising out of or relating to a contract are considered broad.   They generally embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.") (internal citations and quotations omitted).   A contrary rule would allow parties to avoid arbitration by artful pleading.

Second, the arbitration clause in the Thacker Arbitration Agreement expressly applies to "additions or amendments" to it.   Ex. 1 at 2.   The EICIA is such an addition or amendment.   Mr. Thacker signed the EICIA upon starting work, shortly after signing the Thacker Arbitration Agreement.   *See* D.I. 48, ¶¶ 186, 188.   The EICIA recites that "[i]n exchange for the salary or wages paid to" Mr. Thacker by BSC, Mr. Thacker agrees to keep certain information confidential and to assign certain inventions to BSC.   D.I. 48 at Ex. 10.   The EICIA and the Thacker Arbitration Agreement are thus interrelated agreements, signed in the same time frame (when Mr. Thacker started work at BSC), concerning the same subject matter (Mr. Thacker's conditions of employment).   It is well-established that BSC's trade secret claim is arbitrable under these circumstances. *See NBR*, 207 F. App'x at 171 (stating that "[e]ven when a claim arises under a contract which contains no arbitration clause, that claim still may be arbitrated

when the allegations underlying it 'touch matters' covered by an arbitration clause."); *Westinghouse*, 616 F.2d at 100; *Stuchiner*, 2007 WL 215857, at \*3; *Cornell*, 942 F.2d at 140 ("[W]here a later contract lacking an arbitration clause supplements an earlier 'umbrella' agreement containing such a clause, disputes under the later contract are arbitrable.").[4]

Third, any "doubts" about whether the Thacker Arbitration Agreement covers the EICIA, must be resolved "in favor of arbitration." *Moses*, 460 U.S. at 24-25. That is particularly true here, where the arbitration clause is broad. *See Remicade*, 938 F.3d at 521-22. Thus, absent an unmistakable intent by the parties to exclude a dispute about confidentiality from the scope of the arbitration clause, the default federal rule requiring arbitration applies. *Id.* Nothing in either the Thacker Arbitration Agreement or the EICIA manifests any such intent. The Thacker Arbitration Agreement contains only a broad arbitration clause, with no exclusions. The EICIA is silent on dispute resolution. *See* D.I. 48 at Ex. 10. That strongly supports the conclusion that the parties intended the dispute resolution provisions in their umbrella employment agreement (i.e., the

---

[4]     In fact, BSC's trade secret claim requires that the EICIA be an "addition or amendment" to the Thacker Arbitration Agreement. The Thacker Arbitration Agreement contains an integration clause, stating that it is the "entire agreement" between the parties concerning Mr. Thacker's employment except for any "additions or amendments." Ex. 1 at 2. If the EICIA were not an "addition or amendment," the EICIA would have no force or effect due to the integration clause, and BSC's trade secret claim would collapse.

Thacker Arbitration Agreement) to govern any disputes arising out of the EICIA as well. *See Brayman*, 319 F.3d at 626 (finding that silence of agreement on dispute resolution supported arbitration under arbitration clause of related agreement); *Cornell*, 942 F.2d at 140.

Accordingly, the Thacker Arbitration Agreement requires arbitration of BSC's trade secret claim.

### C.   Nevro Can Invoke the Thacker Arbitration Agreement's Arbitration Clause under the Doctrine of Equitable Estoppel

As explained above, under California law, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." *JSM*, 193 Cal. App. 4th at 1241; *see Arthur Andersen*, 556 U.S. at 632. Estoppel applies to claims "based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *JSM*, 193 Cal. App. 4th at 1238. "Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." *Id.*

Here, BSC's trade secret claim against Nevro is based on the same facts as, and is inherently inseparable and intertwined with, arbitrable claims between BSC and Mr. Thacker. BSC alleges, in summary, that:

- Mr. Thacker signed the EICIA confidentiality agreement with BSC in August 2000 (D.I. 48, ¶¶ 186-88);

- Mr. Thacker took confidential documents with him when he left BSC in August 2006 (*Id.*, ¶¶ 189-92);

- Mr. Thacker (and thereby Nevro) acquired BSC's trade secrets by improper means via Mr. Thacker's act of taking the confidential documents in breach of the EICIA (*Id.*, ¶ 193);

- "Mr. Thacker disclosed Boston Scientific's confidential, proprietary information to Nevro." (*Id.*, ¶¶ 194-201);

- "Upon information and belief, Nevro has used the information provided by Mr. Thacker in connection with its business activities," and BSC has been damaged (*Id.*, ¶¶ 195-205).

As BSC's allegations make clear, BSC bases its trade secret claim on Mr. Thacker's conduct and his alleged breach of his conditions of employment. If BSC brought a claim against Mr. Thacker based on these allegations, it would be arbitrable for the reasons explained above. *See supra*, Section VI.B. Therefore, BSC's claim against Nevro based on the same facts is also arbitrable. *JSM*, 193 Cal. App. 4th at 1238.

*CardioNet, LLC v. InfoBionic, Inc.*, No. 1:15-cv-11803-IT, D.I. 286 (D. Mass. Mar. 24, 2017) (Ex. 2), is directly on point. In *CardioNet*, the plaintiff sued the defendant based on misconduct by a former employee. The plaintiff alleged that the former employee improperly retained confidential information in breach of contractual agreements concerning confidentiality. *Id.* at 2. The plaintiff further alleged that the former employee provided the information to the defendant

and the defendant used this information in its product.  *Id.*  The court compelled

the plaintiff to arbitrate its trade secret claim, based on an arbitration agreement

between the plaintiff and its former employee.  *Id.* at 6.  The court found that:

> The crux of [plaintiff's] misappropriation claims is that
> [defendant] obtained the trade secrets improperly because
> [its former employee] purportedly breached his
> contractual agreements and confidential relationship with
> [plaintiff].  Because the impropriety alleged was the
> breach itself, the question of [defendant's] liability is
> inextricably bound up with the alleged breach.

*Id.*  Applying California law, the court concluded that equitable estoppel applied.

*Id.* at 4, 6.

The same facts are present here.  The crux of BSC's misappropriation

claim is that Nevro obtained the trade secrets improperly because BSC's former

employee Mr. Thacker breached his contractual agreements and confidential

relationship with BSC.  Because the impropriety alleged is the breach itself, the

question of Nevro's liability is inextricably bound up with the alleged breach.  The

Court should therefore reach the same result as in *CardioNet*.

Estoppel applies even though BSC does not directly cite the Thacker

Arbitration Agreement in its Second Amended Complaint.  The "equitable estoppel

doctrine extends to claims that are dependent upon or inextricably intertwined with

the obligations imposed by the contract containing the arbitration clause,"

regardless of whether the claims are expressly based on the contract containing the

arbitration clause. *JSM*, 193 Cal. App. 4th at 1241. Courts reject attempts to avoid the application of estoppel by artful pleading. In *Price v. Coldwell Banker Real Estate Corp.*, No. CIV.A.4:05CV170-P-A, 2007 WL 902816, at \*2 (N.D. Miss. Mar. 22, 2007), the court applied equitable estoppel to claims "not based in and of themselves on the arbitration agreements," because the agreements directly giving rise to the claims "constituted part of the loan transaction between People's Choice and the plaintiff." The court in *Great Lengths Universal Hair Extensions S.r.L. v. Gold*, No. 16CIV193GBDGWG, 2017 WL 1731184, at \*4 (S.D.N.Y. Mar. 29, 2017), likewise rejected an attempt to avoid estoppel by disclaiming reliance on a related agreement. The court found that:

> Contrary to Plaintiffs' contention, the Share Purchase Agreement and the Transfer Deeds are related, integrated contracts.... Plaintiffs attempt to bifurcate the transaction and allege that they are only seeking to enforce the non-compete clause in the Transfer Deeds, but this Court's analysis is not controlled by the characterization of [the claims] in the pleading.

*Id.* (internal citation and quotations omitted). In short, BSC cannot avoid estoppel by focusing narrowly on the EICIA to the exclusion of the Thacker Arbitration Agreement.

## VII.   CONCLUSION

For these reasons, Nevro's motion to stay BSC's trade secret claim should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant and*
*Counterclaimant Nevro Corp.*

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7000

April 13, 2020

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that on April 13, 2020, this brief complies with the type and font limitations set forth in the Standing Order Regarding Briefing in All Cases, because it contains 4,262 words, which were counted by using the word count feature in Microsoft Word.

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)