IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORP. and | ) | |
| BOSTON SCIENTIFIC NEUROMODULATION | ) | |
| CORP., | ) | |
| | ) | |
| Plaintiffs and Counter- | ) | |
| Defendants, | ) | |
| | ) | C.A. No. 18-644 (CFC) |
| v. | ) | |
| | ) | |
| NEVRO CORP., | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaimant. | ) | |

## <u>NOTICE OF SUBPOENA</u>

Pursuant to Fed. R. Civ. P. 45, Defendant will serve the subpoena attached as

Exhibit A on Medtronic, Inc.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Defendant and Counterclaimant*
*Nevro Corp.*

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7000

May 5, 2020

# EXHIBIT A

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| Boston Scientific Corp. et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   18-cv-644-CFC-CJB |
| Nevro Corp. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                  Medtronic, Inc.
                        710 Medtronic Parkway, Minneapolis, MN 55432
                      *(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attached Exhibit A.

| Place: Regus, 100 South Fifth Street, 19th Floor Minneapolis, MN 55402, or as otherwise agreed | Date and Time: 06/05/2020 9:00 am |
|---|---|

The deposition will be recorded by this method:   videotaped and stenographically

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached Exhibit A.  The documents are to be produced at least one week before the deposition either electronically or by mail to Sharon Lee, Sidley Austin LLP, 787 Seventh Ave., New York, New sharon.lee@sidley.com or in person to Regus, 100 South Fifth Street, 19th Floor Minneapolis, MN 55402, or as otherwise agreed

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/05/2020

                    *CLERK OF COURT*
                                                                    OR

_____                    /s/ Sharon Lee
    *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Nevro Corp.                                                      , who issues or requests this subpoena, are:

Sharon Lee, Sidley Austin LLP, 787 Seventh Ave., New York, New York 10019; 212-839-7305; sharon.lee@sidley.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 18-cv-644-CFC-CJB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
    **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DEFINITIONS**

1.      The terms "Medtronic," "You," and "Your" shall mean and refer to Medtronic, Inc. and its associated entities, predecessors-in-interest, employees, agents, partners, attorneys, and representatives.

2.      "Boston Scientific Patents" shall mean U.S. Patent Nos. 7,496,404, 8,682,447, 6,993,384, 7,853,330, 7,822,480, 6,381,496, and 9,162,071.

3.      "Stimulation Parameters" shall mean the characteristics of the electrical pulses delivered by a stimulation system, including but not limited to the timing, width, duration, amplitude, voltage, power, and pulses per second.

4.      "Implantable Pulse Generator" shall mean a device implanted inside a body that has the capability to generate an electric current.

5.      "Lead" shall mean a conductive device that connects to an Implantable Pulse Generator to distribute an electric current.

6.      The terms "person" and "persons" shall mean an individual, individuals, a business entity, or business entities, including, but not limited to, associations, corporations, partnerships, or business trusts, any federal, state, or local government or governmental agency, and any foreign government or foreign government agency or other organization recognizable at law.

7.      The terms "document" and "documents" have the broadest meaning prescribed in Fed. R. Civ. P. 34 and includes, but is not limited to, source code.  A draft or non-identical copy is a separate document within the meaning of this term.

8.      The terms "thing" and "things" have the broadest meaning prescribed in Fed. R. Civ. P. 34 and includes every kind of physical specimen or tangible item, other than a document.

9.      The terms "communication" and "communications" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) regardless of the manner in which the communication took place, including, but not limited to, personal conversations, correspondence, electronic or computer mail, telephone calls, facsimile communications, voicemail, or telegrams.

10.     The terms "concern" and "concerning" shall mean referring to, relating to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a request.

11.     The terms "refer," "relate," and "respecting" shall be construed in the broadest sense to mean information (1) which contains or comprises any communication (including representations, requests, demands, studies, analyses, and the like) referred to in these requests, or (2) information which discusses, mentions, or refers, whether directly or indirectly, to the subject matter of the request, and shall include, but not be limited to, the following meanings: relevant to, containing, recording, discussing, mentioning, noting, supporting, memorializing, summarizing, analyzing, commenting upon, describing, demonstrating, reflecting, regarding, evidencing, concerning, pertaining, and/or constituting, in whole or in part, the matters set forth.

12.     The terms "and" and "or" shall be understood as either conjunctive or disjunctive, whichever is more inclusive in context.

13.     The terms "any" and "all" shall be considered to include "each and every."

14.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice versa.

15.     The terms "including" and "includes" shall mean "including but not limited to."

2

## INSTRUCTIONS

1.      You are to produce every document and thing requested that is in Your possession, custody, or control, or within the possession, custody, or control of any employees, agents, consultants, attorneys, and/or any other persons acting or purporting to act on Your behalf.

2.      All documents and things that respond, in whole or in part, to any portion of these Requests are to be produced in their entirety, including all attachments and enclosures.

3.      All documents and things requested are to be produced in the same file or other organizational environment in which they are maintained.  For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other responsive documents from said file, docket, or grouping, in the same order or manner of arrangement as the original.  Alternatively, as to each document and thing produced in response hereto, You shall identify the Request in response to which the document or thing is being produced.

4.      Electronic and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

5.      If in responding to these Requests, You claim any ambiguity in either a Request or a definition or instruction applicable thereto, identify in Your response the language You consider ambiguous and state the interpretation You are using in responding.

6.      If You object to the production of any document or thing on the grounds that it is protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege or protection, You must produce a log identifying all such documents and provide the information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure.

3

7.      Any attachment to an allegedly privileged, protected, or immune document or electronically stored information shall be produced unless You contend that the attachment is also privileged, protected, or immune, in which case the information specified in the previous instruction shall be separately provided for each such attachment.

8.      If You know of the existence, past or present, of any document or thing described in any of these Requests, but such document or thing is not presently in Your possession, custody, or control, You shall so state in response to the Request, identify such document or thing in response to the Request, and identify the individual in whose possession, custody, or control the document or thing was last known to reside.  If any responsive document or thing has been destroyed or otherwise removed from Your custody or control, please state when, how, and why such document or thing was destroyed or removed from Your custody.

9.      If You contend that production of any document or thing is prohibited by third party confidentiality obligations, You must specifically identify those obligations in Your responses, seek permission from the relevant third parties to produce the relevant document or thing in this action, and inform us of the outcome of those requests in a timely manner.

10.     If multiple copies of a document exist, You shall produce every copy on which appear any markings or notations of any sort not appearing on any other copy that You include in Your production.

11.     Color copies of documents should be produced where color is necessary to interpret or understand the contents.

12.     If any of the documents or things are considered "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information as those terms are defined in the Protective Order attached as

Exhibit 1, such documents and things should be produced subject to the terms and provisions of the Protective Order.

13.      If no documents or things exist that are responsive to a particular Request, that fact should be stated in Your response to such Request.

14.      Whenever possible, You shall produce documents or things responsive to individual Requests as soon as possible and without waiting to produce documents or things responsive to other Requests.

## **DEPOSITION TOPICS**

1.      The structure, operation, and capabilities of any Implantable Pulse Generator that Medtronic used, publicly disclosed, offered for sale, or sold prior to July 26, 2000, that includes a replenishable power source, including a rechargeable battery.

2.      The structure, operation, and capabilities of any product, software, and/or program that Medtronic used, publicly disclosed, offered for sale, or sold prior to December 4, 2001, that is capable of determining the relative positions and/or orientations of implanted leads and/or electrodes.

3.      The structure, operation, and capabilities of any external device that Medtronic used, publicly disclosed, offered for sale, or sold prior to June 27, 2003, that uses on-off keying modulation and/or frequency modulation to modulate signals that are transmitted to an implantable device.

4.      The structure, operation, and capabilities of any implantable device that Medtronic used, publicly disclosed, offered for sale, or sold prior to October 1, 1999, that stores multiple programs and/or sets of stimulation parameters.

5.      The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,895,416 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

6.      The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,807,439 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

7.      The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,941,906 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

8.      The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,534,018 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

9.      The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,453,198 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

10.      The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 7,167,756 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

11.      The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,456,883 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

12.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,501,703 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

13.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,443,891 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

14.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,201,993 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

15.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,577,901 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

16.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,562,595 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

17.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,016,447 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

18.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,360,437 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

19.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,443,486 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

20.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,083,248 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

21.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,752,977 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

22.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,704,602 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

23.     The structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,387,228 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

24.     The identity and location of all persons, documents, and things consulted, reviewed, communicated with or relied on in preparation for testifying about each of the topics above, including, on a topic-by-topic basis, an identification by production number or range of each document or thing associated with each topic and, for each person, his or her name, location, title, and responsibilities.

25.     The authentication and public availability, including dates of first public availability, of all documents produced in response to this subpoena.

26.     The date of first use, first offer for sale, and first sale of each Implantable Pulse Generator, system, and/or product responsive to any of the foregoing topics.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.     Documents sufficient to show the structure, operation, and capabilities of any Implantable Pulse Generator that Medtronic used, publicly disclosed, offered for sale, or sold prior to July 26, 2000, that includes a replenishable power source, including a rechargeable battery.

2.     Documents sufficient to show the structure, operation, and capabilities of any product, software, and/or program that Medtronic used, publicly disclosed, offered for sale, or sold prior to December 4, 2001, that is capable of determining the relative positions and/or orientations of implanted leads and/or electrodes.

3.     Documents sufficient to show the structure, operation, and capabilities of any external device that Medtronic used, publicly disclosed, offered for sale, or sold prior to June 27, 2003, that uses on-off keying modulation and/or frequency modulation to modulate signals that are transmitted to an implantable device.

4.     Documents sufficient to show the structure, operation, and capabilities of any implantable device that Medtronic used, publicly disclosed, offered for sale, or sold prior to October 1, 1999, that stores multiple programs and/or sets of stimulation parameters.

5.     Documents sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,895,416 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

6.     Documents sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,807,439 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

9

7.      Documents sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,941,906 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

8.      Documents sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,534,018 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

9.      Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,453,198 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

10.      Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 7,167,756 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

11.      Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,456,883 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

12.      Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,501,703 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

13.      Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,443,891 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

14.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,201,993 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

15.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,577,901 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

16.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,562,595 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

17.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,016,447 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

18.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,360,437 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

19.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,443,486 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

20.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,083,248 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

21.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,752,977 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

22.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 6,704,602 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

23.     Document sufficient to show the structure, operation, and capabilities of any embodiment of or product that practices U.S. Patent No. 5,387,228 that was developed, used, publicly disclosed, offered for sale, or sold by Medtronic.

24.     A product sample of the product lines and/or models and any accessories needed to operate the product (*e.g.*, any external programmer or patient controller) relating to the documents identified as responsive to the foregoing Requests for Production.

25.     Documents sufficient to show public availability, including dates of first public availability, of all documents produced in response to this subpoena.

26.     Documents sufficient to show the date of first use, first offer for sale, and first sale of each Implantable Pulse Generator, system, and/or product responsive to any of the foregoing topics.

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOSTON SCIENTIFIC CORP. AND BOSTON SCIENTIFIC NEUROMODULATION CORP., | |
| Plaintiffs and Counter-Defendants, | |
| v. | C.A. No. 18-644-CFC-CJB |
| NEVRO CORP., | |
| Defendant and Counterclaimant. | |

## STIPULATED PROTECTIVE ORDER

1. **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2. **DEFINITIONS**

2.1 <u>California Action</u>: *Nevro Corp. v. Boston Scientific Corp. et al.*, No. 3:16-cv-06830-VC-MEJ (N.D. Cal.).

2.2 <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3    "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.4    Counsel (without qualifier): Outside Counsel of Record and In-House Counsel (as well as their support staff).

2.5    Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.6    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.8    First Delaware Action: *Boston Scientific Corp. et al. v. Nevro Corp.*, No. CV 16-1163-CFC (D. Del.).

2.9    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by

less restrictive means.

2.10 "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.11 In-House Counsel: attorneys who are employees of a party to this action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.12 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.13 Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.14 Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.15 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.16 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.17    <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or as "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.18    <u>Receiving Party</u>: a Party that receives Disclosure or Discovery Material from a Producing Party.

## 3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

## 4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after

the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this

action, including the time limits for filing any motions or applications for extension of time

pursuant to applicable law.

**5.    DESIGNATING PROTECTED MATERIAL**

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party

or Non-Party that designates information or items for protection under this Order must take care

to limit any such designation to specific material that qualifies under the appropriate standards.

To the extent it is practical to do so, the Designating Party must designate for protection only

those parts of material, documents, items, or oral or written communications that qualify – so

that other portions of the material, documents, items, or communications for which protection is

not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are

shown to be clearly unjustified or that have been made for an improper purpose (e.g., to

unnecessarily encumber or retard the case development process or to impose unnecessary

expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated

for protection do not qualify for protection at all or do not qualify for the level of protection

initially asserted, that Designating Party must promptly notify all other parties that it is

withdrawing the mistaken designation.

5.2    Manner and Timing of Designations. Except as otherwise provided in this Order

(see, e.g., second paragraph of Section 5.2(a), below), or as otherwise stipulated or ordered,

Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so

designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) <u>for information in documentary form</u> (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b) <u>for testimony given in deposition or in other pretrial or trial proceedings</u>, that the

Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days after receipt of the transcript to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the deposition, hearing, or other proceeding, or up to 21 days after receipt of the transcript if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Parties shall give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall

inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

## 6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1     Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the

original designation is disclosed. The deadlines in Sections 6.2 and 6.3 shall apply by default, but the parties may agree to modify them for a particular challenge without a Court order.

6.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall request that the Parties schedule a teleconference with Judge Connolly's chambers in accordance with his discovery dispute resolution procedure within 14 days of the Parties agreeing that the meet and confer process will not resolve their dispute.[1] Failure by the Designating Party to request that the Parties schedule a teleconference within 14

---

[1] Each Party reserves the right to seek modification of this procedure to shift the burden to move on the Challenging Party after a certain number of challenges are made to avoid an abuse of the process. The burden of persuasion would remain on the Designating Party.

days shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may initiate a teleconference challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to initiate a teleconference to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7. **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. A Receiving Party may make a reasonable request to use Protected Material in an *inter partes* review proceeding with respect to any patents asserted by either Party against the other Party in any lawsuit by identifying the Protected Material by Bates number and providing an explanation of the need to use such Protected Material in the *inter partes* review proceeding. The Parties agree to meet and confer in good faith regarding any such reasonable requests, including regarding obtaining necessary protections in the *inter partes* review proceeding (*e.g.*, protective order) to prevent public disclosure of such Protected Material. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has

been terminated, a Receiving Party must comply with the provisions of Section 16 below
(FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and
in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise
ordered by the court or permitted in writing by the Designating Party, a Receiving Party may
disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees
of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information
for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that
is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including In-House Counsel) of the Receiving
Party to whom disclosure is reasonably necessary for this litigation and who have signed the
"Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is
reasonably necessary for this litigation and who have signed the "Acknowledgment and
Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional
Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the
"Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) mock jurors who have signed an undertaking that acknowledges the confidentiality of
all Protected Material, and agreed to use Protected Material solely for purposes of the mock jury

and not to disclose Protected Material to anyone outside of the mock jury;

(g) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(h) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to[2]:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A),

---

[2] This Protective Order does not provide any In-House Counsel access to "Highly Confidential – Attorneys' Eyes Only" or "Highly Confidential – Source Code" information or items. To the extent disclosure of information or items so designated to In-House Counsel becomes reasonably necessary for the litigation, the Parties agree to meet and confer in good faith regarding the specific scope of any such disclosure.

and (3) as to whom the procedures set forth in Paragraph 7.4(a), below, have been followed;

(c) the court and its personnel;

(d) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(e) mock jurors who have signed an undertaking that acknowledges the confidentiality of all Protected Material, and agrees to use Protected Material solely for purposes of the mock jury and not to disclose Protected Material to anyone outside of the mock jury; and

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4    Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Experts.

(a) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to Paragraph 7.3(b) first must make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information or items that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each entity from whom the Expert has received compensation or

funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years,[3] and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b) A Party that makes a request and provides the information specified in the preceding paragraph, may disclose the subject Protected Material to the identified Expert unless, within 7 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct, voice-to-voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may request that the Parties schedule a teleconference with Judge Connolly's chambers in accordance with his discovery dispute resolution procedure.

In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

7.6     Unified Production of Documents. For the sake of efficiency, the Parties agree to treat the fact discovery produced in the California and First Delaware Actions as produced in this

---

[3] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

case. Upon the effective date of the stipulation to this Protective Order in this action, Outside Counsel of Record may treat all documents and things produced in the California and First Delaware Actions, as well as any trial transcripts, trial exhibits, deposition transcripts, deposition exhibits, expert reports, and briefs filed or served in the California and First Delaware Actions as if they were produced and/or served in this case. Each Party agrees that the production of any documents or materials under this Paragraph is not an admission of relevance or admissibility for this case. Each Party reserves the right to argue that any document produced under this Paragraph and any trial transcript, trial exhibit, deposition transcript, deposition exhibit, expert report, and/or brief filed or served in the California or First Delaware Actions is not relevant to or admissible in this action. Each Party agrees not to use this agreement to deem any documents produced under this Paragraph, or any trial transcripts, trial exhibits, deposition transcripts, deposition exhibits, expert reports, and briefs filed or served in the California and/or First Delaware Actions, as evidence of the relevance or admissibility of any such document or the relatedness of any legal issues in the California and/or First Delaware Actions with this action.

## 8. PROSECUTION BAR

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to neuromodulation, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent

and Trademark Office ("the Patent Office").[4]  For purposes of this Paragraph, "prosecution"
includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or
maintenance of patent claims.  To avoid any doubt, "prosecution" as used in this Paragraph does
not include representing a party challenging a patent before a domestic or foreign agency
(including, but not limited to, a reissue protest, *ex parte* reexamination, post-grant review, or
*inter partes* review).  This Prosecution Bar also shall not include representing a party in a reissue
protest, *ex parte* reexamination, post-grant review, or *inter partes* review with respect to any
patents asserted by either party against the other party in any lawsuit.  This Prosecution Bar shall
begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or
"HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected
individual and shall end two (2) years after final termination of this action.

**9.**      **SOURCE CODE**

9.1      To the extent production of source code becomes necessary in this case, a
Producing Party may designate source code as "HIGHLY CONFIDENTIAL – SOURCE
CODE" if it comprises or includes confidential, proprietary, or trade secret source code.

9.2      Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE
CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY" information, including the Prosecution Bar set forth in Paragraph
8, and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 7.3 and
7.4.

---

[4] It may be appropriate under certain circumstances to require Outside Counsel of Record and In-
House Counsel who receive access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY" information to implement an "Ethical Wall."

9.3     Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at both the Palo Alto, California, and District of Columbia offices of the Producing Party's Outside Counsel of Record or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

9.4     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in Paragraph 9.3 in the first instance. The Producing Party shall provide all such source code in paper form including Bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

9.5     The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured, locked area. The

Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

**10.** **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

Other Proceedings. By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

In particular, if a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the

other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[5]

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

## 11.  A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

11.1    The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

11.2    In the event that a Party is required, by a valid discovery request, to produce a

---

[5] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

     (a)    promptly notify in writing the requesting party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

     (b)    promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

     (c)    make the information requested available for inspection by the Non-Party.

     11.3    If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[6] Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

## 12.    <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were

---

[6] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

made of all the terms of this Order, and (d) request such person or persons to execute the

"Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

## 13. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

If information produced in discovery is subject to a claim of privilege or of protection as

trial-preparation material, the Producing Party making the claim may notify any Receiving Party

of the claim and the basis for it. After being notified, a Receiving Party must promptly return or

destroy the specified information and any copies it has, and may not sequester, use, or disclose

the information until the claim is resolved. The Receiving Party may not present the information

to the Court or otherwise use the information in connection with a dispute over the claim of

privilege. This provision is not intended to modify whatever procedure may be established in an

e-discovery order that provides for production without prior privilege review.

## 14. DISCOVERY FROM EXPERTS AND CONSULTANTS

14.1     Absent good cause, drafts of reports and declarations of testifying experts, and

reports and other written materials, including drafts, of consulting experts, shall not be

discoverable.

14.2     Testifying experts shall not be subject to discovery with respect to any draft of his

or her report(s) or declarations in this case. Draft reports and declarations, and notes or outlines

for draft reports and declarations developed and drafted by the testifying expert and/or his or her

staff are also exempt from discovery.

14.3     Discovery of materials provided to testifying experts shall be limited to those

materials, facts, consulting expert opinions, and other matters actually relied upon by the

testifying expert in forming his or her final report, trial or deposition testimony, or any opinion in

this case. No discovery can be taken from any non-testifying expert except to the extent that

such non-testifying expert has provided information, opinions, or other materials to a testifying

expert relied upon by that testifying expert in forming his or her final report(s), trial and/or

deposition testimony, or any opinion in this case.

14.4    No conversations or communications between Counsel and any testifying or

consulting expert will be subject to discovery unless the conversations or communications are

relied upon by such experts in formulating opinions that are presented in reports or trial or

deposition testimony in this case.

14.5    Reports, materials, communications, and other information exempt from

discovery under this Section shall be treated as attorney work product for the purposes of this

litigation and this Stipulated Protective Order.

**15.    MISCELLANEOUS**

15.1    Right to Further Relief. Nothing in this Order abridges the right of any person to

seek its modification by the court in the future.

15.2    Right to Assert Other Objections. By stipulating to the entry of this Protective

Order no Party waives any right it otherwise would have to object to disclosing or producing any

information or item on any ground not addressed in this Stipulated Protective Order.  Similarly,

no Party waives any right to object on any ground to use in evidence of any of the material

covered by this Protective Order.

15.3    Filing Protected Material. Without written permission from the Designating Party

or a court order secured after appropriate notice to all interested persons, a Party may not file in

the public record in this action any Protected Material.  A Party that seeks to file under seal any

Protected Material must comply with Civil Local Rule 5.1.3.  Protected Material must be filed

under seal in accordance with the provisions of the United States District Court for the District of

Delaware's Revised Administrative Procedures Governing Filing and Service by Electronic

Means.  Redacted versions of papers with Protected Material filed under seal may be filed with

the Court in accordance with its procedures and made publicly available provided that Delaware

Local Rule 5.1.3 and any other appropriate local rules are followed; and

(a) All Protected Material set forth in the papers is deleted or obscured and all Protected

Material is removed as exhibits; and

(b) Redacted versions of the papers are clearly marked "Public Version – Protected

Material Redacted" or the like.  Redacted versions of the papers also must clearly identify each

place where information or exhibits have been deleted.

## 16.    <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in Section 4, each

Receiving Party must return all Protected Material to the Producing Party or destroy such

material.  As used in this subdivision, "all Protected Material" includes all copies, abstracts,

compilations, summaries, and any other format reproducing or capturing any of the Protected

Material.  Whether the Protected Material is returned or destroyed, the Receiving Party must

submit a written certification to the Producing Party (and, if not the same person or entity, to the

Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all

the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has

not retained any copies, abstracts, compilations, summaries or any other format reproducing or

capturing any of the Protected Material.  Notwithstanding this provision, Counsel are entitled to

retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work

product, and consultant and expert work product, even if such materials contain Protected

Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4.

[SIGNATURE BLOCKS ON FOLLOWING PAGE]

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED: March 10, 2020

YOUNG, CONAWAY, STARGATT &
TAYLOR LLP

*/s/ Pilar G. Kraman*
_____

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Of Counsel:*

Matthew M. Wolf
Edward Han
Marc A. Cohn
Amy DeWitt
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000

Krista Carter
Edmond K. Ahadome
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500

*Attorneys for Plaintiffs Boston Scientific
Corp. and Boston Scientific
Neuromodulation Corp.*

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ Rodger D. Smith II*
_____

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Of Counsel:*

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Thomas A. Broughan, III
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8510

*Attorneys for Defendant and
Counterclaimant Nevro Corp.*

SO ORDERED this __10th__ day of March, 2020.

_____
UNITED STATES DISTRICT JUDGE

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____

_____ [print or type full address],

declare under penalty of perjury that I have read in its entirety and understand the Stipulated

Protective Order that was issued by the United States District Court for the District of Delaware

on _____ [date] in the case of *Boston Scientific Corporation, et al. v. Nevro*

*Corp.*, Civil Action No. 18-644-CFC-CJB. I agree to comply with and to be bound by all the

terms of this Stipulated Protective Order, and I understand and acknowledge that failure to so

comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to this

Stipulated Protective Order to any person or entity except in strict compliance with the

provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

District of Delaware for the purpose of enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
                    [printed name]

Signature: _____
                  [signature]

STIPULATED PROTECTIVE ORDER
C.A. No. 18-644-CFC-CJB                                              EXHIBIT A

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 5, 2020, upon the following in the manner indicated:

Karen L. Pascale, Esquire                                          *VIA ELECTRONIC MAIL*
Pilar G. Kraman, Esquire
YOUNG CONAWAY STARGATT &TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Edmond Ahadome, Esquire                                      *VIA ELECTRONIC MAIL*
Thomas T. Carmack, Esquire
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306
*Attorneys for Plaintiffs*

Edward Han, Esquire                                              *VIA ELECTRONIC MAIL*
Matthew M. Wolf, Esquire
Marc A. Cohn, Esquire
Amy DeWitt, Esquire
William Z. Louden, Esquire
William Young, Esquire
Chris Moulder, Esquire
Bridgette C. Boyd, Esquire
Michael E. Kientzle, Esquire
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC  20001
*Attorneys for Plaintiffs*

Dina M. Hayes, Esquire                                    *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL  60602
*Attorneys for Plaintiffs*

Michael P. Kahn, Esquire                                  *VIA ELECTRONIC MAIL*
Michael N. Petegorsky, Esquire
Brooks J. Kenyon, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, Bank of America Tower
New York, NY  10036
*Attorneys for Plaintiffs*

C. Brandon Rash, Esquire                                  *VIA ELECTRONIC MAIL*
Rachel J. Elsby, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006
*Attorneys for Plaintiffs*

Jason Weil, Esquire                                       *VIA ELECTRONIC MAIL*
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103
*Attorneys for Plaintiffs*

/s/ Rodger D. Smith II
_____
Rodger D. Smith II (#3778)

2