IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> NEVRO CORP., <br><br> Defendant and Counterclaimant. | C.A. No. 18-644 (CFC) (CJB) <br><br> **REDACTED - PUBLIC VERSION** |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM RODGER D. SMITH II REGARDING TRADE SECRET DISCOVERY**

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W. Washington, DC 20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road, Building 1 Palo Alto, CA  94304
(650) 565-7000

Original Filing Date: June 9, 2020
Redacted Filing Date: June 16, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendant and Counterclaimant Nevro Corp.*

Dear Judge Burke:

We write on behalf of Nevro Corp. ("Nevro") to request a protective order limiting the broad discovery requests of Boston Scientific Corp. and Boston Scientific Neuromodulation Corp. (collectively, "BSC") concerning trade secrets to information relevant only to BSC's *prima facie* claims of trade secret misappropriation, rather than allowing BSC's current fishing expedition, which runs afoul of this Court's May 7, 2020 Order (D.I. 128). The Order recognized that the four illustrative examples of deficiencies that run throughout BSC's Trade Secret Disclosures (D.I. 114, Ex. G; D.I. 121 at 3) provided by Nevro "appear problematic for the reasons identified by Nevro" and ordered the parties to further meet and confer to remedy BSC's disclosures. D.I. 128.[1] During this process, Nevro also explained to BSC how its other 60 "trade secrets" are similarly problematic and require significant amendment and supplementation to comply with the Order. Ex. A. BSC, however, has failed to cure its deficiencies with respect to those "trade secrets." Nevro moves to compel BSC to identify its alleged trade secrets with reasonable particularity as required by Cal. Civ. Proc. § 2019.210, and as requested by Nevro's Interrogatory No. 12 (Ex. B). Finally, to the extent BSC argues that the Court's May 7, 2020 Order (D.I. 128) requires Nevro to produce discovery unrelated to BSC's trade secret misappropriation claim, Nevro requests that the Court stay this discovery pending a ruling on Nevro's Objections (D.I. 135) to the Order.

**BSC's Trade Secret Claim, After Months of Discovery, Is Based on Just Two Documents**

As previously discussed (D.I. 114 and D.I. 121), BSC's trade secret claims stem from Nevro's August 2017 discovery that a now former employee, James Thacker, had kept—in his personal possession at his home—documents from his previous employment at BSC. D.I. 121, Ex. A at 4. After Mr. Thacker provided BSC with a complete list of files in his possession, as well as access to those documents, Nevro searched its systems for nearly 7,000 BSC-selected filenames to determine whether its systems contained any of BSC's allegedly sensitive information. *Id*. This search yielded only a handful of instances in which Mr. Thacker sent BSC documents to other Nevro employees, including former BSC employees then employed at Nevro. BSC has also had the opportunity to cross-examine Mr. Thacker on three separate occasions on this topic.

After obtaining this extensive discovery, BSC was only able to plead facts ***based on just two documents*** in each of its three complaints in this case to support its allegation that Nevro misappropriated its trade secrets. On April 27, 2018, BSC filed—but did not serve—its first Complaint in this action alleging patent infringement and trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"). *See* D.I. 1. BSC pled just two sets of facts alleging that Nevro "acquired, disclosed or used" any alleged trade secrets. *See* D.I. 1 at ¶ 100. First, BSC alleged that, "on April 16, 2009, Mr. Thacker emailed Nevro employee Wesley Park (also a former [BSC] employee) and attached a 50-page ['Stimulus Confirmatory Study']." *Id*. BSC claimed this Confirmatory Study was its "protocol to run the clinical investigation for its Precision™ product and was a compilation of information necessary for [its] clinical investigation, including such confidential information as subject enrollment criteria (*e.g.*, detailed inclusion and exclusion criteria), study design methodology/testing requirements and monitoring requirements." *Id*. at ¶ 102. BSC next alleged that "on May 4, 2009, Mr. Thacker emailed Nevro employee David Marco (also a

---

[1] On May 29, 2020, BSC provided supplemental disclosures of Trade Secret Nos. 2, 10, 47, and 56. The parties are continuing to meet and confer regarding those disclosures.

The Honorable Christopher J. Burke
June 9, 2020

former [BSC] employee) and attached a 26-page ['Clinician Programmer Module Specification']." *Id.* at ¶ 104. This document allegedly "detail[ed] the specifications necessary for the Clinician's Programmer Station . . . ." *Id.* at ¶ 107. BSC alleged that this document "include[d] such confidential information as software functional requirements, including specific programming requirements." *Id.* Despite having obtained months of discovery and multiple depositions of Mr. Thacker, BSC was not able to identify any other purported trade secrets "acquired, disclosed or used" by Nevro.

Three months later, BSC filed and served an Amended Complaint alleging the same set of facts for its trade secret claim again based on just the two documents. D.I. 5 at ¶¶ 147-70. A year and a half later, on February 11, 2020, BSC filed and served its Second Amended Complaint ("SAC") reciting, word-for-word, the same set of factual allegations and identifying the same two documents as evidence of Nevro's acquisition, disclosure and use of trade secrets. D.I. 48 at ¶¶ 182-205. BSC's allegations regarding the same "Confirmatory Study" and "Clinician Programmer Module Specification" also formed the basis for the Court's determination that BSC had alleged facts sufficient to sustain its trade secret claim. D.I. 23 at 22-25.

**BSC's Discovery Requests Should be Limited to The Claims in its Complaint**

At the May 4, 2020 hearing, BSC incorrectly told the Court that its Initial Disclosure of Trade Secrets[2] listing 64 purported trade secrets it alleges Nevro misappropriated is "subsumed" within the trade secret claim described in its SAC. May 4, 2020 Hearing Tr. at 35:5-10. BSC's Disclosure, citing over 100 documents, is significantly broader than the documents that form the basis of its trade secret claim and, as a result, BSC's trade secret discovery requests are unduly and improperly broad. BSC's effort to drastically expand the scope of discovery should be foreclosed because it unfairly forces Nevro to expend significant resources and risks unwarranted exposure of its own trade secrets in the process.

For example, although BSC has identified just two documents as containing misappropriated trade secrets in its SAC, it relies on those two documents for just three of its 64 "trade secrets." *See* D.I. 114, Ex. F; *see also* Ex. A (5/13/20 Ltr. from Lee to Hayes) at 3. Further, the SAC alleges only that BSC's trade secrets were a compilation of information necessary for: (1) its "clinical investigation, including such confidential information as subject enrollment criteria (*e.g.*, detailed inclusion and exclusion criteria), study design methodology/testing requirements and monitoring requirements"; and (2) "the design and development of [BSC's] SCS products and incudes such confidential information as software functional requirements, including specific programming requirements." D.I. 48 at ¶¶ 196, 201. BSC now claims that its trade secrets include far more, including ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[2] These "trade secrets" do not include any secrets or documents related to the high-frequency, paresthesia-free spinal cord stimulation, that forms the foundation of Nevro's HF-10 pain therapy.

The Honorable Christopher J. Burke
June 9, 2020

██████████████████████████████████████ None of these "trade secrets" nor any underlying documents are identified anywhere in the SAC even though BSC had possession of these documents well before BSC filed even its first unserved April 2018 Complaint. Allowing this discovery without any restraint would require Nevro to produce documents and witnesses regarding virtually every aspect of its business having no discernable relevance to this case, and will expose Nevro's own trade secrets in the process.

BSC's extraordinarily broad expansion of its allegedly misappropriated trade secrets is improper. This type of fishing expedition—where a plaintiff identifies facts alleging a narrow set of trade secrets in a complaint but pursues discovery on an expanded set of trade secrets—should not be permitted. *See*, *e.g.*, *Avaya Inc. v. Cisco Sys., Inc.*, No. 10-cv-5881, 2011 WL 4962817, at *3 (D.N.J. Oct. 18, 2011). In *Avaya*, as here, the factual allegations in the complaint did not support an indication that the defendant actually used the trade secrets identified in the plaintiff's list, the identified secrets were "simply too extensive in number and too varied in substance to be supported" by the complaint. *Id*. (finding that plaintiff's requested discovery "far overreaches the information to which they are entitled and far exceeds what is reasonable. The sheer volume and variety of the discovery requests are enough to liken [plaintiff's] tactic to a fishing expedition").

In fact, BSC has admitted that its discovery requests were not drafted with the goal of uncovering evidence to support those "trade secrets" identified in its SAC, but instead "***were crafted to uncover the scope of Nevro's trade secret misappropriation*** . . . ." D.I. 150 at 2.[3] Such discovery in search of a claim is not envisioned by the Federal Rules, which limit the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense" (Fed. R. Civ. P. 26(b)), especially where Nevro has already provided BSC with extensive discovery regarding the scope of Mr. Thacker's disclosures. *See Zuk v. Eastern Pa. Psychiatric Inst. of Med. College of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; [there must be] some basis in fact for the action."); *see also Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.").

**BSC Should Be Compelled to Articulate Its Alleged Trade Secrets With Particularity**

To the extent the Court allows BSC discovery outside the scope of its SAC, Nevro requests that BSC first be compelled to identify its alleged trade secrets with particularity and to the extent it fails to do so, all discovery should be denied.[4] In its May 7 Order, the Court recognized that

---

[3] For example, despite identifying only two documents and three Nevro employees with knowledge of those documents in its SAC, BSC's discovery requests (*e.g.*, ROG Nos. 1-6, 8 and RFP Nos. 1-7, 9, 15, 17, 19-21, 24-31) "seek[] information regarding nearly 50 former BSC employees who were hired by Nevro" and alleged "Trade Secrets at Issue" regardless of their relevance to the trade secret allegations in the SAC. D.I. 114 at 1; *see also id.*, Exs. A & B.

[4] BSC is required to sufficiently identify its trade secrets prior to trade secret discovery, as required by CUTSA, Third Circuit authority, and Nevro's ROG No. 12. D.I. 121 at 2-3; *see also Par Pharm., Inc. v. QuVa Pharma, Inc.*, No. 17-cv-6115, 2019 WL 959700, at *3 (D.N.J. Feb. 27, 2019); Ex. B.

The Honorable Christopher J. Burke
June 9, 2020

the four exemplary trade secrets identified by Nevro "appear problematic for the reasons identified by Nevro" and ordered the parties to meet and confer on those trade secrets. D.I. 128. As BSC represented to the Court at the May 4, 2020 hearing, the parties were still in the process of "meeting and conferring with respect to [BSC's] trade secret requirements" (Tr. at 8:18-21).

On May 13, 2020, Nevro sent BSC a 24-page letter detailing why BSC's 60 other "trade secrets" are similarly problematic and require significant amendment and supplementation to comply with Cal. Civ. Proc. § 2019.210. *See* Ex. A. Among other deficiencies, Nevro identified that, as with the other "trade secrets" the Court has already found problematic, BSC (1) provided insufficient detail to allow Nevro to determine what ▮▮▮▮▮▮ BSC claims have been misappropriated; (2) effectively identifies all SCS system information as trade secrets; (3) recites only generic information; (4) identifies non-confidential information as trade secrets; and (5) cites large documents without specificity. *Id*. at 3-24.

BSC notably has not disputed any of Nevro's detailed reasons explaining why BSC's recitations of these trade secrets are also deficient other than to assert that supplementation was unnecessary "because Nevro had [not] posed any objection to those disclosure[s] within 30 days," relying on the Court's May 7, 2020 Order. Ex. C. That is incorrect. The Order merely required Nevro to respond to certain discovery requests "within 30 days," which it did, and did not prevent Nevro from further objecting to BSC's improper identification of trade secrets. D.I. 128. BSC has since admitted that Nevro has not waived its objections. D.I. 150 at 7-8. BSC has no basis for refusing to identify its trade secrets with specificity and should be compelled to do so.

**Nevro Should Not Be Required to Produce Discovery Not Relevant to the Trade Secret Claim**

Fed. R. Civ. P. 26(b) limits the scope of discovery to "any nonprivileged matter that is relevant to [a] party's claim or defense." As explained above, BSC's trade secrets should be limited to the narrow allegations in the SAC that (even after BSC had already obtained extensive discovery) form the basis for its trade secret claim. BSC's discovery requests should also be so limited. To the extent the Court allows BSC discovery broader than the trade secrets identified in its SAC, BSC's discovery requests should be limited to information relevant to the allegedly misappropriated trade secrets, which BSC has yet to identify with sufficient specificity. As explained in Nevro's Objections to the Court's Order, although the Court ordered Nevro to provide substantive responses to the trade secret discovery that "does not require identification of the Trade Secrets at Issue" (D.I. 128), the scope of documents relevant to BSC's discovery requests is entirely dependent on BSC's identification of its alleged trade secrets, regardless of whether the request uses the term "Trade Secrets at Issue." D.I. 135 at 10. Without any restriction, BSC's discovery requests would require production of all former-BSC employee documents, which would inevitably include Nevro trade secrets, regardless of their relevance to any alleged BSC trade secret. *See*, *e.g.*, D.I. 114, Ex. A at 18 (RFP No. 5: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *id*. at 21-22 (RFP Nos. 22-23). Thus, to the extent BSC argues the Court's Order requires Nevro to produce discovery regardless of its relevance to any allegedly misappropriated trade secret, and to the extent the Court is inclined to agree, Nevro respectfully requests the Court stay its Order pending a ruling on Nevro's Objections.

4

The Honorable Christopher J. Burke
June 9, 2020

                                                Respectfully,

                                                */s/ Rodger D. Smith II*

                                                Rodger D. Smith II (#3778)

RDS/rah

cc:     All Counsel of Record (via electronic mail)