**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC
NEUROMODULATION CORP.,

                Plaintiffs,

                v.

NEVRO CORP.,

                Defendant.

C.A. No. 18-644-CFC-CJB

REDACTED - PUBLIC VERSION

**EXHIBIT A TO
PLAINTIFFS' OPENING LETTER BRIEF TO THE HONORABLE CHRISTOPHER J.
BURKE RE: MOTION FOR RELIEF DUE TO NEVRO'S REFUSAL TO COMPLY
WITH THIS COURT'S MAY 7, 2020 ORAL ORDER**

OF COUNSEL:
Matthew M. Wolf
Edward Han
Marc A. Cohn
Amy DeWitt
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
matthew.wolf@arnoldporter.com
ed.han@arnoldporter.com
marc.cohn@arnoldporter.com
amy.dewitt@ arnoldporter.com

Dina M. Hayes
Bridgette C. Boyd
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison Street Suite 4200
 Chicago, IL  60602-4231
(312) 583-2300
Dina.Hayes@arnoldporter.com
Bridgette.Boyd@arnoldporter.com

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs Boston Scientific
Corporation and Boston Scientific
Neuromodulation Corp.*

*(Continued . . . .)*

June 9, 2020

Redacted Version:  June 16, 2020

Thomas T. Carmack
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500
tom.carmack@arnoldporter.com

Michael P. Kahn
Michael N. Petegorsky
Brooks J. Kenyon
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park, Bank of America Tower
New York, NY 10036-6745
(212) 872-1000
mkahn@akingump.com
mpetegorsky@akingump.com
bkenyon@akingump.com

C. Brandon Rash
Rachel J. Elsby
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
(202) 887-4000
brandon.rash@akingump.com
relsby@akingump.com

Jason Weil
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
(215) 965-1200
jweil@akingump.com

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., | ) ) ) | |
| | ) | |
| Plaintiffs and Counter-Defendants, | ) ) | C.A. No. 18-644 (CFC) |
| | ) | REDACTED - PUBLIC VERSION |
| v. | ) | |
| | ) | |
| NEVRO CORP., | ) | |
| | ) | |
| Defendant and Counterclaimant. | ) ) | |

## NEVRO CORP.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO BOSTON SCIENTIFIC CORP. AND BOSTON SCIENTIFIC NEUROMODULATION CORP.'S FIRST SET OF INTERROGATORIES (NOS. 1, 4, 8)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Court's May 7, 2020 Order (D.I. 128), Defendant Nevro Corp. ("Nevro"), by and through its undersigned counsel, hereby submits the following supplemental objections and responses to Plaintiffs Boston Scientific Corp. and Boston Scientific Neuromodulation Corp.'s (collectively "BSC") First Set of Interrogatories (Nos. 1, 4, 8). The objections and responses below are based upon information presently available to Nevro. As discovery proceeds, facts, information, evidence, documents, and things may be discovered that are not set forth in these responses and which may be responsive to these Interrogatories. Nevro reserves the right to amend and supplement these objections and responses pursuant to Fed. R. Civ. P. 26(e) as discovery progresses.

## GENERAL OBJECTIONS

The following general objections apply to each of the Definitions, Instructions, and Interrogatories and shall have the same force and effect as if set forth in full in response to

each individually numbered Interrogatory. The specific response may repeat a general objection for emphasis or any other reason and may also include one or more specific objections. Any failure to repeat all or any part of these general objections in any specific response shall not constitute a waiver or relinquishment of such objection.

1.     Nevro objects to the Definitions, Instructions, and Interrogatories to the extent they are broader than, or impose conditions, obligations, or duties beyond those required by the Federal Rules of Civil Procedure, the Local Rules for this Court, any applicable orders of this Court, and/or any stipulations of the parties. Nevro's responses will be provided in accordance with the Federal Rules of Civil Procedure, the Local Rules, any applicable orders of this Court, and/or any stipulations of the parties.

2.     Nevro objects to each Interrogatory to the extent it seeks information protected from disclosure under, without limitation, the attorney-client privilege, the work product doctrine, common interest privilege, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and/or any other applicable privilege, prohibition, limitation, or immunity from disclosure. Nevro hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to the Interrogatories. Any disclosure of privileged or protected information is inadvertent and is not intended to waive any applicable privilege or protection from disclosure.

3.     To the extent Nevro responds to BSC's Interrogatories by stating that it will provide information that Nevro deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c), or Federal Rule of Evidence 501, Nevro will do so only subject to the provisions of the agreed-upon Protective Order.

4.     Nevro objects to each Interrogatory to the extent it seeks information that Nevro is under an obligation to a third party or court order not to disclose.  Nevro will disclose any such responsive, non-privileged, and relevant information in accordance with the Protective Order applicable in this action and after complying with its obligations to the third party and/or court.

5.     Nevro objects to each Interrogatory to the extent it seeks information that is not in Nevro's possession, custody, or control; purports to require Nevro to speculate about the identity of persons who might have responsive documents or information; and/or purports to call for any description of documents and things that Nevro no longer possesses and/or was under no obligation to maintain.

6.     Nevro objects to each Interrogatory to the extent it seeks information that is not relevant to any party's claim or defense.  Nevro further objects to each Interrogatory to the extent the scope of the discovery requested is not proportional to the needs of the case.

7.     Nevro objects to each Interrogatory to the extent it is overly broad, unduly burdensome, internally duplicative, unreasonably cumulative of other discovery, vague, or ambiguous so as not to be subject to a reasonable interpretation or response and would require Nevro to speculate and decide to what extent it must search through information and subjectively determine what may, or may not, be responsive.

8.     Nevro objects to each Interrogatory to the extent it seeks information that is publicly available, is as readily available to BSC as it is to Nevro, and/or is already in BSC's possession, custody, or control.

9.     Nevro objects to each Interrogatory to the extent it contains purported factual assertions, assumptions, or characterizations that are in dispute or as to which BSC will

bear the burden of proof at trial. Nevro's responses are not to be construed as admissions that any contention or assumption contained in the Interrogatories, whether implicit or explicit, is correct.

10.     Nevro objects to each Interrogatory to the extent it requires Nevro to make legal conclusions.

11.     Nevro objects to each Interrogatory as premature to the extent it calls for the disclosure of expert testimony and opinions.

12.     Nevro objects to each Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it is unlimited in temporal scope or otherwise not limited to a time frame relevant to this litigation and the patents-in-suit.

13.     Nevro objects to each Interrogatory to the extent it seeks information that is subject to privacy laws. Nevro will respond only to the extent that it may do so consistent with such privacy laws.

14.     Nevro objects to BSC's definition of the term "Senza Systems" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes subject matter not relevant to any party's claim or defense. For example, Nevro's response is limited to the aspects and elements of the Nevro Senza® systems that are accused of infringing the patents-in-suit.

15.     Nevro objects to BSC's definition of the term "BSC SCS Systems" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any" BSC SCS system, regardless of its relevance to any party's claim or defense.

16. Nevro objects to BSC's definition of the terms "sale," "sold," and "purchase" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes transactions not relevant to any party's claim or defense.

17. Nevro objects to BSC's definition of the term "communication" to the extent it purports to impose conditions, obligations, or duties beyond those required by the Federal Rules of Civil Procedure, the Local Rules, any applicable orders of this Court, or any stipulation of the parties.

18. Nevro objects to BSC's definition of "Nevro" to the extent it seeks information from parties from whom Nevro has no right or obligation to seek such information. Nevro also objects to this definition insofar as it seeks information that is not within Nevro's current possession, custody, or control.

19. Nevro objects to BSC's definition of "Former BSC Employee" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes individuals or subject matter not relevant to any party's claim or defense and/or does not relate to the patents or systems at issue in this litigation.

20. Nevro objects to each Interrogatory that seeks information related to BSC's trade secret misappropriation claim because its claim raises legal issues which are subject to be decided pursuant to a valid arbitration agreement between BSC and Mr. James Thacker.

21. Nevro objects to each Interrogatory that seeks information related to BSC's trade secret misappropriation claim as premature because BSC has not yet complied with California Code of Civil Procedure section 2019.210, which is required prior to the commencement of discovery on BSC's claim for trade secret misappropriation.

22. Nevro objects to BSC's use of the term "Trade Secret at Issue" as vague and ambiguous because BSC has not yet complied with California Code of Civil Procedure section 2019.210, which requires BSC to identify the alleged trade secrets "with reasonable particularity" prior to the commencement of discovery on BSC's claim for trade secret misappropriation. Nevro further objects to BSC's definition of "Trade Secret at Issue" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "all other confidential information of BSC that was used or disclosed without BSC's consent by any Former BSC Employee." Nevro further objects to BSC's use of "Trade Secret at Issue" to the extent it requires Nevro to make legal conclusions as to what constitutes an alleged trade secret. Nevro further objects to this definition to the extent it assumes facts that are not in evidence, namely that Nevro has misappropriated any alleged trade secret. Nevro further objects to BSC's use of the term "Trade Secret at Issue" to the extent it includes any alleged trade secrets not identified in BSC's Second Amended Complaint (D.I. 48) and therefore do not form the basis for BSC's trade secret misappropriation claim.

23. Nevro further objects to each of the Interrogatories directed to BSC's trade secret misappropriation claim for the reasons identified in its May 21, 2020 Objections to the Magistrate Judge's May 7, 2020 Order (D.I. 128).

24. Nevro's responses to these Interrogatories are not intended to waive, and in fact expressly preserve:

      a.    all questions as to the competence, relevance, materiality, and admissibility as evidence for any purpose of the information or documents, or the subject matter thereof, in any respect of this

litigation or any other court action or judicial or administrative proceeding or investigation;

b. the right to object on any ground to the use of any such information or documents, or the subject matter thereof, in any aspect of this litigation or any other court action or judicial or administrative proceeding or investigation;

c. the right to object at any time in connection with any further response to this or any other request for information or production of documents; and

d. the right at any time to supplement its responses.

## RESPONSES

### INTERROGATORY NO. 1:

Provide the name and last known address for each Former BSC Employee; all titles and positions held by each Former BSC Employee while at Nevro related to SCS; all projects to which each Former BSC Employee was assigned while at Nevro related to SCS; and the job responsibilities of each Former BSC Employee while at Nevro related to SCS.

### RESPONSE TO INTERROGATORY NO. 1

Nevro objects to this Interrogatory because it contains multiple discrete parts. Nevro objects to this Interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege. Nevro objects to BSC's definition of the term "SCS" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes subject matter not relevant to any party's claim or defense and/or does not relate to the patents or systems at issue in this litigation. Nevro further objects to this Interrogatory to the extent the burden or expense of the requested information outweighs its likely benefit.

Nevro objects to this Interrogatory to the extent BSC seeks information about "each" Former BSC Employee, and to the definition of "Former BSC Employee," as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes individuals or subject matter not relevant to any party's claim or defense and/or does not relate to the patents or systems at issue in this litigation. Nevro further objects to this Interrogatory to the extent the burden or expense of the requested information outweighs its likely benefit. Nevro objects to this Interrogatory to the extent it seeks information that is publicly available, is as readily available to BSC as it is to Nevro, and/or is already in BSC's possession, custody, or control.

Nevro objects to this Interrogatory to the extent it seeks information related to BSC's trade secret misappropriation claim because its claim raises legal issues, which are subject to be decided pursuant to a valid arbitration agreement between BSC and Mr. Thacker. Nevro further objects to this Interrogatory as premature to the extent it seeks information related to BSC's trade secret misappropriation claim because BSC has not yet complied with California Code of Civil Procedure section 2019.210, which is required prior to the commencement of discovery on BSC's claim for trade secret misappropriation.

Subject to the foregoing general and specific objections, Nevro is willing to meet and confer with respect to the relevance, scope, and proportionality of this Interrogatory if the Court decides that BSC's trade secret misappropriation claim should proceed in this case and once BSC has complied with California Code of Civil Procedure section 2019.210, by identifying the particular trade secret at issue.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1

Nevro reiterates its objections contained in its original response. The scope of discovery relevant to this Interrogatory depends on the "Trade Secrets at Issue," which BSC has not yet identified with sufficient specificity. Accordingly, this Interrogatory remains premature, overly broad, unduly burdensome, and not proportional to the needs of the case because it calls for information that is not relevant to the "Trade Secrets at Issue." Nevro further objects to BSC's use of the term "Trade Secret at Issue" to the extent it includes any alleged trade secrets not identified in BSC's Second Amended Complaint (D.I. 48) and therefore do not form the basis for BSC's trade secret misappropriation claim.

This Interrogatory is also overly broad and unduly burdensome because it is not temporally limited in scope. In its Second Amended Complaint, BSC refers to the "relevant time period" for its trade secret claim as the time period during which Nevro was first "developing its own SCS system." D.I. 48, ¶¶ 197, 202 (alleging that BSC's information would have been "of value" to Nevro because "Nevro had never developed an SCS product before"). Accordingly, Nevro's response to this Interrogatory is limited to Former BSC Employees who joined Nevro during the "relevant time period"—before May 2010 when Nevro received CE mark for the first Senza system.

Subject to the foregoing general and specific objections, Nevro responds as follows:

| Name | Start Date at Nevro | Title(s) Held / Job Responsibilities at Nevro | Last Known Address |
|------|---------------------|-----------------------------------------------|--------------------|
| David Marco | February 2009 | Senior Field Clinical Engineer, Principal Field Clinical Engineer | Mr. Marco is currently a Nevro employee and should only be contacted through Nevro's counsel |

| Name | Start Date at Nevro | Title(s) Held / Job Responsibilities at Nevro | Last Known Address |
|---|---|---|---|
| Jim Makous | September 2007 | Director, Preclinical Research | San Diego, CA |
| Jim Thacker | January 2009 | Director of Clinical Engineering, Senior Director of Clinical Engineering | Homer, Alaska |
| Kerry Bradley | August 2013 | Senior Director of Clinical Science & Research | Mr. Bradley is currently a Nevro employee and should only be contacted through Nevro's counsel |
| Wesley Park | February 2009 | Director of Product Marketing, Head of Global Clinical Research Programs | Mr. Park should only be contacted through Nevro's counsel |

In addition, pursuant to Fed. R. Civ. P. 33(d), Nevro refers BSC to the following documents from which information responsive to this Interrogatory can be ascertained: NEVRO_DE0317376; NEVRO_BSXCA0427426; NEVRO_BSXCA0378813.

Nevro's investigation is ongoing, and Nevro reserves the right to supplement or modify its response to this Interrogatory in part or in its entirety as Nevro's investigation continues and new information becomes available, including BSC's particularized identification of the "Trade Secrets at Issue."

**INTERRROGATORY NO. 4:**

Describe in detail the actions taken by and on behalf of Nevro to identify all BSC documents, email and other electronic files, including actions taken by Nevro to locate documents, email and other electronic files in the possession, custody and control of any Former BSC Employee, that are or were at any time located, stored and/or maintained within any Nevro cabinet, computer, archive, device, cloud back-up, server or other electronic medium. A complete response to this interrogatory will include the date(s) on which Nevro's actions commenced and were completed; the steps taken by Nevro to identify the requested materials; the bates number for each piece of material found; the name of each repository searched; an identification of the prior and current locations (physical location and electronic pathway

information, if applicable); and, the names of all individuals who had physical and/or electronic access to the materials located.

## RESPONSE TO INTERROGATORY NO. 4:

Nevro objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it requests identification of "all BSC documents, email and other electronic files," including those not relevant to any party's claim or defense and/or the patents or systems at issue in this litigation. Nevro objects to this Interrogatory because it contains multiple discrete parts. Nevro objects to BSC's definition of "Former BSC Employee" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes individuals or subject matter not relevant to any party's claim or defense and/or does not relate to the patents or systems at issue in this litigation. Nevro objects to this Interrogatory to the extent it seeks information not in Nevro's possession, custody, or control. Nevro further objects to this Interrogatory to the extent it seeks information subject to the attorney-client privilege, work product doctrine, and/or other applicable privilege. Nevro further objects to this Interrogatory to the extent it assumes facts not in evidence.

Nevro objects to this Interrogatory to the extent it seeks information related to BSC's trade secret misappropriation claim because its claim raises legal issues, which are subject to be decided pursuant to a valid arbitration agreement between BSC and Mr. Thacker. Nevro further objects to this Interrogatory as premature to the extent it seeks information related to BSC's trade secret misappropriation claim because BSC has not yet complied with California Code of Civil Procedure section 2019.210, which is required prior to the commencement of discovery on BSC's claim for trade secret misappropriation.

Subject to the foregoing general and specific objections, Nevro is willing to meet and confer with respect to the relevance, scope, and proportionality of this Interrogatory if the

Court decides that BSC's trade secret misappropriation claim should proceed in this case and once BSC has complied with California Code of Civil Procedure section 2019.210, by identifying the particular trade secret at issue.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4

Nevro reiterates its objections contained in its original response. The scope of discovery relevant to this Interrogatory depends on the "Trade Secrets at Issue," which BSC has not yet identified with sufficient specificity. Accordingly, this Interrogatory remains premature, overly broad, unduly burdensome, and not proportional to the needs of the case because it calls for information that is not relevant to the "Trade Secrets at Issue." Nevro further objects to BSC's use of the term "Trade Secret at Issue" to the extent it includes any alleged trade secrets not identified in BSC's Second Amended Complaint (D.I. 48) and therefore do not form the basis for BSC's trade secret misappropriation claim.

Subject to the foregoing general and specific objections, Nevro responds as follows:

Upon joining Nevro, all employees are required to sign a Proprietary Information and Inventions Agreement pledging not to improperly use or disclose confidential information belonging to the employee's former employers and not to bring any such information to Nevro. Nevro also requires new employees to review and comply with Nevro's policies, including Nevro's Code of Conduct and Ethics. Nevro's Code of Conduct and Ethics requires employees to comply with the "Duty of Confidentiality." The Code of Conduct and Ethics states in part:

[black redaction bars]

Nevro requires its employees to immediately report a violation or possible violation of the Code of Conduct and Ethics to her manager, a Human Resources representative, the Compliance Committee, or the Chief Compliance Officer. Nevro also maintains a Compliance/Ethics hotline for receiving reports of suspected violations. To further encourage reporting, Nevro employees may remain anonymous and Nevro employees who make a good faith report of a suspected violation are protected from retaliation. Every report of a suspected violation is promptly and thoroughly investigated. Disciplinary action may be taken against Nevro employees for violations of the Code of Ethics and Conduct. Disciplinary action may also be taken against supervisors, officers, and members of the Board of Directors who condone, permit, or fail to address illegal, unethical, or other improper conduct.

In August 2017, Nevro's outside litigation counsel discovered and voluntarily informed BSC that it had learned that Mr. Jim Thacker had kept documents from the time of his employment at BSC on backup hard drives in his personal possession at his home. Nevro did not take possession of those documents. Nevro instructed Mr. Thacker to retain separate counsel to represent him regarding the documents, and Mr. Thacker's counsel engaged a vendor to

sequester the documents and forensically image them. Nevro voluntarily cooperated in investigating whether any of BSC's confidential documents were distributed to other Nevro personnel, including by: (i) providing a list of projects on which Mr. Thacker worked during his first two years at Nevro; (ii) producing documents related to Mr. Thacker's work on those project; (iii) producing documents related to Mr. Thacker's onboarding at Nevro; (iv) conducting a search to determine whether BSC confidential documents had been distributed to Nevro personnel; and (v) forensically determining whether Mr. Thacker's thumb drive containing BSC documents was ever inserted into Nevro laptops.

After Mr. Thacker provided a list of the documents in his possession to BSC, BSC provided Nevro a list of filenames it chose to prioritize. Using that list, Nevro searched the image of Mr. Thacker's company laptop, his emails dating back to the start of his employment at Nevro, and his personal folder on Nevro's shared network drive, to determine whether Nevro ever had access to any of Mr. Thacker's documents. Nevro also employed a forensic software tool to search Nevro's entire shared network drive. None of BSC's priority file names were present on Nevro's systems, and there was no evidence that any confidential BSC information from any of those files was distributed to anyone at Nevro. BSC then demanded that Nevro conduct another search for over 6,700 additional file names, many of which were facially public or Mr. Thacker's personal documents (*e.g.,* documents that relate to Mr. Thacker's and his wife's personal finances and business ventures unrelated to BSC). Nevro conducted that search and provided BSC with the results by November 2017.

Nevro proposed to BSC that the parties agree to a protocol to "voluntarily disclose to each other when they learn that an employee has come into possession of the other

parties' confidential information, and to a set of procedures . . . to be followed should that occur." BSC never agreed to Nevro's proposed mutual voluntary disclosure.

In December 2013, BSC filed another baseless lawsuit against current Nevro employee and former BSC employee, Dongchul Lee, alleging that Dr. Lee had breached his confidentiality agreement with BSC and Massachusetts trade secret law. Even though Nevro was not a party to this lawsuit, Nevro voluntarily cooperated by promptly instructing Dr. Lee to cease using the Nevro laptop in his possession at the time, segregating that laptop, and turning it over to e-Stet, an independent forensic vendor. Nevro also gave Dr. Lee permission to have e-Stet create and produce a file listing report, a web browser report, and USB report for that initial laptop. Despite taking extensive discovery in that case, BSC was unable to identify a single document showing that Dr. Lee disclosed or used any of BSC's proprietary information during his employment at Nevro. BSC then sought production of a full forensic image of Dr. Lee's initial Nevro laptop, which contained privileged attorney-client communications and highly confidential information and trade secrets belonging to Nevro. As a compromise, Nevro suggested having an independent vendor conduct a review of the forensic image of the laptop, including a search for any deleted files, but BSC rejected that proposal and instead subpoenaed Nevro demanding a complete forensic image of Dr. Lee's initial laptop and a second laptop that was assigned to Dr. Lee to replace the initial laptop, which also contained privileged attorney-client communications and highly confidential information and trade secrets belonging to Nevro. The Northern District of California Court quashed BSC's subpoena in its entirety, finding BSC's demands "overbroad and imposing an undue burden on Nevro." *Boston Scientific Corp. v. Dongchul Lee*, No. 5:14-mc-80188-BLF-PSG, D.I. 24 (N .D. Cal. Aug. 4, 2014).

Pursuant to Fed. R. Civ. P. 33(d), Nevro further incorporates by reference the following information responsive to this Interrogatory: NEVRO_BSXCA0379913; NEVRO_BSXCA0378754; NEVRO_BSXCA0378748; NEVRO_BSX0378742; NEVRO_BSXCA0427426 at 427444-427449; NEVRO_BSXCA0381530; October 30, 2017 correspondence from Nevro's counsel, Kenneth A. Kuwayti, to BSC's counsel, Amy DeWitt; November 2, 2017 correspondence from Nevro's counsel, Dan Hubin, to BSC's counsel, Krista Carter; and NEVRO_BSXCA0226183-0368916.

Nevro's investigation is ongoing, and Nevro reserves the right to supplement or modify its response to this Interrogatory in part or in its entirety as Nevro's investigation continues and new information becomes available, including BSC's particularized identification of the "Trade Secrets at Issue."

**INTERRROGATORY NO. 8:**

Describe in detail the stage of R&D, design, documentation, clinical work, marketing and/or sales of the Senza Systems at the time Nevro or anyone on behalf of Nevro was in first contact with any Former BSC Employee, including but not limited to James Thacker, David Marco, Wesley Park or Kerry Bradley.

**RESPONSE TO INTERROGATORY NO. 8:**

Nevro objects to this Interrogatory because it contains multiple discrete parts. Nevro objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information not relevant to any party's claim or defense. Nevro objects to BSC's definition of "Former BSC Employee" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes individuals or subject matter not relevant to any party's claim or defense and/or does not relate to the patents or systems at issue in this litigation. Nevro objects to this Interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, work product doctrine,

and/or other applicable privilege. Nevro further objects to BSC's use of the phrase "stage of R&D, design, documentation, clinical work, marketing and/or sales of the Senza Systems" as vague and ambiguous. Nevro further objects to this Interrogatory to the extent the burden or expense of the requested information outweighs its likely benefit.

Nevro objects to this Interrogatory to the extent it seeks information related to BSC's trade secret misappropriation claim because its claim raises legal issues, which are subject to be decided pursuant to a valid arbitration agreement between BSC and Mr. Thacker. Nevro further objects to this Interrogatory as premature to the extent it seeks information related to BSC's trade secret misappropriation claim because BSC has not yet complied with California Code of Civil Procedure section 2019.210, which is required.

Subject to the foregoing general and specific objections, Nevro is willing to meet and confer with respect to the relevance, scope, and proportionality of this Interrogatory if the Court decides that BSC's trade secret misappropriation claim should proceed in this case and once BSC has complied with California Code of Civil Procedure section 2019.210, by identifying the particular trade secret at issue.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8

Nevro reiterates its objections contained in its original response. The scope of discovery relevant to this Interrogatory depends on the "Trade Secrets at Issue," which BSC has not yet identified with sufficient specificity. Accordingly, this Interrogatory remains premature, overly broad, unduly burdensome, and not proportional to the needs of the case because it calls for information that is not relevant to the "Trade Secrets at Issue." Nevro further objects to BSC's use of the term "Trade Secret at Issue" to the extent it includes any alleged trade secrets

not identified in BSC's Second Amended Complaint (D.I. 48) and therefore do not form the basis for BSC's trade secret misappropriation claim.

Nevro was founded in 2006 and quickly began research that played a role in the development of its first Senza® system. In 2009, Nevro completed its U.S. feasibility clinical trial, a one week evaluation of the Senza spinal cord stimulation system in patients with predominant back pain in the United States. This clinical trial was comprised of 24 patients at 11 clinical trial sites across the United States. The results of this clinical trial were published in the peer-reviewed journal *Neuromodulation*.

Nevro's Senza SCS system for HF10 received CE mark in Europe in 2010 and was first offered for sale and sold in late 2010 and early 2011. In 2011, Nevro began its European long-term clinical trial, a two-year evaluation of the Senza spinal cord stimulation system primarily in patients with predominant back pain in Europe. This clinical trial was comprised of 83 patients at 2 clinical trial sites in Europe. The results of this clinical trial were published in the peer-reviewed journal *Pain Medicine*. The study completed in 2013. Nevro's Senza SCS system for HF10 also received TGA approval in 2011.

In 2012, Nevro began its United States pivotal clinical trial (SENZA-RCT), a one-year evaluation of the Senza spinal cord stimulation system in patients with back and leg pain in the United States. This clinical trial was comprised of 241 patients at 11 clinical trial sites across the United States. The results of this clinical trial were published in the peer-reviewed journal *Neurosurgery*. The study completed in 2014. Key highlights of Nevro's SENZA-RCT pivotal study include:

- The SENZA-RCT study results demonstrated the non-inferiority of HF10 therapy to traditional SCS therapy on all primary and secondary endpoints. Additionally,

Nevro's post-hoc statistical analysis supports the superiority of HF10 therapy over traditional SCS therapy in all primary and secondary endpoints.

- HF10 therapy was nearly twice as successful in treating back pain as traditional SCS therapy, with 84.3% of patients receiving HF10 therapy, as compared to 43.8% of patients receiving traditional SCS therapy, reporting 50% or more pain relief at three months, results that were statistically superior based on post-hoc analysis.

- HF10 therapy was 1.5 times as successful in treating leg pain as traditional SCS therapy, with 83.1% of patients receiving HF10 therapy, as compared to 55.5% of patients receiving traditional SCS therapy, reporting 50% or more pain relief at three months, results that were statistically superior based on post-hoc analysis.

- HF10 therapy provided a 69.2% reduction in back pain as measured by the Visual Analog Scale, or VAS, versus 44.2% for traditional SCS therapy, at three months, results that were statistically superior based on post-hoc analysis.

- HF10 therapy provided a 72.8% reduction in leg pain as measured by VAS, versus 51.5% for traditional SCS therapy, at three months, results that were statistically superior based on post-hoc analysis.

- Post-hoc statistical analysis supports superior efficacy of HF10 therapy for both back and leg pain at each measurement throughout the 12-month study.

- Patients receiving HF10 therapy did not report paresthesia or uncomfortable stimulation at three months. In comparison, 46.5% of patients receiving traditional SCS therapy reported uncomfortable stimulation at three months.

- Based on post-hoc analysis, two-thirds of HF10 therapy patients had a VAS pain score of less than or equal to 2.5 on a scale of 0 to 10 for back pain at three months (which we define as achieving remitter status), twice the number of traditional SCS therapy patients, results that were statistically superior.

- Based on post-hoc analysis, three-fourths of HF10 therapy patients had a VAS pain score of less than or equal to 2.5 on a scale of 0 to 10 for leg pain at three months, twice the number of traditional SCS therapy patients, results that were statistically superior.

- Safety outcomes were consistent across the control and test groups.

The outcomes in the SENZA-RCT clinical trial were consistent with the outcomes from Nevro's European clinical trial.

In June 2014, Nevro submitted its premarket approval application (PMA) to the U.S. Food and Drug Administration for the Senza spinal cord stimulation system.

In May 2015, the FDA approved Nevro's PMA to market the Senza spinal cord stimulation system, and Nevro commercially launched the Senza in the United States.

Nevro's investigation is ongoing, and Nevro reserves the right to supplement or modify its response to this Interrogatory in part or in its entirety as Nevro's investigation continues and new information becomes available, including BSC's particularized identification of the "Trade Secrets at Issue."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant and Counterclaimant
Nevro Corp.*

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7000

May 21, 2020

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused copies of the foregoing document to be served on

May 21, 2020, upon the following in the manner indicated:

Karen L. Pascale, Esquire                                          *VIA ELECTRONIC MAIL*
Pilar G. Kraman, Esquire
YOUNG CONAWAY STARGATT &TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Edmond Ahadome, Esquire                                       *VIA ELECTRONIC MAIL*
Thomas T. Carmack, Esquire
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306
*Attorneys for Plaintiffs*

Edward Han, Esquire                                               *VIA ELECTRONIC MAIL*
Matthew M. Wolf, Esquire
Marc A. Cohn, Esquire
Amy DeWitt, Esquire
William Z. Louden, Esquire
William Young, Esquire
Chris Moulder, Esquire
Bridgette C. Boyd, Esquire
Michael E. Kientzle, Esquire
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC  20001
*Attorneys for Plaintiffs*

Dina M. Hayes, Esquire                                           *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL  60602
*Attorneys for Plaintiffs*

Michael P. Kahn, Esquire                                   *VIA ELECTRONIC MAIL*
Michael N. Petegorsky, Esquire
Brooks J. Kenyon, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, Bank of America Tower
New York, NY  10036
*Attorneys for Plaintiffs*

C. Brandon Rash, Esquire                                   *VIA ELECTRONIC MAIL*
Rachel J. Elsby, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006
*Attorneys for Plaintiffs*

Jason Weil, Esquire                                        *VIA ELECTRONIC MAIL*
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103
*Attorneys for Plaintiffs*

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on June 16, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF (which will send notification that such filing is available for viewing and downloading to all registered counsel), and in addition caused true and correct copies of the foregoing document to be served upon the following counsel of record by electronic mail:

| | |
|---|---|
| ***Attorneys for Defendant Nevro Corp.:*** | |
| Rodger D. Smith II | *rsmith@mnat.com* |
| Michael J. Flynn | *mflynn@mnat.com* |
| Lucinda C. Cucuzzella | *ccucuzzella@mnat.com* |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | |
| 1201 North Market Street | |
| P.O. Box 1347 | |
| Wilmington, DE 19899-1347 | |
| | |
| SIDLEY AUSTIN LLP | SidleyNevroIITeam@sidley.com |
| | |
| Bradford J. Badke | *jbadke@sidley.com* |
| Ching-Lee Fukuda | *clfukuda@sidley.com* |
| Ketan V. Patel | *ketan.patel@sidley.com* |
| Sharon Lee | *sharon.lee@sidley.com* |
| 787 Seventh Avenue | |
| New York, NY 10019 | |
| | |
| Thomas A. Broughan III | *tbroughan@sidley.com* |
| 1501 K Street, N.W. | |
| Washington, DC 20005 | |
| | |
| Nathan A. Greenblatt | *ngreenblatt@sidley.com* |
| 1001 Page Mill Road Building 1 | |
| Palo Alto, CA 94304 | |
| | |
| MORRISON & FOERSTER LLP | |
| | |
| Michael A. Jacobs | *MJacobs@mofo.com* |
| 425 Market Street | |
| San Francisco, California 94105-2482 | |
| | |
| Kenneth A. Kuwayti | *KKuwayti@mofo.com* |
| 755 Page Mill Road | |
| Palo Alto, CA 94304-1018 | |

June 16, 2020

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
Pilar G. Kraman (#5199) *[pkraman@ycst.com]*
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600

*Attorneys for Plaintiffs,*
*Boston Scientific Corporation*
*and Boston Scientific Neuromodulation Corp.*