```
1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                                - - -

4    BOSTON SCIENTIFIC CORP., and BOSTON
     SCIENTIFIC NEUROMODULATION CORP.,      :    CIVIL ACTION NO.
5                                           :
                      Plaintiffs,           :
6    v                                      :
                                            :
7    NEVRO CORP.,                           :
                                            :     18-644-CJB-CFC
8              Defendant.                   - - -

9
                             Wilmington, Delaware
10                           Monday, June 22, 2020
                             Telephone Conference
11                               - - -

12
     BEFORE:    HONORABLE CHRISTOPHER J. BURKE, Magistrate Judge
13
     APPEARANCES:                   - - -
14

15             YOUNG CONAWAY STARGATT & TAYLOR LLP
               BY:  KAREN L. PASCALE, ESQ.
16
                     and
17
               ARNOLD & PORTER KAYE SCHOLER LLP
18             BY:  MATTHEW M. WOLF, ESQ., and
                    MARC A. COHN, ESQ.
19
                     and
20
               ARNOLD & PORTER KAYE SCHOLER LLP
21             BY:  DINA M. HAYES, ESQ.
                    (Chicago, Illinois)
22
                             Counsel for Plaintiffs, Boston
23                           Scientific Corporation and Boston
                             Scientific Neuromodulation Corp.
24

25                                Brian P. Gaffigan
                                  Registered Merit Reporter
```

1    APPEARANCES:   (Continued)

2

3                   MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                    BY:  RODGER D. SMITH, II, ESQ.

4                        and

5                   SIDLEY AUSTIN LLP
                    BY:  BRADFORD J. BADKE, ESQ.
6                        CHING-LEE FUKUDA, ESQ.
                         SHARON LEE, ESQ.
7                        New York, New York

8                        and

9                   SIDLEY AUSTIN LLP
                    BY:  NATHAN A. GREENBLATT, ESQ.
10                       (Palo Alto, California)

11                          Counsel for Defendant Nevro Corp.

12

13

14

15

16

17

18

19

20

21

22                          - oOo -

23                      P R O C E E D I N G S

24                  (REPORTER'S NOTE:  The following telephone

25    conference was held remotely, beginning at 1:01 p.m.)

```
 1              THE COURT:  Let's go on the record.

 2              First, I'll say that we're here on the record in

 3    the matter of Boston Scientific Corporation, et al versus

 4    Nevro Corporation.   This is Civil Action No. 18-644-CFC-CJB

 5    here in our court.

 6              We're here this afternoon on the record for a

 7    teleconference to address two sets of discovery disputes:

 8    one brought by the plaintiffs and one brought by the

 9    defendant, both relating to trade secret discovery.

10              Because we're on the record, we have, as I

11    noted, we have a court reporter with us.   I'll just ask that

12    counsel would try to remember to identify themselves before

13    they speak to help our court reporter get a good and

14    accurate record of our call today.

15              And from there, let's have counsel for each side

16    put their appearances on the record.   We'll start first with

17    counsel for the plaintiffs' side; and we'll begin there with

18    Delaware counsel.

19              MS. PASCALE:  Thank you, Your Honor.   This is

20    Karen Pascale for the plaintiffs, the Boston Scientific

21    entities.   And before I do introductions, Mr. Smith and

22    I wanted to note that Judge Connolly has scheduled a

23    telephonic oral argument in this matter on certain pending

24    motions at 2:00 p.m. today; and we suspected that that was

25    congruent with the time Your Honor had allotted for this
```

 1    teleconference, but we wanted to bring that to your

 2    attention in any event.

 3              THE COURT:  Thank you.  I actually just saw

 4    that in the last hour before this call, but I'm glad you

 5    raised it.  I'll make sure to have you out of here before

 6    2:00 so that you are not late for your call with Judge

 7    Connolly.

 8              MS. PASCALE:  Very good, Your Honor.

 9              I'm joined on the call today for plaintiffs from

10    the Arnold & Porter firm, Matthew Wolf, Dina Hayes --

11              MR. WOLF:  Good afternoon, Your Honor.

12              THE COURT:  Good afternoon.

13              MS. PASCALE:  -- and Marc Kohn.

14              THE COURT:  All right.  Good afternoon to you

15    all.

16              We'll do the same for counsel for the

17    defendant's side.  Again, we'll begin with Delaware

18    counsel.

19              MR. SMITH:  Good afternoon, Your Honor.  Rodger

20    Smith at Morris Nichols.  I'm joined by my co-counsel from

21    Sidley Austin, Jim Badke, Ching-Lee Fukuda, Sharon Lee,

22    and Nate Greenblatt; as well, Your Honor, we have Peter

23    Socarras who is in-house counsel for Nevro.  He is also on

24    the line.

25              THE COURT:  Okay.  Mr. Smith, could you just one

1    more time list off your outside counsel colleagues?  I want

2    to make sure I get the full name.

3                    MR. SMITH:  Yes, Your Honor.  I apologize.

4                    Jim Badke, Ching-Lee Fukuda, Sharon Lee, and

5    last is Nate Greenblatt.

6                    THE COURT:  Okay.  Great.  Thank you.  Good

7    afternoon to you all as well.

8                    All right.  We'll try to move quickly to make

9    sure that the parties are ready to meet with Judge Connolly

10   by phone at 2:00.

11                   Let's turn first to plaintiffs' motion, and

12   we'll talk about that first.

13                   And who is going to speak on behalf of the

14   plaintiffs' side as to this motion?

15                   A RECORDED VOICE:  Joining the meeting.

16                   MS. PASCALE:  It will be Dina Hayes, Your Honor.

17                   THE COURT:  Okay.  Ms. Hayes, I'll start with

18   you then.  I guess there are a couple of -- with regard to

19   the interrogatories and RFPs, there are a couple of specific

20   kinds of disputes that came up in the joint letters; for

21   example, that's Interrogatories No. 1 and No. 4 and No. 8,

22   and then at least as two exemplary RFPs No. 1, 2, and 8.

23                   I know more generally there are also disputes

24   lingering out there, so maybe it is best to start at least

25   with what I note being argued about as to those particular

1    interrogatories there.

2              And I guess maybe starting first with

3    Interrogatory No. 8, which is the first one you mentioned, I

4    think the thing I wrote down is kind of what the other side

5    said, which is, in my notes I wrote down next to your first

6    paragraph, "I'm not so sure how the interrogatory acts for

7    this."  That is, you complained that they failed to describe

8    the design development work of four people.

9              I don't see the interrogatory actually ask

10   asking them to do that.  Am I wrong?

11             MS. HAYES:  Well, Interrogatory No. 8, Your

12   Honor -- and this is in the case.  Interrogatory No. 8 asks

13   for the timeline in the narrative that defendants provide,

14   and they leave a very large chunk from 2006 to 2009 with

15   respect to developmental work.  And that is a very integral

16   key time frame.  They just jump right over it.

17             And so it's with that missing information that

18   we can apply whether or not it was the former Boston

19   Scientific employees who have been recruited in our minds

20   by Nevro to get their company up and running, what was

21   going on at that time developmentally, and how the Boston

22   Scientific former employees then went over to Nevro with

23   what we believe the information and documents which were

24   used by Nevro.

25             So while it's our position that if you take the

1   Interrogatory No. 8, it asks for a detailed itemization of

2   the development of the work, they leave that big chunk of

3   time out.  And so we can't even apply what we know from

4   our own records to match it up with the alleged

5   misappropriation.

6           THE COURT:  So the complaint here isn't less

7   that -- they haven't specifically identified the work

8   undertaken by the particular employees and more that you

9   think that they have left out a particular chunk of time

10  in which the systems at issue were being either designed

11  or marketed, et cetera?

12          And if that is right, then what is the chunk of

13  time that you are now complaining about?

14          MS. HAYES:  2006 through 2009.

15          So the Interrogatory No. 8 does request for

16  them to describe in detail, you know, at the time that Nevro

17  had first contact with any former BSC employee, including

18  the four listed in No. 8.

19          So, you know, I understand we're looking at

20  No. 8, but if you started with Interrogatory No. 1, it asks

21  them to identify all of the former employees that then ended

22  up at Nevro, and they put in a temporal restriction, and so

23  we built on that.

24          And Interrogatory No. 8 says now that we have

25  the identified former employees that Nevro recruited, now we

1    want to know the timeline of their development work so we

2    can do the heavy lifting and connect the dots.  And the

3    problem is that they -- it's our position that they reviewed

4    answer -- the complete interrogatory for No. 1 which then

5    No. 8 builds off of.

6              So No. 8 asks for the developmental work and

7    the time.  They missed that chunk of 2006 to 2009.  And then

8    by failing to identify, you know, all of the employees that

9    went over to Nevro, that the interrogatory response is

10   incomplete.

11             THE COURT:  Okay.  And then that kind of leads

12   to the next chunk of what I understand to be the dispute

13   here about some of these specifically identified requests,

14   which is as to Interrogatory No. 1, and I think also Request

15   No. 1 and No. 2; and, again, these may be simply specific

16   requests that are supposed to be indicative of this problem

17   more broadly.

18             I think the assertion is, on your part, they're

19   improperly limiting the answers to the question to just

20   former BSC employees enjoined before May 2010.  My sense

21   was from your letter that you were suggesting that's wrong

22   to do that.  That, in fact, they should be answering

23   Interrogatory No. 1, and they should be providing documents

24   at least as to the first two RFPs or some more significant

25   time frame, broader time frame.

1              What is the right time frame, and how does that

2    right time frame relate to the allegations in the operative

3    complaint?

4              MS. HAYES:  Yes, Your Honor.  So I can start

5    later in time.

6              At the meet and confer the parties had before

7    bringing this issue to the Court, we had said that up until

8    the filing of the lawsuit would be a suitable end time for

9    the end of time in which they would have to no longer

10   provide information with respect to Interrogatory 1, or all

11   of the outstanding interrogatories.

12             So just as far as where you're to bookend the

13   time frame, that is where we would say it would be

14   accessible.  And ...

15             THE COURT:  And, again, relatedly then just to

16   try and link that time frame.  So all the way up through

17   some point in 2018 with the gist of the trade secret

18   misappropriation allegations, just tell me in your view why

19   it makes sense in light of what you've alleged that we would

20   be looking at, would be focusing on say, for example, former

21   BSC employees who went to Nevro all the way up through 2018

22   in light of the content on the complaint.

23             MS. HAYES:  Yes, Judge.

24             And so the trade secret misappropriation

25   claim is Count 9 in the second amended complaint.  And the

1    paragraphs which all compile Boston Scientific trade secret

2    claims include Paragraphs 1, 3, 13, 14, Paragraph 32, the

3    allegations beginning in 182, 189, 191, 192, 194 through

4    201.  Those are all comprehensive allegations with respect

5    to trade secrets and the trade secret misappropriation which

6    we already -- in Boston Scientific's mind, already teach.

7    We provided that as Exhibit B to our discovery letter to the

8    Court.  But there, we have provided two examples of specific

9    trade secret misappropriation of which we believe had

10   already happened.

11          But the allegation in those other paragraphs of

12   the second amended complaint provides sufficient details to

13   say that there were 48 current Nevro employees that were

14   recruited from Boston Scientific.  We have already seen

15   documents of Boston Scientific and Advanced Bionics that

16   were taken and used by Nevro.

17          And we provided comprehensive discovery in

18   February; 57 requests for production and 8 interrogatories.

19   We provided that those discovery requests that are founded

20   in the trade secret misappropriation claim to understand

21   the motive, the context, all of the information that is in

22   Nevro's possession which we -- like, which we've already

23   seen some of, but we're entitled to understand how extensive

24   it's used within Nevro, were there were other documents that

25   were derived from the information, and the evidence that we

1    have already seen of the misappropriation.

2              So the discovery requests propounded by Boston

3    Scientific all relate back to the trade secret claim, but

4    this illustrative example from the trade secret second

5    amended complaint are just examples, but there are other

6    allegations surrounding those two descriptions which go to

7    the extent of Nevro's trade secret misappropriation.

8              And another point I wanted to make was with

9    respect to their objection to the time frame, we met and

10   conferred before the Court's May 7th oral order, and we met

11   and conferred and I tried to talk to Nevro's counsel and

12   say, "I understand you have an objection with respect to the

13   specificity in the arbitration, but let's go through these

14   other objections that Nevro has so we can understand if that

15   is going to be a problem and stumbling block in producing

16   discovery."  And they refused to meet and confer

17   substantively on those objections.

18             And so under the federal rules, their time to

19   raise those objections with respect to temporal scope we

20   believe have come and gone.  In our Footnote 3 of our first

21   motion to compel, we specifically asked the Court that they

22   can maintain their objections with respect to attorney-client

23   privilege and work product, but all of their other objections

24   with respect to the interrogatories that they have refused to

25   meet and confer on should be overruled.

```
 1              And then the May 7th oral order came out
 2     ordering discovery.  So that is the time position with
 3     respect to these kind of last-minute rolling objections.
 4              THE COURT:  And, obviously both in this dispute
 5     and in the other dispute that the defendants raise, there
 6     is -- you know, part of it is about breadth of allegations.
 7     And I think in part what they're saying is, look, the
 8     complaint is kind of premised on one or two persons, like
 9     Mr. Thacker, for example, who left Boston Scientific in
10     '06.
11              What year did Mr. Thacker -- he left in '06,
12     and I think they're suggesting what the complaint -- what
13     the discovery allegations seemed to suggest are that what
14     Boston Scientific is asking for is, okay, we have
15     articulated as to how a particular product and a couple of
16     particular people, we think there was this theft of trade
17     secrets and trade secrets provided to Nevro.  Now we want to
18     seek discovery, basically, on every year thereafter on any
19     possible trade secret theft or violation that might possibly
20     have been committed by Nevro.
21              And I think you're pushing back on that and
22     saying, no, no, we're asking for discovery that is focused
23     on what we're alleging here on the scope of our claim.
24              If you were going to articulate why it is that
25     what you are not doing is just broadly saying, hey, Nevro,
```

1    any information you might possibly have on any Nevro/BSC

2    interaction on any product as to any person, but instead

3    we're kind of, we're focused on a particular kind of claim

4    with particular kind of bookends, how would you articulate

5    what that claim is and where it ends?

6            MS. HAYES:  Well, Your Honor, importantly, Nevro

7    has not said we've begun looking for the information you are

8    requesting of Boston Scientific, and it is too broad.  We

9    don't know where to look.  It is too burdensome.  We can't

10   collect the information.

11           They haven't even begun the collection -- at

12   least as from where Boston Scientific is standing -- of

13   responsive information, and so they're refusing to even

14   look.  Suppose they go to look for the document request as

15   written to see, for example, in the document, I recall in

16   our briefing paper, "Tell me, Nevro, do you have in your

17   custody, control, or possession Boston Scientific's customer

18   list, any customer list?"

19           They have said, as a circle, "Well, that is not

20   related to any allegation in the trade secret complaint, in

21   the second amended complaint."

22           What they haven't said is, "We've looked for it

23   and we don't have it."  And so --

24           THE COURT:  I think it's related to -- I'm

25   sorry.  I just wanted to say I think this is related to the

1    dispute, for example, for Request No. 8 which asks for them

2    to provide you with BSC customer lists.  And in their letter

3    and response I think they say, "Well, how's customer lists

4    relevant to what you are alleging in this count?"

5              How is it relevant?  How does BSC customer lists

6    have relevance to the trade secret misappropriation claim

7    that is in Count 9?

8              MS. HAYES:  Because of Boston Scientific's point

9    of view, Nevro intentionally recruited Boston Scientific

10   employees, up to 48 of them, and documents -- confidential,

11   proprietary documents of Boston Scientific on this exact

12   technology, on the products that they were looking to get up

13   and running, on the business that they were trying to start

14   after Boston Scientific had been in the field, that they

15   intentionally and directly recruited 48 Boston Scientific

16   employees, and they took documents and Nevro received

17   documents.

18             And Nevro employees transferred -- communicated

19   about those documents, acknowledging that they were

20   confidential, acknowledging that you should cut and paste

21   the protocol for our product.

22             So we already have -- Boston Scientific has

23   already seen through Mr. Thacker one example of the

24   misappropriation, the documents.  And that is what led

25   to the trade secret misappropriation claim.

1           We believe, based on the discovery that we're

2   entitled to, that we should be able to probe into the trade

3   secret misappropriation facts surrounding Mr. Thacker and

4   surrounding Nevro's motivation to specifically hire these

5   former employees, and to use that information.

6           So it is all tied together.  We don't think we

7   should amend the complaint with a new instance of

8   misappropriation or a new instance of a trade secret that we

9   find out that Nevro used in a way which we're not aware of

10  right now.

11          But we survived the motion to dismiss on the

12  motion -- on the trade secret misappropriation claim,

13  propounded discovery under Rule 26.  It provided specific

14  disclosures of Boston Scientific trade secrets.

15          We've already moved to compel, which was

16  granted, and we're still not getting the full discovery

17  response.

18          THE COURT:  So it sounds like -- tell me if I'm

19  wrong on this question.  It sounds like what you're saying is,

20  look, we think the nature of the trade secret claim we've

21  articulated is one where we think Nevro is intentionally

22  luring BSC employees in a particular -- at least in a

23  particular space during the trade secrets as it relates to a

24  particular system.

25          And so kind of like concomitant with that is the

1    allegation that they're probably doing that in order to

2    ultimately obtain BSC's business.  And so a customer list

3    would be relevant to that allegation because it is kind of

4    part and parcel of the nature of the trade secret

5    misappropriation scheme.

6              Is that the gist of what you are saying?

7              MS. HAYES:  Yes.  And the documents and the

8    trade secrets that we have identified already indicate

9    that, about the sales representative region that are from

10   Boston Scientific that are copied and then used by Nevro

11   from the documents that we have already seen.

12             So there's so many fingerprints that indicate

13   the trade secret misappropriation, and the discovery

14   requests are narrowly focused.  The discovery requests

15   seek documents regarding Nevro's strategy to recruit the

16   BSC former employees to work on these parts and products.

17             If there is no recruitment strategy, then state

18   that.  Look for the documents, do a collection, and do a

19   search, and if nothing exists, then they can supplement

20   their discovery response with, "We have done a collection

21   and nothing" -- or "We have done a search and nothing has

22   shown up."

23             But to say that they're not even going to look

24   for it because they don't believe it is relevant, four

25   months, five months after the discovery requests were served

1    when the time to meet and confer has come and gone, we

2    frankly think is inappropriate.

3              THE COURT:  Okay.  And just two more specific

4    questions here; one narrow and one broader.

5              The narrower one is on the dispute that it

6    looks like we're having about Interrogatory No. 4, the

7    problem I think you've said in your letter, the thing that

8    they didn't do is they didn't do an additional search for

9    documents.

10             And I think the question about Interrogatory 4

11   would be, where does Interrogatory 4 ask them to search

12   for documents?  It seems to only ask them to describe the

13   searching or identification that they had already done.

14             So how does the relief you are seeking in your

15   letter about Interrogatory No. 4 match the nature of the

16   question asked in the interrogatory?

17             MS. HAYES:  Well, Interrogatory No. 4 is

18   directed to where are the documents that we already know

19   are in Nevro's possession that are Boston Scientific

20   confidential and proprietary documents?  Where are they?

21   Where have they been quarantined?  What have you done to

22   look for them?

23             Interrogatory No. 4 has indicated, "What have

24   you done to look for the Boston Scientific documents in

25   Nevro's custody, control, or possession?"

1            And up until this point, all we had gotten was,

2       "Well, we looked for the 7,000 file names."  But that is

3       just not -- it's not Scientific's position; that the

4       Federal Rule of Civil Procedure require more.  It requires

5       you to take a good faith effort to search for responsive

6       documents.

7            And so it's that, coupled with our document

8       requests, which specifically ask 57 categories of documents,

9       and then an interrogatory, Interrogatory No. 4, which says,

10      "Identify what steps you took to collect the documents and

11      identify the documents," and we can see it's sufficient.  So

12      the two work together.

13           And it is meant to serve two purposes.  One is,

14      where are the documents quarantined?  Where are they being

15      kept within Nevro now that we have already identified that

16      in Boston Scientific?  You should have them.  How do we know

17      they're not still being used, still being referred to?

18           THE COURT:  Okay.  And the last question is,

19      just in terms of the breadth of how you see your allegations.

20           Where would they end?  Like, would you be

21      entitled to obtain in response to these discovery requests

22      any information from Nevro about any product beyond, you

23      know, the SCS-related functionality that Nevro might make

24      known if, in fact, it was related to the work of any of

25      the 48 past employees you mentioned in Paragraph 32?

1          I mean, what are the limits of this trade secret

2     misappropriation claim in your mind in terms of the type of

3     discovery you are not entitled to from them?

4          MS. HAYES:  Well, we're entitled to discovery

5     with respect to the SCS files.

6          THE COURT:  Okay.  So it has to have some

7     connection with the SCS product.  And that would be kind of

8     the limit, and temporally the limit is any time up through

9     the filing of the complaint in 2018?

10          MS. HAYES:  I'm sorry, Judge.  Can you repeat

11     that question?

12          THE COURT:  I was going to say, and temporally

13     your view is the right limit is we're entitled to any

14     information up through the filing of the complaint in 2018;

15     is that right?

16          MS. HAYES:  Yes, Judge.

17          THE COURT:  Okay.  Anything more you wanted to

18     add about the issues in your letter before the Court turns

19     to the other side?

20          MS. HAYES:  I'll just check in with my

21     co-counsel, Mr. Wolf, if there's anything in addition?

22          MR. WOLF:  No, Your Honor.  I think that is all.

23     Thank you very much.

24          THE COURT:  Thank you.  Let me turn, then, to

25     defendant's side.

1        Who is going to speak on behalf of defendant's

2   side?

3        MR. BADKE:  Your Honor, this is Jim Badke.  I'll

4   be speaking --

5        THE COURT:  Okay, Mr. Badke.

6        MR. BADKE:  -- on behalf of Nevro.

7        THE COURT:  All right.  And for sake of time, I

8   think it might make sense to hear your side, your response

9   to what we've heard from Ms. Hayes about the specific back

10  and forth going on in D.I. 155 and 159; and then maybe to

11  the extent that there are broader issues at play in the

12  other two letters, it might make sense to hear from your

13  side on those as well, and then I can hear from the

14  plaintiff.

15       But first with regard to what we already have

16  been discussing, I understand the nature of some of your

17  pushback with regard to specific issues as they relate to

18  Interrogatories No. 8 or No. 4.  And then as it relates to

19  Interrogatory No. 1, it seems to be a similar issue to what

20  we're having as to Requests No. 1 and 2 which is about

21  temporal issues.

22       I'm happy to turn it to you to hear your

23  response from what you heard from Ms. Hayes on the specific

24  backs and forths in the letters about those particular

25  discovery requests.

1          MR. BADKE:  Well, they could -- I was thinking

2    as Ms. Hayes was talking about how a lot of this would go

3    away if there was a genuine meet and confer, and if the

4    whole trade secret issue was resolved with respect to what

5    they are entitled to get relative to what they pled.

6          What I was hearing, basically, was about some

7    plot to recruit former Boston Scientific employees in order

8    to steal the trade secrets is really a fantasy.  It is just

9    made up.  It never happened.

10         We made -- Nevro has produced something like

11   770,000 pages of documents; also produced some 17,000 plus

12   documents from former Boston -- former Boston Scientific

13   employees.

14         With all of that discovery, they managed to come

15   up with two documents.  Somehow now, through, again, sheer

16   imagination, they have come up with this plot about former

17   employees.

18         Now, this is a three-player market.  Employees

19   go back and forth.  And I'm sure there are Nevro employees

20   at Boston Scientific.

21         I guess my rhetorical question would be whether

22   they would be willing to open up their files to us as to

23   every Nevro employee who is at Boston Scientific.

24         No.  The answer would be "no" to that because

25   that would not be appropriate.  And it is not appropriate

1    here either.

2              Basically what Ms. Hayes is saying, that there

3    is no end to the discovery, that Nevro, whose primary, if

4    not only product, is the spinal cord stimulation product,

5    that we should open up our files, every trade secret that we

6    have, we should disclose to Boston Scientific because it may

7    have some speculative link to some former employee.

8              Many of these former employees are salespeople.

9    Many of these former employees may be accounting people.

10   But there is no limit to what they're asking for.  It is

11   just turning the federal rule on its head.

12             Their discovery should be limited to what is in

13   their second amended complaint, which is the two documents.

14             THE COURT:  Now, Mr. Badke, with regard to what

15   is in the complaint, this goes I think to the issue with

16   regard to Interrogatory No. 1 and Request No. 1 and 2.

17             MR. BADKE:  Right.

18             THE COURT:  The complaint does, if we're looking

19   at the complaint, I mean, the complaint does list out 48

20   past employees of Boston Scientific that are said to have

21   jumped to Nevro and give their names and their positions.

22             So if I'm supposed to be focused on the

23   complaint in terms of what you should have to respond to,

24   why wouldn't, at a minimum, it be providing information

25   regarding those discovery requests as did the people that

1    they list in the complaint, all 48 of them, et cetera?

2              MR. BADKE:  Well, just because they -- I'm

3    sorry, Your Honor.  I didn't meant to cut you off there.

4              THE COURT:  Oh, no.  That was it.

5              MR. BADKE:  Just because somebody is -- some

6    former employee is listed in the complaint due to some, you

7    know, speculative theory that they have doesn't mean under

8    the federal rules that we have to give discovery on that.

9              And so if none of those employees had anything

10   to do with the trade secret violations that they pled in the

11   complaint, then that --

12             A RECORDED VOICE:  Joining the meeting.

13             MR. BADKE:  -- means discovery is appropriate on

14   those particular employees.

15             Ms. Hayes brought up the post-2010 discovery.

16   Well, Nevro's system was fully developed and approved for

17   market in 2010.

18             The employees, as Your Honor points out, you

19   know, Mr. Thacker was gone by 2006.  Why did they need

20   discovery through 2018?  Why did they need our customer

21   lists?  Those customer lists may have been put together --

22   or probably were put together by many people who were never

23   at Boston Scientific or maybe none of the Boston Scientific

24   people had a role in that, but we should turn them over?

25             They want documents sufficient to show every

1    former Boston Scientific employee we have ever worked with?

2    What relevance is there to that?

3              And those requests, I'm just taking on a few,

4    but they're all like this.  Ms. Hayes couldn't even identify

5    what Interrogatory No. 8 asks for, and I'm hearing about

6    this three-year gap now for the first time.

7              There is so much vagueness to all of this, and

8    the scope is just well beyond the realm of reason here.

9              THE COURT:  Okay.  And, Mr. Badke, as I'm just,

10   as I'm trying to at least kind of resolve what I know to be

11   at issue from the letters, I understand there are broader

12   issues, there's lots of RFPs and interrogatories.

13             When it comes to the employees at issue and who

14   counts, it sounds like your position is even though these

15   48 people are listed in the complaint and even though it

16   is alleged in the complaint that Nevro tried to acquire

17   information about BSC systems from each of those people, I

18   should not countenance that.  I should find that to be not a

19   good enough allegation.

20             And so we shouldn't look at all 48 of those

21   folks, we should just look at folks who came to Nevro up

22   through when?  Is it May 2010?

23             MR. BADKE:  Yes.  May 2010, right.  And who may

24   have had some contact with the two documents, the subject

25   matter, the specific subject matter of the complaint.

```
 1              THE COURT:  And with regard to the issue of the
 2    customer lists, going, again, to the gist of the allegations
 3    in the complaint, would you acknowledge that if Nevro did,
 4    in fact, have BSC customer lists up through at least X
 5    period of time, those might be -- those customers might be
 6    relevant to the gist of the complaint, or no?  Would no BSC
 7    customer list, if they were in Nevro's possession, be
 8    relevant to these allegations?
 9              MR. BADKE:  I don't see that a customer list --
10    they didn't limit it to a BSC customer list.  They're asking
11    for all customer lists at Nevro.
12              And I would say no, because it's not part of
13    the allegations of the complaint.  They have no reason for
14    asking for customer lists.  And, in fact, it's a little
15    concerning that they're actually asking for something that
16    is so irrelevant to this case.
17              THE COURT:  Okay.  And then in terms of
18    temporality, what is the time frame that is fairly put at
19    issue by the nature of the allegations in the second amended
20    complaint?
21              Is there anything more you want to say about
22    what you think the right temporality is and why it is not
23    up through the date of the filing of the suit?
24              MR. BADKE:  Yes.  Well, I mean, maybe I'm
25    repeating what I said before, but I would say that the date
```

1    is pre-2010 because by then, Nevro's product was fully

2    developed and approved for market.  And so there would be

3    no further use for anything relating to those two documents

4    that are at issue in the complaint.

5              THE COURT:  Okay.  A couple questions that are

6    kind of bridged between the first set of letters and the

7    second set, the ones that you raised.

8              One problem I see myself having here potentially

9    is, say, if we're talking about Interrogatories 1 through 8,

10   those interrogatories have already been at issue before me

11   as to one discovery dispute.  One that was, I think, largely

12   focused on, does the plaintiff articulate their trade

13   secrets too broadly or without enough specificity?

14             Now I've got the same interrogatories.  I ruled

15   on that.  Now I get the same interrogatories at issue again

16   before me except it is a different objection that the

17   defendant's side has.  For example, some of them don't

18   adequately set out the right temporal scope, or some of

19   them are asking for information that we think are otherwise

20   irrelevant.

21             I mean at some point, I think you would

22   acknowledge it would be fair for me to say to the defendants,

23   look, if you have had, as to these interrogatories, objections

24   that you think should be raised with the Court, that means you

25   don't have to respond to them in full, you should have raised

1    them already.

2              When would that point be?  I mean, if I were to

3    rule against you -- I'm not saying I will -- as to all the

4    disputes here, but there was some other defense that you had

5    as to Interrogatory No. 8 or Interrogatory No. 1 that you

6    hadn't yet told me about, could you raise that again in

7    another discovery dispute down the line?

8              MR. BADKE:  I would hope not, Your Honor.  But I

9    think what is causing more discovery disputes to be raised

10   is that it's a moving target for us with Boston Scientific.

11             Let me just say, we went up to this point in

12   multiple litigations with Boston Scientific with very few

13   discovery disputes.  Lately, that has changed.  It is a

14   moving target for us.

15             As I said, Nevro has produced a lot of documents

16   in this case.  And I'm lead counsel for Nevro in this case,

17   Your Honor.  I've got no interest in hiding anything.

18   Nobody is playing any games here.  We want to give them what

19   they're entitled to, but it is a moving target, Your Honor;

20   and it is very, very broad, and new issues are cropping up

21   all the time.

22             And so I think that is what is causing a lot of

23   this to fester, is that we're just seeing new issues all the

24   time, and they're demanding new things that aren't really

25   related to relevance or to the claim.  That is why this is

```
 1    happening.
 2              THE COURT:  And I guess transitioning to the
 3    issues that you raise in your letter, it seems to me like
 4    there may be kind of two main species of issues.  One seems
 5    to be that you saying, look, we don't think that with
 6    regard to the 60 other trade secrets that the Court ordered
 7    us to provide discovery on last time, that plaintiff has
 8    sufficiently met its burden pursuant to the California
 9    statute.  And so just like we wrote a letter the last time
10    talking about why we brought four of those by way of example
11    were insufficient, now we have a letter with the other 60,
12    and we want you to, notwithstanding the prior order, to
13    basically find that we're right.
14              But then it seems like there's a second kind
15    of line of attack, too, which is that even if they had
16    identified the trade secrets with enough specificity, we
17    don't think that those trade secrets are necessarily
18    relevant to the allegations in the complaint because they
19    don't tie to what we think the complaint is really about.
20              Am I right that there are at least those two
21    kind of threads of argument in your papers in terms of what
22    you think I should be thinking about here?
23              MR. BADKE:  Yes, Your Honor.  And I think
24    Ms. Lee was going to handle this argument.  I'll let her
25    jump in.
```

```
 1              THE COURT:  Sure.

 2              MR. BADKE:  But let me just overall, looking at

 3    this, and trying to put myself in the Court's position, I

 4    think that if the Court were to resolve that issue, which we

 5    have struggled with in terms of how to provide discovery,

 6    because we don't even understand what trade secrets are at

 7    issue or what the scope of them are other than what is in

 8    the complaint, and so if the Court were to resolve that

 9    issue, we hope the way that we've outlined it, I think that

10    might cut down a lot on the discovery disputes.

11              But, otherwise, I'll let Ms. Lee take over for

12    that argument.

13              THE COURT:  Okay.  And, Ms. Lee, to you I guess

14    I would ask -- well, one question is we did previously have

15    a discovery dispute about whether the trade secrets that

16    plaintiff identified were identified with sufficient

17    specificity.  Since that dispute in my order, you have now

18    sent them a letter laying out in more detail why you think

19    the 60 other trade secrets weren't described well enough,

20    how come you didn't do that before, like, before the last

21    dispute I had?

22              MS. LEE:  Yes, Your Honor.  Sure.  Sharon Lee on

23    behalf of Nevro.

24              When the parties went before Your Honor the

25    first time, the parties were still in the midst of meeting
```

1    and conferring about Boston Scientific's trade secret

2    disclosures.  And Ms. Hayes acknowledged that at the last

3    hearing, and so that we will continue to meet and confer

4    about it.  The parties were writing letters back and forth,

5    you know, never identified those four exemplary issues.

6              Boston Scientific said it wanted to give us

7    case law that explained why what they did was sufficient.

8    And that process was ongoing when Boston brought its initial

9    motion to compel.

10             And so that issue wasn't quite ripe yet, but

11   because Boston Scientific brought the motion to compel,

12   that is why those issues were brought before the Court even

13   though the parties were still conferring on them.

14             THE COURT:  Okay.  And with regard to the second

15   kind of bucket of arguments, the relevance argument, is

16   there anything you want to add in terms of your case?  I

17   mean, I think obviously the defendant's side here wants this

18   trade secret claim to be absolutely as narrow as it can be,

19   to basically be about two documents, and the very particular

20   things that are the subject matter of those two documents,

21   and the plaintiff, you know, perceived it as much broader.

22             Is there anything else you want to add about

23   how, if I'm trying to parse through what is the right or

24   fair way to consider the scope of relevant discovery here?

25   Is there any other markers that you think I should look at

1    that we haven't discussed?  Any other portions of the

2    complaint you think that are relevant in terms of trying to

3    construct those appropriate boundaries?

4              MS. LEE:  Yes, Your Honor.  So I think one

5    important thing to note here is that, you know, Boston has

6    mentioned multiple times that they've survived the motion to

7    dismiss.  And that is true.

8              The allegations on which they survived that

9    motion to dismiss are based on those two documents and the

10   alleged trade secrets that are contained therein.  It's not

11   based on these 48 other former BSC employees who came over

12   to Nevro.  Just by recruiting employees from a competitor,

13   that's not sufficient for a trade secret misappropriation

14   claim, which is why they have to set forth more.  And

15   they've only set forth more with respect to these two

16   documents.

17             And I think what is important to note also is

18   that Ms. Hayes remarked multiple times that they've already

19   seen in Nevro documents that Nevro has taken these and

20   copied them, but Boston had all of this information before

21   it filed its first complaint in this case.

22             So it's not new information that they're now

23   updating their trade secret disclosures for.  This is all

24   very old information that they have had for years and yet

25   their complaint relied on just these two documents and

1   survived the motion to dismiss on just these two documents.

2           In addition, you know, the relevant time period

3   that we came up with or what we discerned was from the

4   complaint itself, so that 2010 time period.  Because in

5   Boston's own complaint, it said that the relevant time

6   period was when Nevro was first developing its own SCS

7   system.

8           And I also wanted to note for the Court that

9   SCS systems are Nevro's old product.  So, you know, by BSC

10  saying they're narrowing their request to just the SCS

11  system, that is not narrowing anything at all because

12  that is -- all of Nevro's documents are related to its one

13  product.

14          But in any event, we took the relevant time

15  period from Boston's own complaint and the allegations

16  therein on which the Court decided Boston had pled

17  sufficient facts to sustain its claim, and yet Boston is

18  saying, "That is still not good enough."  Even the relevant

19  time period that Boston says is relevant to this case, that

20  is not good enough.  They want more than that.

21          Ms. Hayes also said that they need information

22  from the 2006 to 2009 time frame.  I mean, their entire

23  complaint is based on documents that Mr. Thacker allegedly

24  took and sent around within Nevro.  Mr. Thacker left Boston

25  Scientific in 2006 but didn't even join Nevro until 2009.

1    He was at a completely different company for those three

2    years in between.

3              But even putting that to the side, we decided

4    that, you know, based on the complaint and to hopefully

5    narrow the parties' dispute, we still went with anyone who

6    joined Nevro who was a former BSC employee prior to 2000

7    patent.

8              THE COURT:  Okay.  I want to give the plaintiff

9    a chance to respond.

10             Is there anything further you want to add with

11   regard to the issues at play?  And then we'll hear from the

12   others.

13             MS. LEE:  No, Your Honor.  I think that covers

14   it.

15             THE COURT:  Okay.  Yes, I'll turn back to the

16   plaintiffs' side to get their response to those issues.

17             And who is going to speak on behalf of the

18   plaintiffs' side?

19             MR. WOLF:  Your Honor, this is Matt Wolf.  If I

20   may speak briefly and then turn it over to Ms. Hayes.

21             Just two global observations.

22             THE COURT:  Sure.

23             MR. WOLF:  Thank you, Your Honor.

24             Just the two global observations.

25             One is we heard Mr. Badke saying in nearly the

1    same breath that our positions were fantasies, but that

2    he didn't know whether they had Boston Scientific's own

3    customers list in their possession that were being

4    distributed among the 48 employees we talked about.

5            We have heard over and over how difficult it is

6    to search for these documents.  We have heard that they have

7    not even begun searching for many of these documents but in

8    the same breath told that we are, in fact, or in some making

9    it up.

10           As Your Honor is well aware, this is not a game.

11   This is not a topology where discovery is only allowed into

12   what you already know.  We don't need discovery into what we

13   already know.  What we need to know is the scope of the

14   misconduct.  Having established some, was there more?

15           And we understand Your Honor has to draw lines

16   and we respect that, but the lines cannot be at what we have

17   already figured out accidently because we got a call three

18   years ago that they had discovered some documents.

19           So with that --

20           THE COURT:  And --

21           MR. WOLF:  I'm sorry.  Go ahead, Your Honor.

22           THE COURT:  And, actually, Mr. Wolf, just

23   before you go, I mean, for sure the scope of discovery isn't

24   limited to just what you know or the documents you were

25   already aware of, and presumably so long as they in some

1    fair way the documents requested relate to the -- I don't

2    know what the right word is -- the gist of, the gravamen of

3    the key, the core of the allegations at issue, then it's

4    fair game.

5            But as you said, you have to draw lines in there

6    somewhere.  And, I mean, obviously one line that has already

7    been completed is about the BSC product, which I understand

8    is Nevro's businesses with regard to similar products, but

9    the claim clearly isn't about some other product.

10           MR. WOLF:  Correct.

11           THE COURT:  There has got to be other lines in

12   there, too; whether they're temporal lines, whether they're

13   lines with regard to personnel, whether they're lines with

14   regard to substance.

15           And I just, again, would turn to you and ask, is

16   there anything more you want to add about what you think

17   some of those boundaries should at least be and what they

18   might not be?

19           MR. WOLF:  Your Honor, talking about the

20   temporal issue.  We obviously, given the routine -- and I'll

21   use the word "poaching" and recognizing it's a loaded term

22   in this context -- that we don't know when the misconduct

23   stops.

24           But, Your Honor, as a practical matter and I

25   don't want to bid against myself, if you pick the line

1    somewhere in between 2010 and 2018, and Nevro in good faith

2    complied with that request, and we got everything we needed

3    up to that line, if it was clear that there was no further

4    misconduct in the period butting up against that line, we

5    would likely be satisfied.  And alternatively, if there was

6    evidence that the leakage continued, my guess is if we came

7    back to you, you would be willing to consider expanding that

8    line.

9              So if Your Honor feels discomfort with 2018, we

10   could live with something less than that and see where that

11   part of it takes us.

12             THE COURT:  All right.  And, Ms. Hayes, I'll

13   give you the chance to respond as well to what you heard

14   from your colleagues from the other side before we conclude.

15             MS. HAYES:  Thank you, Your Honor.  It's Dina

16   Hayes.

17             With respect to the specificity, Boston

18   Scientific has identified and disclosed its trade secrets.

19   I think the trade secret disclosure as provided provides

20   those lines with respect to specific pinpoint document

21   citations, the types of documents which we have already seen

22   are Boston Scientific's proprietary, confidential, and then

23   used by Nevro.

24             Nevro is in the sole possession of the extent

25   of the use within Nevro and its product doing good work and

1    all of the other types of behaviors to carve out which

2    constitute misappropriation, so without the discovery

3    that only Nevro has, Boston Scientific is really at a

4    disadvantage.

5              THE COURT:  All right.  And, Ms. Lee, is there

6    anything you want to add?  I want to make sure each side

7    has two chances to tell me whatever they wanted to tell me

8    here.

9              MS. LEE:  Yes, Your Honor.  Just a couple of

10   points.

11             First, with respect to Ms. Hayes' statement that

12   Boston Scientific has provided the sufficient specificity

13   because they provided the line, that's just not true.  I

14   won't rehash all the reasons that we stated in our letters

15   for why that is not true, but, I mean, some of their trade

16   secrets go as far as just referring to information about an

17   SCS system.

18             That is providing no specificity at all.  That

19   is essentially asking us to give them all of the information

20   regarding Nevro's only product.

21             And with respect to understanding the extent of

22   alleged misappropriation here, Nevro is willing to and has

23   already provided discovery that is relevant to the claims

24   that Boston has pled.

25             So we're not saying that they don't get to have

```
 1    discovery with respect to those trade secrets that are in

 2    its complaint and that are relevant to it.  And there may

 3    be -- to the extent there is, there may be documents that

 4    would give Boston information about the extent of any

 5    misappropriation of the two documents that Nevro identified

 6    in the complaint.

 7              But our claim is that they don't then get broad

 8    discovery; that because they provided sufficient basis for

 9    those two documents, they then get to look at everything to

10    determine if there were other documents that were taken.

11              And I also just wanted to touch --

12              THE COURT:  Okay.

13              MS. LEE:  Oops.  Sorry.

14              THE COURT:  Go ahead.  Very briefly.

15              MS. LEE:  Yes, Your Honor.

16              So there is a couple of lists that came up a

17    couple of times, and it's one of the exemplary items that

18    were in the letters.  I just wanted to bring that up.

19              Not only is the customer list not something

20    that is in their complaint, it is not even in their

21    identification --

22              A RECORDED VOICE:  Joining the meeting.

23              MS. LEE:  So it's even harder to understand --

24    it's even harder to understand how those customers lists are

25    relevant because it is not in the complaint and it is not
```

1   even an identification of trade secrets.

2            THE COURT:  Okay.  Thank you.  I appreciate

3   that.  I want to make sure that I keep you on time phone for

4   your 2:00 call.

5            Just a couple of thoughts.

6            I'll take the matter under advisement.  One

7   thing that I would ask is, I think, if I'm correct, I

8   understand that Judge Connolly is addressing with you all at

9   2:00, among other things, whether the trade secret claim or

10  case will be stayed or not.

11           A RECORDED VOICE:  Joining the meeting.

12           THE COURT:  But before I rule on these issues,

13  if the District Court issues a stay that affects the issues

14  that I have before me, I would appreciate if the parties

15  would point that out to me in just a brief letter.

16           Secondly, it's clear that there may well be some

17  portions of the disputes that are raised in these letters

18  that I have already decided, and I am not going to decide it

19  yet, but it's also clear to me that there is at least some

20  portion of the disputes that are percolating here that I

21  haven't, and that the Court probably has to set some lines

22  in terms of what is fairly encapsulated by the trade secret

23  misappropriation claim that is in the case, both from a

24  temporal perspective and separate matter perspective.  So

25  it's very possible that if I end up deciding these issues,

 1    that I will need to lay out some guidelines for the parties

 2    that hopefully will help them going forward.

 3              In any event, let me bring our call to a close

 4    so the parties can prepare for their next call, and the

 5    Court can as well.

 6              I appreciate the parties' argument today.  I'll

 7    take the matter under advisement, and I'll try to get you a

 8    decision as soon as I can.  All right?

 9              Take care, everyone, and we'll go off the

10    record.  Thank you.

11              (Telephone conference ends at 1:54 p.m.)

12

13        I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

14

15                          /s/ Brian P. Gaffigan
                           Official Court Reporter
16                           U.S. District Court

17

18

19

20

21

22

23

24

25